| Fill in this information to identify the case: |
| --- |
| United States Bankruptcy Court for the: |
| Southern District of New York |
| Case number (*if known*): _____ Chapter 15 |

☐ Check if this is an
amended filing

## Official Form 401

# Chapter 15 Petition for Recognition of a Foreign Proceeding    12/15

**If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write debtor's name and case number (if known).**

| | | |
| --- | --- | --- |
| 1. | **Debtor's name** | Multichain Foundation Ltd. |
| 2. | **Debtor's unique identifier** | **For non-individual debtors:** |
| | | ☐ Federal Employer Identification Number (EIN)   __ __ – __ __ __ __ __ __ __ |
| | | ☑ Other 202141342W . Describe identifier Singapore business ID |
| | | **For individual debtors:** |
| | | ☐ Social Security number:   xxx – xx– ___ ___ ___ ___ |
| | | ☐ Individual Taxpayer Identification number (ITIN): **9** xx – xx – ___ ___ ___ ___ |
| | | ☐ Other _____ . Describe identifier _____ . |
| 3. | **Name of foreign representative(s)** | Bob Yap Cheng Ghee, Toh Ai Ling, and Tan Yen Chiaw |
| 4. | **Foreign proceeding in which appointment of the foreign representative(s) occurred** | Gen. Div. of High Ct. of the Republic of Singapore, Case No.: HC/CWU 134/2025 |
| 5. | **Nature of the foreign proceeding** | *Check one:*<br>☑ Foreign main proceeding<br>☐ Foreign nonmain proceeding<br>☐ Foreign main proceeding, or in the alternative foreign nonmain proceeding |
| 6. | **Evidence of the foreign proceeding** | ☑ A certified copy, translated into English, of the decision commencing the foreign proceeding and appointing the foreign representative is attached.<br>☐ A certificate, translated into English, from the foreign court, affirming the existence of the foreign proceeding and of the appointment of the foreign representative, is attached.<br>☐ Other evidence of the existence of the foreign proceeding and of the appointment of the foreign representative is described below, and relevant documentation, translated into English, is attached.<br>_____<br>_____ |
| 7. | **Is this the only foreign proceeding with respect to the debtor known to the foreign representative(s)?** | ☐ No. (Attach a statement identifying each country in which a foreign proceeding by, regarding, or against the debtor is pending.)<br>☑ Yes |

Debtor    Multichain Foundation Ltd.
          Name                                                    Case number (if known)_____

**8. Others entitled to notice**

Attach a list containing the names and addresses of:

(i)   all persons or bodies authorized to administer foreign proceedings of the debtor,

(ii)  all parties to litigation pending in the United States in which the debtor is a party at the time of filing of this petition, and

(iii) all entities against whom provisional relief is being sought under § 1519 of the Bankruptcy Code.

**9. Addresses**

Country where the debtor has the center of its main interests:

Republic of Singapore

Debtor's registered office:

12 Marina View, #15-01
Number      Street

Asia Square Tower 2
P.O. Box

                                                    018961
City        State/Province/Region   ZIP/Postal Code

Singapore
Country

Individual debtor's habitual residence:

Number      Street

P.O. Box

City        State/Province/Region   ZIP/Postal Code

Country

Address of foreign representative(s):

12 Marina View, #15-01
Number      Street

Asia Square Tower 2
P.O. Box

                                                    018961
City        State/Province/Region   ZIP/Postal Code

Singapore
Country

**10. Debtor's website** (URL)

_____

**11. Type of debtor**

*Check one:*

☑ Non-individual (*check one*):

   ☑ Corporation.  Attach a corporate ownership statement containing the information described in Fed. R. Bankr. P. 7007.1.

   ☐ Partnership

   ☐ Other.  Specify: _____

☐ Individual

Debtor    Multichain Foundation Ltd.                                    Case number (if known)_____
                Name

| **12. Why is venue proper in *this district*?** | Check one: |
|---|---|
| | ☑ Debtor's principal place of business or principal assets in the United States are in this district. |
| | ☐ Debtor does not have a place of business or assets in the United States, but the following action or proceeding in a federal or state court is pending against the debtor in this district: |
| | _____ |
| | ☐ If neither box is checked, venue is consistent with the interests of justice and the convenience of the parties, having regard to the relief sought by the foreign representative, because: |
| | _____ |

**13. Signature of foreign representative(s)**

I request relief in accordance with chapter 15 of title 11, United States Code.

I am the foreign representative of a debtor in a foreign proceeding, the debtor is eligible for the relief sought in this petition, and I am authorized to file this petition.

I have examined the information in this petition and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct,

✖ _____          Bob Yap Cheng Ghee
   Signature of foreign representative                   Printed name

   Executed on    10 / 22 / 2025
                  MM  / DD / YYYY

✖ _____          -
   Signature of foreign representative                   Printed name

   Executed on    _____
                  MM  / DD / YYYY

**14. Signature of attorney**

✖   /s/ Joel H. Levitin                            Date    10/23/2025
   Signature of Attorney for foreign representative          MM  / DD / YYYY

   Joel H. Levitin
   Printed name
   Cahill Gordon & Reindel LLP
   Firm name
   32 Old Slip
   Number      Street
   New York                                         New York  10005
   City                                             State        ZIP Code

   (212) 701-3770                                   jlevitin@cahill.com
   Contact phone                                    Email address

   2643294                                          NY
   Bar number                                       State

**CAHILL GORDON & REINDEL LLP**
Joel H. Levitin
Miles Wiley
32 Old Slip
New York, NY 10005
Tel: (212) 701-3770/3395
jlevitin@cahill.com
mwiley@cahill.com
and
Gregory Strong (*pro hac vice* pending)
221 W. 10th Street, 3rd Floor
Wilmington, DE 19801
Tel: (302) 884-0001
gstrong@cahill.com

*Counsel for Bob Yap Cheng Ghee, Toh Ai Ling, and Tan Yen Chiaw,*
*in their capacities as the joint and several liquidators of Multichain*
*Foundation Ltd. (In Liquidation) in insolvency proceedings before*
*the General Division of the High Court of the Republic of Singapore*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re | Chapter 15 |
| MULTICHAIN FOUNDATION LTD.,[1] | Case No. 25-_____ ( ) |
| Debtor in a Foreign Proceeding. | |

## CORPORATE OWNERSHIP STATEMENT
## PURSUANT TO FEDERAL RULES OF BANKRUPTCY
## PROCEDURE 1007(A)(4) AND 7007.1 AND LOCAL RULE 1007-3

Bob Yap Cheng Ghee, Toh Ai Ling, and Tan Yen Chiaw (the "**Petitioners**"), in their

capacities as the court-appointed joint and several liquidators of Multichain Foundation Ltd. (In

Liquidation) ("**Multichain**") in insolvency proceedings (the "**Singapore Insolvency**

**Proceedings**") pending before the General Division of the High Court of the Republic of

Singapore (the "**Singapore Court**"), Case No. HC/CWU 134/2025, by and through their

---

[1] The Debtor in this chapter 15 case, along with its unique identifier, is Multichain Foundation Ltd. (In Liquidation) (Singapore Business Number: 202141342W). The Debtor's current registered and business address is 12 Marina View, #15-01 Asia Square Tower, #2, Singapore 018961.

undersigned counsel, respectfully submit this Statement pursuant to Bankruptcy Rules 1007(a)(4) and 7007.1 and Local Bankruptcy Rule 1007-3.

Multichain is a public company limited by guarantee incorporated in Singapore on November 29, 2021.  Based on records filed with the Singapore company registry ("**ACRA**"), Mr. He Xiaokun is the only member of Multichain.

Dated:  New York, NY

       October 23, 2025

CAHILL GORDON & REINDEL LLP

/s/ Joel H. Levitin
Joel H. Levitin
Miles Wiley
32 Old Slip
New York, NY 10005
Tel: (212) 701-3770/3395
jlevitin@cahill.com
mwiley@cahill.com

and

Gregory Strong (*pro hac vice* pending)
221 W. 10th Street, 3rd Floor
Wilmington, DE 19801
Tel: (302) 884-0001
gstrong@cahill.com

*Counsel for Bob Yap Cheng Ghee, Toh Ai Ling, and Tan Yen Chiaw, in their capacities as the joint and several liquidators of Multichain Foundation Ltd. (In Liquidation) in insolvency proceedings before the General Division of the High Court of the Republic of Singapore*

**CAHILL GORDON & REINDEL LLP**
Joel H. Levitin
Miles Wiley
32 Old Slip
New York, NY 10005
Tel: (212) 701-3770/3395
jlevitin@cahill.com
mwiley@cahill.com
and
Gregory Strong (*pro hac vice* pending)
221 W. 10th Street, 3rd Floor
Wilmington, DE 19801
Tel: (302) 884-0001
gstrong@cahill.com

*Counsel for Bob Yap Cheng Ghee, Toh Ai Ling, and Tan Yen Chiaw,*
*in their capacities as the joint and several liquidators of Multichain*
*Foundation Ltd. (In Liquidation) in insolvency proceedings before*
*the General Division of the High Court of the Republic of Singapore*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re | Chapter 15 |
| MULTICHAIN FOUNDATION LTD.,[1] | Case No. 25-_____ (  ) |
| Debtor in a Foreign Proceeding. | |

## STATEMENTS OF THE FOREIGN REPRESENTATIVE
## REQUIRED BY SECTION 1515 OF THE BANKRUPTCY CODE
## AND FEDERAL RULE OF BANKRUPTCY PROCEDURE 1007(a)(4)

Bob Yap Cheng Ghee, Toh Ai Ling, and Tan Yen Chiaw (the "**Petitioners**"), in their

capacities as the court-appointed joint and several liquidators of Multichain Foundation Ltd. (In

Liquidation) ("**Multichain**") in insolvency proceedings (the "**Singapore Insolvency**

**Proceedings**") pending before the General Division of the High Court of the Republic of

Singapore (the "**Singapore Court**"), Case No. HC/CWU 134/2025, by and through their

---

[1] The Debtor in this chapter 15 case, along with its unique identifier, is Multichain Foundation Ltd. (In Liquidation) (Singapore Business Number: 202141342W). The Debtor's current registered and business address is 12 Marina View, #15-01 Asia Square Tower, #2, Singapore 018961.

undersigned counsel, hereby make the following statements required under Bankruptcy Code section 1515 and Bankruptcy Rule 1007(a)(4).

**A.    Evidence of the Foreign Proceedings, as Required by Bankruptcy Code Section 1515(b).**

1.    On April 13, 2025, Fantom Foundation, a creditor of Multichain, filed an application with the Singapore Court to initiate the winding up of Multichain in the Singapore Insolvency Proceedings, docketed as Case No. HC/CWU 134/2025.

2.    The Singapore Court entered an order (the "**Singapore Court Order**") in the Singapore Insolvency Proceedings dated May 9, 2025, and filed on May 13, 2025, providing for Multichain to be wound up under section 125(1)(e) of Part 8 of the Insolvency, Restructuring and Dissolution Act 2018 in Singapore, and appointing the Petitioners as the joint and several liquidators of Multichain for the purpose of collecting, preserving, and ultimately distributing Multichain's assets as part of its liquidation. *See* Singapore Court Order, a certified copy of which is attached hereto as **Exhibit A** and incorporated by reference herein.

3.    As the court-appointed liquidators, the Petitioners have control over the assets and management of Multichain pursuant to the Singapore Court Order. *See* Ex. A (Singapore Court Order) at 2.

4.    The Singapore Court specifically held that "the duty of such of the persons as are liable to make out or concur in making out a statement of affairs as the … liquidator[s] may require, to attend on [them] and at such time and place as [they] may appoint and to give [them] all the information [they] may require." *See* Ex. A (Singapore Court Order) at 4.

5.    The Petitioners respectfully submit that the Singapore Court Order satisfies one or more of the requirements of Bankruptcy Code § 1515 – *i.e.*, (b)(1) ("a certified copy of the decision commencing such foreign proceeding and appointing the foreign representative"), (b)(2) ("a

2

certificate from the foreign court affirming the existence of such foreign proceeding and of the appointment of the foreign representative"), and (b)(3) ("any other evidence acceptable to the court of the existence of such foreign proceeding and of the appointment of the foreign representative").

**B.      Statement Regarding Foreign Proceedings, Pursuant to Bankruptcy Code Section 1515(c).**

6.      The Petitioners respectfully submit that the Singapore Insolvency Proceedings pending in the Singapore Court constitute foreign insolvency proceedings concerning Multichain. The Singapore Insolvency Proceedings are described in greater detail in (a) the *Declaration of Ong Tun Wei Danny in Support of First Day Documents* and (b) the *Declaration of Bob Yap Cheng Ghee in Support of First Day Documents*, filed substantially contemporaneously herewith.  The Petitioners are not aware of any other foreign proceedings with respect to Multichain.

**C.      List of All Authorized Administrators of Multichain in the Singapore Insolvency Proceedings.**

7.      Pursuant to Bankruptcy Rule 1007(a)(4)(B), the Petitioners respectfully submit that they are the only persons or bodies authorized to administer the foreign insolvency proceedings of Multichain.  The Petitioners' address is as follows:

Bob Yap Cheng Ghee, Toh Ai Ling, and Tan Yen Chiaw
c/o KPMG Services Pte. Ltd.
12 Marina View, #15-01
Asia Square Tower 2
Singapore 018961
Emails:  byap@kpmg.com.sg;  atoh@kpmg.com.sg;  yenchiawtan@kpmg.com.sg

**D.      Litigation Pending in the United States.**

8.      In July, 2023, unidentified hackers (the "**Hackers**") stole a significant amount of digital assets from Multichain, including units of a digital asset known as USDC valued at approximately $63 million (the "**Stolen USDC**").  *Declaration of Bob Yap Cheng Ghee in Support of First Day Documents* (the "**Yap Declaration**") ¶ 15.

3

9.      Multichain was in the business of operating a software protocol known as a "cross-chain bridge" because it allowed users to transfer digital assets to Multichain on one blockchain network, following which Multichain would issue different digital assets to these users on another blockchain network (*i.e.*, to bridge digital assets from one blockchain network to another). *Id.* ¶ 12. For example, users could transfer USDC on the Ethereum blockchain network to Multichain and receive Multi-USDC, another digital asset, from Multichain on the Fantom blockchain network. *Id.* Similarly, a holder of Multi-USDC on the Fantom blockchain could transfer that Multi-USDC to Multichain, following which Multichain would transfer to him USDC of equivalent value on the Ethereum blockchain network. *Id.*

10.     USDC is a type of digital asset known as a stablecoin issued by Circle Internet Financial, LLC ("**Circle**"). For every unit of USDC in circulation Circle maintains at least one U.S. dollar in reserve such that each unit of USDC is at all times backed by at least one U.S. dollar. *See* Memorandum of Law in Support of Defendant Circle Internet Financial, LLC's Motion to Dismiss the Complaint at 1, 3-4, *Newton AC/DC Fund, L.P.* v. *Circle Internet Financial, LLC*, No. 654157/2025 (N.Y. Sup. Ct. Jul. 14, 2025) (Dkt. No. 31) (the "**Circle MTD**"), attached as **Exhibit C** hereto and incorporated by reference herein.

11.     Following the hack against Multichain, the Hackers transferred the Stolen USDC from Multichain's wallet addresses to three blockchain addresses that now hold the Stolen USDC (the "**Hacker Addresses**"):

    a.   0xefeef8e968a0db92781ac7b3b7c821909ef10c88,

    b.   0x027f1571aca57354223276722dc7b572a5b05cd8, and

    c.   0x48bead89e696ee93b04913cb0006f35adb844537.

*See generally* Amended Complaint, *Newton AC/DC Fund, L.P.* v. *Circle Internet Financial, LLC*, No. 654157/2025 (N.Y. Sup. Ct. Jul. 14, 2025) (Dkt. No. 32), attached hereto as **Exhibit B** and incorporated by reference herein; *see also* Ex. C (Circle MTD) at 6; *see also* Stipulated Consent to Preliminary Injunction, *Newton AC/DC Fund, L.P.* v. *Circle Internet Financial, LLC*, No. 654157/2025 (N.Y. Sup. Ct. Jul. 14, 2025) (Dkt. No. 26).

12.     Circle has the ability to blacklist blockchain addresses, and will do so under certain circumstances, including pursuant to a valid law enforcement order or a valid court order.  Ex. C (Circle MTD) at 1-2, 5.  As a technical matter, when Circle blacklists a blockchain address, it adds that address to a table of blacklisted addresses maintained by the smart contract code for USDC, and all of the addresses on that table are prevented by the code from transferring USDC to another address (or receiving a transfer of USDC).  This renders the USDC maintained at those blacklisted addresses frozen.  Such frozen USDC cannot be transferred from a blacklisted address unless and until Circle removes that address from the table of blacklisted addresses.

13.     Shortly after the hack and theft of the Stolen USDC, the United States Department of Justice (the "**DOJ**") obtained a seizure warrant and compelled Circle to "blacklist" the Hacker Addresses.  Ex. B (Newton Complaint) ¶ 40;  *see also* Ex. C (Circle MTD) at 1-2, 6.

14.     Because it was not able to identify the Hackers for prosecution, the DOJ subsequently informed Circle that it would seek to vacate the seizure warrant at the end of July 2025.[2]  Ex. B (Newton Complaint) ¶ 43.  Without a valid seizure warrant or court order in place, Circle would not have a basis to keep the Hacker Addresses on the blacklist.  *See also* Ex. C (Circle MTD) at 6 & n.5.

---

[2] The Petitioners do not know whether the Department of Justice has actually vacated the seizure warrant.

15.     Newton AC/DC Fund, L.P. ("**Newton**") filed a complaint (the "**Newton Complaint**") commencing proceedings (the "**Newton Proceedings**") in the Supreme Court of the State of New York (the "**New York Court**") against Circle asserting a claim on behalf of a putative class for the return of the Stolen USDC.[3] Ex. B (Newton Complaint).

16.     The Newton Complaint asserts that because Newton currently holds Multi-USDC 3.575 million, it is entitled to claim USDC 3.575 million of the Stolen USDC, or the corresponding U.S. dollar reserves backing those tokens.   A holder of Multi-USDC is not entitled to the corresponding USDC that was transferred to Multichain in exchange for the Multi-USDC.  Having transferred USDC to Multichain in exchange for Multi-USDC, a holder of Multi-USDC no longer has any entitlement to assert a claim for the USDC.

17.     In any event, if Newton believes it has a claim against Multichain by virtue of it holding Multi-USDC 3.575 million and thereby purports to be entitled to exchange it for USDC, the appropriate course of action would be to file a claim with the liquidators of Multichain, alongside other purported creditors.  It is not entitled to assert any claim over the Stolen USDC, the entirety of which should rightfully be returned to Multichain to be dealt with fairly and equitably within the framework of the Singapore Insolvency Proceedings.

18.     Newton was supposedly concerned that it would have no recourse if Circle removed the Hacker Addresses from the blacklist and the Hackers were able to transfer the Stolen USDC to other addresses or to exchange the Stolen USDC for other assets that are not able to be frozen in the same way that Circle can freeze USDC through the blacklisting process.

---

[3] Newton filed an Amended Complaint on October 14, 2025.  Amended Complaint, *Newton AC/DC Fund, L.P.* v. *Circle Internet Financial, LLC*, No. 654157/2025 (N.Y. Sup. Ct. Jul. 14, 2025) (Dkt. No. 32).  In discussing Newton's allegations against Circle, the Petitioners cite to the Amended Complaint as the operative complaint in the Newton Proceedings.

19.    The Newton Complaint seeks a declaratory judgment resolving the ownership of the Stolen USDC currently maintained by the Hacker Addresses.  The Newton Complaint also seeks a judgment against Circle for approximately $63 million and an order recognizing that Circle currently holds that amount in a constructive trust for the benefit of the class.  *See* Ex. B (Newton Complaint).

20.    Newton and Circle entered into a stipulation (the "**Newton Stipulation**"), so ordered by the New York Court, which, among other things, requires Circle to maintain the Hacker Addresses on the blacklist so that the Stolen USDC cannot be transferred until further order of the Court.  *See* Stipulated Consent Preliminary Injunction, *Newton AC/DC Fund, L.P.* v. *Circle Internet Financial, LLC*, No. 654157/2025 (N.Y. Sup. Ct. Sept. 2, 2025) (Dkt. No. 26), attached as **Exhibit D** hereto and incorporated by reference herein.

21.    Recognizing that Newton is not the only party interested in recovering the Stolen USDC, and that Multichain and its creditors are likely to have interests as well, the Newton Stipulation further requires notice to certain other parties and provides that such other parties have the right to seek leave to intervene in the Newton Proceedings and the deadline to do so shall not expire before 60 days from the entry of the Newton Stipulation (which was entered on September 2, 2025).  *See* Ex. D (Stipulated Consent Preliminary Injunction) ¶ 5.

22.    On September 29, 2025, Circle filed a motion to dismiss (the "**Circle MTD**") the Newton Proceedings.  *See* Ex. C (Circle MTD)  In lieu of an opposition, Newton filed in response an Amended Complaint and a Motion for Class Certification (the "**Newton Class Cert. Mot.**").  *See* Memorandum of Law in Support of the Motion By Newton AC/DC Fund, L.P., Scallion Trading Ltd., and Stanton Street Capital Partners, Inc. for Class Certification, to Appoint Class Representatives, and to Appoint Class Counsel, *Newton AC/DC Fund, L.P.* v. *Circle Internet*

7

*Financial, LLC*, No. 654157/2025 (N.Y. Sup. Ct. Jul. 14, 2025) (Dkt. No. 35).  The New York court could act upon the Newton Class Cert. Mot. at any time thereafter.  A resolution of the Newton Class Cert. Mot. could ultimately result in the Newton Stipulation being vacated in which case Circle would not be required to maintain the Hacker Addresses on the blacklist.  As explained above, being a holder of Multi-USDC does not entitle one to also claim the USDC that was transferred to Multichain in exchange for Multi-USDC.  Insofar as Newton and/or the other members of its proposed class action believe they have a claim against Multichain to exchange Multi-USDC for USDC, the appropriate course of action would be to file a claim with the liquidators of Multichain.

23.    The issues involved in the Newton Proceedings, including the need for a determination of which parties, if any, are entitled to recover the Stolen USDC or the U.S. dollar reserves backing them, as well as how and when any such recovered assets should be administered and/or distributed, are much more appropriately dealt with in the context of a case under chapter 15, which is specifically designed to enable "the fair and efficient administration of cross-border insolvencies that protects the interests of all creditors, and other interested entities, including the debtor."  11 U.S.C. § 1501(a)(3).

24.    These same issues are relevant to the Singapore Insolvency Proceedings involving Multichain. One of the parties that deposited digital assets to the Multichain software protocol that were stolen during the exploit sued Multichain in Singapore and obtained a judgment against Multichain and then filed an application with the Singapore Court on April 13, 2025, to have Multichain wound up under Singapore insolvency laws.  Yap Declaration ¶ 16.

25.    As a result, the Singapore Court entered an order dated May 9, 2025, and filed on May 13, 2025, providing for Multichain to be wound up under section 125(1)(e) of part 8 of the

Insolvency, Restructuring and Dissolution Act 2018 in Singapore, and appointing the Petitioners as the joint and several liquidators of Multichain for the purpose of collecting, preserving, and ultimately distributing Multichain's assets as part of its liquidation.  *Id.* ¶ 17.

26.    The Petitioners, as the official liquidators of Multichain, have an obligation to recover and marshal all of the assets of Multichain, and have commenced this Chapter 15 Case to pursue appropriate relief, including staying the Newton Proceedings, obtaining permanent blacklisting of the Hacker Addresses, and recovering the Stolen USDC and/or the U.S. dollar reserves backing them so that they can be available for distribution to all legitimate and eligible claimants in the Singapore Insolvency Proceedings, not just to Newton.  If plaintiffs in the Newton Proceedings are valid creditors of Multichain, as they assert, they will be entitled to share in any recovery available to similarly situated creditors in the Singapore Insolvency Proceedings.

### E.    Entities Against Whom Provisional Relief is Sought.

27.    Pursuant to Bankruptcy Rule 1007(a)(4)(B), and as requested in the *Ex Parte Motion of Foreign Representatives for Provisional Relief Pursuant to Section 1519 of the Bankruptcy Code*, filed substantially contemporaneously herewith, the Petitioners are seeking provisional relief under Bankruptcy Code § 1519 against Newton and Circle and any other parties who may intervene in the Newton Proceedings, staying the Newton Proceedings, and against Circle requiring it to continue to blacklist or freeze the Hacker Addresses and to maintain the dollar reserves backing the digital currency held in such Addresses, so that the Petitioners can pursue the recovery of the Stolen USDC and/or the U.S. dollar reserves backing the Stolen USDC and administer such assets in the Singapore Insolvency Proceedings for the benefit of all of Multichain's known creditors.

9

Respectfully submitted:

Dated:  October 23, 2025

CAHILL GORDON & REINDEL LLP

/s/ Joel H. Levitin
Joel H. Levitin
Miles Wiley
32 Old Slip
New York, NY 10005
Tel: (212) 701-3770/3395
jlevitin@cahill.com
mwiley@cahill.com

and

Gregory Strong (*pro hac vice* pending)
221 W. 10th Street, 3rd Floor
Wilmington, DE 19801
Tel: (302) 884-0001
gstrong@cahill.com

*Counsel for Bob Yap Cheng Ghee, Toh Ai Ling, and Tan Yen Chiaw, in their capacities as the joint and several liquidators of Multichain Foundation Ltd. (In Liquidation) in insolvency proceedings before the General Division of the High Court of the Republic of Singapore*

# EXHIBIT A

**IN THE GENERAL DIVISION OF THE HIGH COURT OF THE REPUBLIC OF SINGAPORE**

Case No.: HC/CWU 134/2025

Doc No.: HC/ORC 2639/2025

Filed: 13-May-2025 01:02 PM

In the matter of Section S 125(1)(e) of the Insolvency, Restructuring and Dissolution Act 2018

And

In the matter of Multichain Foundation Ltd.
(Singapore UEN No. 202141342W)

Between

Fantom Foundation
(Cayman Islands Registration No. 338365)

...Claimant(s)

And

Multichain Foundation Ltd.
(Singapore UEN No. 202141342W)

...Defendant(s)



**ORDER OF COURT**

| | |
|---|---|
| Case No: | HC/CWU 134/2025 |
| Before: | the Honourable Justice Kwek Mean Luck |
| Venue: | Supreme Court, Court 3B |
| Hearing date/Time: | 09 May 2025, at 10.00am |

Upon the application of FANTOM FOUNDATION a creditor of the abovenamed company, on the 13th day of April 2025 preferred unto the Court, and upon hearing the solicitor for the applicant, and the Official Receiver Ms Kwang Jia Min, and upon reading the winding up application, an affidavit of Mr Michael Francois Kong on behalf of Fantom Foundation, filed the 13th day of April 2025, the Gazette of the 30th day of April 2025, the newspaper of the 30th day of April 2025, each containing an advertisement of the winding up application, this Court do order:

1. That the Defendant be wound up by the Court under section 125(1)(e) of Part 8 of the Insolvency, Restructuring and Dissolution Act 2018;

2. That Mr Bob Yap Cheng Ghee, Ms Toh Ai Ling and Ms Tan Yen Chiaw care of KPMG Services Pte. Ltd., 12 Marina View, #15-01, Asia Square Tower 2, Singapore 018961, be appointed as the joint and several liquidators of the Defendant; and

3. The costs of the proceedings be assessed, if not fixed or agreed, and be paid to the Claimant out of the assets of the Defendant.

Date of Order    9 May 2025

Note: It will be the duty of such of the persons as are liable to make out or concur in making out a statement of affairs as the (provisional) liquidators may require, to attend on them at such time and place as they may appoint and to give them all information they may require.





JILL TAN

REGISTRAR

SUPREME COURT

SINGAPORE



*https://www.courtorders.gov.sg*
*Access code: 96xzflxpr-134*

Getting this document from the Authentic Court Orders Portal verifies:
(a) that it was issued by the Courts of the Republic of Singapore or, in the case of a Schedule of Assets, that it was filed with the Courts in relation to an application for a Grant of Probate/Letter of Administration; and (b) the text of the document was issued on 09 May 2025

**<u>IN THE GENERAL DIVISION OF</u>**

**<u>THE HIGH COURT OF THE REPUBLIC OF SINGAPORE</u>**

Case No. HC/CWU 134/2025

> In the Matter of Section 125(1)(e) of the Insolvency, Restructuring and Dissolution Act 2018 (No. 40 of 2018)
>
> AND
>
> In the Matter of **MULTICHAIN FOUNDATION LTD.** (UEN No. 202141342W)
>
> Between

**FANTOM FOUNDATION**
(Cayman Islands Registration No. 338365)

… Claimant

> And

**MULTICHAIN FOUNDATION LTD.**
(UEN No. 202141342W)

… Defendant

**<u>ORDER FOR WINDING UP BY THE COURT</u>**

The 9th day of May 2025

Upon the application of FANTOM FOUNDATION a creditor of the abovenamed company, on the 13th day of April 2025 preferred unto the Court, and upon hearing the solicitor for the applicant, and the Official Receiver Ms Kwang Jia Min, and upon reading the winding up application, an affidavit of Mr Michael Francois Kong on behalf of Fantom Foundation, filed the 13th day of April 2025, the Gazette of the 30th day of April 2025, the newspaper of the 30th day of April 2025, each containing an advertisement of the winding up application, this Court do order:

2

(a)    That the Defendant be wound up by the Court under section 125(1)(e) of Part 8 of the Insolvency, Restructuring and Dissolution Act 2018;

(b)    That Mr Bob Yap Cheng Ghee, Ms Toh Ai Ling and Ms Tan Yen Chiaw care of KPMG Services Pte. Ltd., 12 Marina View, #15-01, Asia Square Tower 2, Singapore 018961, be appointed as the joint and several liquidators of the Defendant; and

(c)    The costs of the proceedings be assessed, if not fixed or agreed, and be paid to the Claimant out of the assets of the Defendant.


Note: It will be the duty of such of the persons as are liable to make out or concur in making out a statement of affairs as the (provisional) liquidator may require, to attend on him at such time and place as he may appoint and to give him all information he may require.

# EXHIBIT B

**SUPREME COURT OF THE STATE OF NEW YORK**
**COUNTY OF NEW YORK**

|  |  |
|---|---|
| Newton AC/DC Fund, L.P., Scallion Trading Ltd., and Stanton Street Capital Partners, Inc., individually and on behalf of all other similarly situated Plaintiffs,<br><br>          Plaintiffs,<br>     v.<br><br>Circle Internet Group, Inc. and Circle Internet Financial, LLC,<br><br>          Defendants. | **AMENDED COMPLAINT**<br><br>**JURY TRIAL DEMANDED**<br><br>Index No.:  654157/2025 |

Plaintiff Newton AC/DC Fund, L.P. (the "Fund"), Scallion Trading Ltd. ("Scallion"), and Stanton Street Capital Partners, Inc. ("Stanton Street," and together with the Fund and Scallion, the "Named Plaintiffs"), individually and on behalf of all other similarly situated class members, by way of Amended Complaint against Circle Internet Group, Inc. ("CIG") and Circle Internet Financial, LLC ("Circle"), alleges as follows:

## NATURE OF THE ACTION

1.     This dispute arises from the theft of $63,289,029 worth of a cryptocurrency on the Ethereum blockchain called USDC from a cryptocurrency protocol organized by Multichain Foundation Ltd. (the "Foundation") called "Multichain" and formerly called "anySwap" that issued cryptocurrency tokens referred to here as "multiUSDC."

2.     According to Defendants' website, Circle is the issuer of USDC, which it sells and maintains with the promise to redeem USDC tokens for an equivalent number of U.S. dollars.  According to CIG's Form 10-Q, dated August 12, 2025, and filed with the U.S. Securities and Exchange Commission, CIG issues USDC.  USDC tokens are only valuable because Circle's promise to redeem them makes USDC tokens the functional equivalent of U.S.

dollars.  Accordingly, when people buy and sell USDC, they are effectively buying and selling interests in U.S. dollar-denominated assets that Circle holds.

3.      Defendants hold $63,289,029 in cash and cash equivalents in New York financial institutions as security for the value of the stolen assets.

4.      The Fund brings this action to assert its property interest, and the property interests of similarly situated investors, in the assets Circle holds that secure the stolen cryptocurrency.

## PARTIES, JURISDICTION AND VENUE

5.      The Fund is a Delaware limited partnership whose partners are domiciliaries of Florida and Massachusetts.

6.      Scallion is a corporation organized under the laws of England and Wales whose principal place of business is in England.

7.      Stanton Street is a corporation organized under the laws of Wyoming whose principal place of business is in North Carolina.

8.      The proposed Class consists of all people and entities who currently hold multiUSDC cryptocurrency tokens.  There are hundreds of people and entities, including people and entities in New York, within this Class definition, and over 270,000 cryptocurrency wallets that hold multiUSDC tokens.

9.      CIG is a Delaware limited liability company whose principal place of business is in New York.

10.     Circle is a Delaware limited liability company whose principal place of business is in New York.  Its sole member is CIG.  According to its September 13, 2024, press release, its Global Headquarters is in the World Trade Center in Manhattan.  Circle has the same chief

2

executive officer, chief financial officer, and business operations as CIG.  It transacts business in New York State and it consented to personal jurisdiction here in a conversation with undersigned counsel on July 2, 2025.  Circle is also the agent of CIG and therefore is subject to personal jurisdiction in the same jurisdiction as its principal.

11.     Venue is proper in New York County pursuant to CPLR § 503(a) because, among other reasons, the Defendants' principal place of business is there.

## FACTUAL BACKGROUND

### I.     Cryptocurrencies Are Recorded and Transmitted on Blockchains

12.     Cryptocurrencies are assets that people can own and transmit to others.  An individual unit of a cryptocurrency is often called a token, and there are thousands of different kinds of tokens.  The term token is apt because cryptocurrency derives most of its fundamental value from its utility to gain access to services, similar to how a subway token gives a rider access to a subway ride or an arcade token gives a customer access to an arcade game.

13.     Cryptocurrencies are secured (in the sense that they are difficult to steal or counterfeit) because of decentralized computing infrastructure which cryptographically verifies and immutably records on the blockchain every transaction which creates, destroys or transfers a token. Effectively, a blockchain is a decentralized and immutable ledger maintained by hundreds or thousands of participating computing nodes called either validators or miners.  Ownership of cryptocurrencies is established by demonstrating the possession of a private key, which is uniquely associated with a public address (also known as a wallet), which is analogous to a bank account number.

14.     Traditionally, a blockchain with all its associated tokens functions as an independent and isolated system of recording financial transactions. However, as there are

3

hundreds of different blockchains, people have developed mechanisms for safely and securely transferring cryptocurrency between blockchains.

## II. Multichain Enables Users to Move Tokens Across Blockchains

15.    Multichain is a cryptocurrency platform that enables users to transfer tokens between blockchains. That is, it permits a token whose issuance and transfers are validated and recorded on one blockchain to be effectively ported or bridged, via creation of an economically equivalent proxy token, to a different blockchain where it can be utilized in a similar fashion.

16.    Multichain accomplishes this goal by requiring users to deposit the asset that they want to bridge into a particular address which functions as a "liquidity pool" on the first blockchain.  The liquidity pool is actually a "smart contract," an autonomous computer program whose code is stored on the blockchain. Once a user transfers an asset to that "liquidity pool," the external Multichain infrastructure triggers a similar smart contract on the destination blockchain to issue an equivalent amount of new, proxy tokens (usually called "wrapped" tokens) to that user's corresponding (or specified) address on that second blockchain.  The user can then use the wrapped token on the second blockchain in the same manner as the original asset was used on the first blockchain.  As long as everything is working properly, a user can, at any time, reverse the process by depositing the wrapped tokens back in the smart contract on the second blockchain (resulting in those wrapped tokens being extinguished), which then initiates the process of triggering the smart contract on the first blockchain to release an equivalent amount of the underlying asset to the user's corresponding address from the "liquidity pool." Because wrapped tokens can be freely exchanged for an equivalent amount of underlying assets, the value of each wrapped token is maintained stable at the same value as the underlying asset.

4

### III.    The Foundation Promised to Redeem Wrapped Tokens For Liquidity Pool Assets

17.    The Foundation expressly promised that Multichain users could redeem wrapped tokens for assets in its liquidity pool.  It did so pursuant to an agreement on its website.

18.    On https://docs.multichain.org/getting-started/introduction, the Foundation stated that in the "Redeeming" process, "the wrapped asset [is] burned and then the asset in smart contract [is] released back to the chain from where it originally came from."  This means that users can exchange wrapped tokens for corresponding underlying assets in the liquidity pool.

19.    And the Foundation wrote on https://docs.multichain.org/getting-started/how-it-works/cross-chain-bridge that when "assets are redeemed, the Wrapped Asset smart contract is triggered by the MPC nodes to burn the tokens. The MPC nodes then release the assets from the Decentralized Management Account and send them to the user on the origin chain."  This also means that users can exchange wrapped tokens for corresponding underlying assets in the liquidity pool.

20.    And on the same page, the Foundation further states that in redemption, Multichain's wrapped tokens "are burned and then the SMPC nodes release [liquidity pool assets] on the origin chain."  This means that users receive liquidity pool assets once they redeem wrapped tokens.

### IV.    Defendants Issue USDC Stablecoins, Which Are Meant to be U.S. Dollar Equivalents

21.    Many people want to conduct transactions that are recorded on blockchains, but in U.S. dollars instead of in volatile cryptocurrency.  To enable this, some companies have issued stablecoins.  These are cryptocurrencies that are meant to represent government-issued fiat currency.

5

22.    Defendants issue a stablecoin called USDC.  According to the terms on Defendants' website, Circle issues USDC; according to CIG's Form 10-Q, dated August 12, 2025, CIG issues USDC.  The value of each USDC token is maintained close to $1 each by Circle's promise to its registered clients to exchange 1 USDC for 1 U.S. dollar on demand at any time.  As USDC is essentially an on demand, senior obligation of Circle, USDC functions effectively as the analog of a bank deposit, with Defendants in the role of the bank.  Accordingly, the value of one USDC token remains stable at approximately one U.S. dollar because any deviation would allow arbitrage by Circle's registered customers.

23.    To meet this obligation, Defendants hold a large reserve of highly liquid U.S. dollar-denominated assets in New York accounts at New York-based financial institutions including BlackRock and Bank of New York Mellon (the "Circle Treasury").  Defendants disclosed that they keep these assets in those accounts in a blog post available here: https://www.circle.com/blog/deepening-our-partnership-with-blackrock

24.    Defendants market USDC as a reliable product.  On Defendants' website, they tout that "USDC is a regulated, digital currency that can always be redeemed 1:1 for U.S. dollars."

25.    Defendants know the cryptocurrency industry is rife with fraud.  Accordingly, they developed the technological ability to render its tokens untransferable in the event of fraud. When it exercises this power, called "blacklisting," which is applied to a particular address, that address is prevented from transferring any USDC tokens that it holds. Accordingly, USDC tokens held in a wallet at a blacklisted address can also not be redeemed by Defendants for dollars.  This process essentially makes the USDC tokens in a blacklisted wallet worthless.  This process also creates a windfall for Defendants since it ends their obligation to maintain funds in

the Circle Treasury to redeem the USDC tokens held in a blacklisted wallet. Those funds are thus effectively free for Defendants to keep for themselves or to use for other purposes.

26.    Defendants publish an agreement that governs the use of USDC on their website: https://www.circle.com/en/legal/user-agreement and https://www.circle.com/en/legal/usdc-terms. One element of the agreement, published at https://www.circle.com/en/legal/usdc-risk-factors, states that "Circle reserves the right to block the transfer of USDC to and from an address on chain in extraordinary circumstances exclusively per the terms of the blacklisting policy."

27.    Defendants published their blacklisting policy at the following site: https://www.circle.com/hubfs/Blog%20Posts/Circle%20Stablecoin%20Access%20Denial%20Policy_pdf.pdf. According to that policy, "Circle will block individual addresses in order to comply with a law, regulation, or legal order from a duly recognized U.S. authorized authority, U.S. court of competent jurisdiction, or other governmental authority with jurisdiction over Circle."

28.    In other words, Defendants promised to only blacklist addresses to comply with a legal requirement to do so. This is a reasonable requirement to prevent the potential for a windfall and to encourage users to trust that their USDC will reliably maintain its value and not be arbitrarily frozen.

29.    Circle acts as an agent of CIG. CIG expressly directs Circle to issue USDC pursuant to terms issued in Circle's name. CIG publishes a website, press releases, and marketing materials, indicating its authorization of Circle to issue USDC on its behalf. For example, in a press release dated May 27, 2025, and available at https://www.circle.com/pressroom/circle-launches-initial-public-offering, CIG wrote that it "issues, through its regulated affiliates, USDC…"

7

30.     CIG also exercises a great deal of control over Circle.  The two entities have the same chief executive officer and chief financial officer, who exercise control over both companies, and engage in the same business.  There is no independent business of Circle separate from CIG; the two operate as one entity in their public filings and announcements related to USDC.

## VI.    Defendants Do Not Issue USDC on the Fantom and Moonriver Blockchains, but Multichain's Infrastructure Enabled Creation of Proxies on Both

31.     Ethereum is a popular blockchain.  Many different cryptocurrencies use it to record their transactions.

32.     Defendants issue USDC natively on several different blockchains.  The subject matter of Plaintiffs' claims, however, exclusively concerns USDC issued by Defendants on the Ethereum blockchain, and so all references to USDC or Defendants' actions relate to the Ethereum blockchain.

33.     Fantom is another blockchain.  Defendants did not issue USDC on the Fantom blockchain, however, despite there being market demand for a U.S. dollar-tied cryptocurrency to trade on Fantom.

34.     Moonriver is another blockchain.  Defendants did not issue USDC on the Moonriver blockchain, however, despite market demand for a U.S. dollar-tied cryptocurrency to trade on it.

35.     Multichain's infrastructure allowed users to perform transactions with a proxy for USDC on the Fantom blockchain and a proxy for USDC on the Moonriver blockchain, among others.  Multichain did this by allowing users to contribute USDC to (and thereby lock USDC in) liquidity pools on Ethereum.  In turn, Multichain issued a wrapped version of USDC ("multiUSDC" or "anyUSDC") on the Fantom blockchain to users who contributed USDC to its

8

Fantom liquidity pool and a similar wrapped version of USDC (also referred to herein as

"multiUSDC") on the Moonriver blockchain to users who contributed USDC to its Moonriver

liquidity pool.

36.    The value of a multiUSDC token was designed to approximate the value of a

USDC token using a mechanism similar to the one Defendants use to maintain the value of a

USDC token.  Users could, for example, conduct transactions with multiUSDC on the Fantom

blockchain as if those tokens were USDC because the Multichain infrastructure allowed users to

exchange multiUSDC for native USDC on the Ethereum blockchain, which, in turn, could be

redeemed for U.S. dollars by Defendants.

**VII.    Thieves Stole Over $63 Million Worth of USDC**

37.    At least one anonymous person hacked the Multichain Fantom liquidity pool and

the Multichain Moonriver liquidity pool on Ethereum in July 2023 (the "Hack") and stole $125

million worth of cryptocurrency assets, including $57,792,093 worth of USDC from the liquidity

pool dedicated to the backing of multiUSDC on Fantom, and $5,496,936 worth of USDC from

the liquidity pool dedicated to the backing of multiUSDC on Moonriver (the "Stolen USDC"

totaling 63,289,029 USDC from both liquidity pools)

38.    The Stolen USDC was transferred directly from the liquidity pools to the

following three addresses: 0xefeef8e968a0db92781ac7b3b7c821909ef10c88,

0x027f1571aca57354223276722dc7b572a5b05cd8, and

0x48bead89e696ee93b04913cb0006f35adb844537 (the "Hacker Addresses"), with the

0x48bead89e696ee93b04913cb0006f35adb844537 address receiving the USDC stolen from the

Moonriver liquidity pool and the other two addresses receiving the USDC stolen from the

Fantom liquidity pool.

9

39.     The effect of the theft of the Stolen USDC was to render multiUSDC effectively worthless because it could no longer be redeemed for USDC.

## VIII.   Circle Blacklisted the Stolen USDC

40.     Shortly after the Hack, Circle blacklisted the Hacker Addresses.  The effect of an address being blacklisted is that the USDC held in that address becomes untransferable, as the smart contract that enables transfers of USDC will not recognize transfer transactions initiated by a blacklisted address as valid.  As a result, Circle trapped over 63 million USDC indefinitely from the Hacker Addresses.

41.     Circle blacklisted the Hacker Addresses because the United States Department of Justice (the "Justice Department") obtained a seizure warrant (the "Seizure Warrant") from a court, compelling Circle to do so.

42.     After the Hack, Circle modified the terms of its agreement that govern the use of USDC tokens.  The new version purports to disclaim liability for "wrapped" tokens like multiUSDC.  Upon information and belief, the version applicable during the Hack made no such disclaimer.

## IX.   The Justice Department Will Vacate the Seizure Warrant

43.     The Justice Department informed Circle and the Fund that it planned to vacate the Seizure Warrant at the end of July 2025.  Circle has informed the Justice Department and the Fund that, upon the vacatur of the Seizure Warrant, it will remove the blacklist on the Stolen USDC.

44.     The Justice Department informed the Fund on September 2, 2025, that it had not yet vacated the Seizure Warrant, since it had been waiting for the Fund to obtain a preliminary

10

injunction to maintain Circle's restrictions on the Stolen USDC. The Fund informed the Justice Department that day that this Court entered a Preliminary Injunction, granting that relief.

## X.    The Fund, Scallion, and Stanton Street Own multiUSDC

45.    The Fund is a client of Circle; it registered for a Circle Mint account on November 1, 2023. It owns 3,575,000 multiUSDC tokens on the Fantom blockchain. That multiUSDC represents an interest in the Stolen USDC, which itself represents an interest in $3.575 million U.S. dollars Circle holds in the Circle Treasury.

46.    Scallion owns 408,454.83 multiUSDC tokens on the Fantom blockchain.

47.    Stanton Street owns 623,322 multiUSDC tokens on the Fantom and Moonriver blockchains.

## XI.    Circle Consented to Personal Jurisdiction in New York

48.    A former holder of multiUSDC tokens initiated an adversary proceeding against Circle in the United States Bankruptcy Court for the District of New Jersey. The Fund moved to intervene in that action to assert substantially similar claims as the ones it asserts here.

49.    Because of that action, counsel for Circle and counsel for the Fund spoke by telephone on July 2, 2025. On that call, undersigned counsel asked Circle's counsel in which forum would Circle be amenable to jurisdiction so the parties could litigate the merits of their claims and defenses and not have to debate personal jurisdiction.

50.    On the call, Circle's counsel represented that Circle was amenable to suit in New York. In reliance on that statement, the Fund commenced this action in New York.

11

## XII.    Class Allegations

51.    The Named Plaintiffs bring this action as a class action, pursuant to CPLR § 901, on behalf of themselves and all other holders of multiUSDC tokens on either the Fantom or Moonriver blockchains (the "Class").  Excluded from the Class is Circle.

52.    This action satisfies the requirements of CPLR § 901 and is properly maintained as a class action.

53.    The proposed Class is so numerous that joinder of all members is impracticable and the disposition of their claims in a class action will provide substantial benefits to the parties and the Court.  Hundreds of people and entities hold multiUSDC tokens in over 270,000 wallets on the Fantom blockchain and over 18,000 wallets on the Moonriver blockchain.  Over 99% of wallets that hold multiUSDC tokens on these two blockchains hold fewer than 10,000 multiUSDC tokens.

54.    There are questions of law and fact that are common to the Class and which predominate over questions affecting any individual Class member.  The damages sustained by the Plaintiffs flow from the common nucleus of operative facts surrounding the Hack and Circle's possession of the funds that secure the value of the Stolen USDC.  The common questions of law and fact include, without limitation:

   a.  Whether holders of multiUSDC are the beneficial owners of U.S. dollar and cash equivalents Defendants hold in the Circle Treasury; and

   b.  Whether a constructive trust over the Circle Treasury is necessary to prevent the unjust enrichment of the perpetrators of the Hack.

55.    The Named Plaintiffs' claims are typical of the claims of the Class since each Class member is unable to redeem or trade their multiUSDC for the U.S. dollars that Circle holds

12

as a result of the same Hack and the same refusal by Circle to honor the beneficial property rights of multiUSDC holders. Equitable relief is necessary for the Named Plaintiffs and for all Class members to address the injury they sustained arising from the Hack and Defendants' refusal to honor their beneficial property rights. The Named Plaintiffs are advancing the same claims and legal theories on behalf of themselves and all similarly situated Class members.

56.     The Named Plaintiffs have no relevant interests adverse or antagonistic to the interests of other members of the Class.

57.     The Named Plaintiffs will fairly and adequately represent and protect the interests of the Class and have retained experienced counsel who is qualified to pursue this litigation and who is competent in the prosecution of class action litigation.

58.     A class action is superior to other methods for the fair and efficient adjudication of the claims asserted herein. The Named Plaintiffs do not anticipate that unusual difficulties will be encountered in the management of this class action.

59.     A class action will permit a large number of similarly situated people and entities to prosecute their common claims in a single forum, simultaneously, efficiently, and without the duplication of effort and expense that numerous individual actions would engender, or the inconsistency in results that might occur if the claims were litigated independently.

60.     By refusing to recognize the beneficial property of any multiUSDC holder and by its stated intent to release the blacklist on wallets holding the stolen USDC, Defendants are acting on grounds generally applicable to the entire Class, thereby making Class-wide relief appropriate.

13

## AS AND FOR THE FIRST CAUSE OF ACTION
### DECLARATORY JUDGMENT

61.    The Plaintiffs hereby restate and incorporate by reference the allegations in the preceding paragraphs as though fully set forth herein.

62.    An actual controversy exists between the Class and Defendants.  It concerns the beneficial ownership of approximately $63 million that Defendants hold in the Circle Treasury. The Class claims beneficial ownership of those funds because multiUSDC holders only acquired multiUSDC because they functioned as warrants to funds in the Circle Treasury.  More specifically, holders of multiUSDC owned the rights to acquire the Stolen USDC, which Defendants have an obligation to redeem on demand for the corresponding USDC tokens. Defendants dispute this claim, hold these funds for themselves, and Circle has stated its intent to provide these funds to the thieves who conducted the Hack.

63.    A declaratory judgment will resolve the ownership dispute over the approximately $63 million in the Circle Treasury.

WHEREFORE, the Class seeks a declaratory judgment against Defendants, declaring that multiUSDC tokenholders are the beneficial owners of an equivalent amount of U.S. dollars held by Defendants.  It also seeks a declaration that this action is properly maintained as a class action, certifying the Fund as Class representative, and appointing William Newman Lawyer PLLC as Class counsel.  And it seeks such other and further relief as the Court deems just.

## AS AND FOR THE SECOND CAUSE OF ACTION
### CONSTRUCTIVE TRUST

64.    The Plaintiffs hereby restate and incorporate by reference the allegations in the preceding paragraphs as though fully set forth herein.

65.    One or more thieves engaged in a wrongful act by illegally transferring millions of dollars' worth of USDC from two Multichain liquidity pools to three new addresses that only

14

NYSCEF DOC. NO. 32    25-12340-dsj    Doc 1    Filed 10/23/25    Entered 10/23/25 16:47:43    Main Document    RECEIVED NYSCEF: 10/14/2025

INDEX NO. 654157/2025

Pg 36 of 68

they control.  As a result of the theft, Circle froze those three addresses with respect to the ability to further transfer the Stolen USDC.

66.     Circle has stated its intent to engage in a wrongful act by indicating its intent to remove the blacklist for the Stolen USDC so that the thieves that conducted the Hack can profit from the Hack.  At the same time, Defendants have failed to exchange multiUSDC for the U.S. dollars they hold in the Circle Treasury for the benefit of Class members like the Fund, the rightful holders of the Stolen USDC who are the holders of multiUSDC.

67.     As a result of these wrongful acts, Defendants will unjustly enrich the perpetrators of the Hack by over $63 million.  This is a gigantic windfall for the wrongdoers at the expense of Class members who are the beneficial owners of that money.

68.     Circle has stated its position that it can retain the Treasury funds indefinitely if the thieves who perpetrated the Hack do not redeem the Stolen USDC.  Accordingly, unless this Court imposes a constructive trust, Defendants will be unjustly enriched by being relieved of the obligation to pay $63 million for USDC it sold.  This is a gigantic windfall for Defendants at the expense of Class members who are the beneficial owners of that money.

WHEREFORE, the Class seeks a judgment against Defendants for $63,289,029, recognizing that Defendants currently hold that amount in a constructive trust for the benefit of the Fund arising from its ownership of multiUSDC.  It also seeks a declaration that this action is properly maintained as a class action, certifying the Named Plaintiffs as Class representatives, and appointing William Newman Lawyer PLLC as Class counsel.  And it seeks such other and further relief as the Court deems just.

Dated: Brooklyn, New York
      October 14, 2025

                        WILL NEWMAN LAWYER PLLC

                        William H. Newman
                        Tara Q. Higgins
                        33 Nassau Avenue, Second Floor
                        Brooklyn, New York 11222
                        Phone: (718) 218-3360
                        Email: will@willnewmanlawyer.com
                                 tara@willnewmanlawyer.com

                        Attorneys for the Fund

16

# EXHIBIT C

**SUPREME COURT OF THE STATE OF NEW YORK**
**COUNTY OF NEW YORK**

– – – – – – – – – – – – – – – – – – – – – – – – – – – x

Newton AC/DC Fund, L.P.,                                    :

                                                                         :          Index No.654157/2025
                                    Plaintiff,                      :
                                                                         :          Hon. Andrew Borrok
                        - against -                               :
                                                                         :
Circle Internet Financial, LLC,                           :
                                                                         :
                                    Defendant.                 :

– – – – – – – – – – – – – – – – – – – – – – – – – – – x

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT CIRCLE INTERNET FINANCIAL, LLC'S MOTION TO DISMISS THE COMPLAINT

JONES DAY
250 Vesey Street
New York, NY 10281
(212) 326-3939

*Attorneys for Defendant Circle*
*Internet Financial, LLC*

1

# TABLE OF CONTENTS

**Page**

INTRODUCTION .................................................................................................................. 1

BACKGROUND ................................................................................................................... 2

    A.    The Parties. ...................................................................................................... 2

    B.    The Foundation, Multichain and multiUSDC ................................................... 2

    C.    Circle and USDC ............................................................................................. 3

    D.    The Alleged Hack and Resulting Access Denial ............................................... 6

    E.    Procedural History ........................................................................................... 6

LEGAL STANDARD ............................................................................................................ 6

ARGUMENT ....................................................................................................................... 7

I.     THIS COURT LACKS PERSONAL JURISDICTION OVER CIRCLE. ...................... 7

    A.    Plaintiff has not alleged any New York transaction giving rise to the claims. .............................................................................................................. 8

    B.    Plaintiff does not allege that Circle committed any tortious act while present in New York. ........................................................................................ 9

    C.    Plaintiff has not alleged that it suffered any injury in New York. ...................... 10

    D.    Plaintiff's claims do not arise out of Circle's possession or use of New York realty. .................................................................................................... 11

II.    PLAINTIFF'S CLAIMS FAIL AS A MATTER OF LAW. ......................................... 11

    A.    The Declaratory Judgment Cause of Action Fails. ............................................ 11

    B.    The Constructive Trust Claim Fails. ................................................................. 15

CONCLUSION ................................................................................................................... 17

FILED: NEW YORK COUNTY CLERK 09/29/2025 07:25 PM
INDEX NO. 654157/2025
NYSCEF DOC. NO. 31
RECEIVED NYSCEF: 09/29/2025

25-12340-dsj   Doc 1   Filed 10/23/25   Entered 10/23/25 16:47:43   Main Document
Pg 41 of 68

# TABLE OF AUTHORITIES

**Page**

CASES

*All. Network, LLC v. Sidley Austin LLP,*
  987 N.Y.S.2d 794 (Sup. Ct. 2014) ...............................................................4, 5, 7

*Bartley v. Walentas,*
  78 A.D.2d 310, [1st Dept 1980] ...................................................................12

*BGC Partners, Inc. v. Avison Young (Canada) Inc.,*
  46 Misc. 3d 1202(A), [Sup. Ct. N.Y. Cty. 2014] ...........................................9

*Cruz v City of New York,*
  210 A.D.3d 523 [1st Dept 2022] ...................................................................8

*D & R Glob. Selections, S.L. v Bodega Olegario Falcon Pineiro,*
  29 N.Y.3d 292 [2017] ....................................................................................9

*Est. of Uddin v. Miah,*
  216 N.Y.S.3d 207 [N.Y. App. Div. 2d Dept. 2024] .....................................15

*Fouad v Milton Hershey School and School Tr.,*
  231 A.D.3d 669 [1st Dept 2024] ...................................................................9

*Halliwell v Gordon,*
  61 A.D.3d 932 [2d Dept 2009] .....................................................................16

*Harounian v. Harounian,*
  198 A.D.3d 734 [2d Dept 2009] ...................................................................16

*Heritage Partners, LLC v. Stroock & Stroock & Lavan LLP,*
  133 A.D.3d 428 [1st Dep't 2015] .................................................................6

*HT Capital Advisors, L.L.C. v Opt. Resources Group, Inc.,*
  276 A.D.2d 420 [1st Dept 2000] ..............................................................9, 10

*In re SSA Bonds Antitrust Litig.,*
  420 F. Supp. 3d 219 [SDNY 2019] ..............................................................10

*Kerri W.S. v Zucker,*
  202 A.D.3d 143 [4th Dept 2021] .................................................................11

*Kyowa Seni, Co., Ltd. v ANA Aircraft Technics, Co., Ltd.,*
  60 Misc 3d 898 [Sup Ct 2018] .....................................................................9

-i-

FILED: NEW YORK COUNTY CLERK 09/29/2025 07:25 PM
INDEX NO. 654157/2025
NYSCEF DOC. NO. 31
RECEIVED NYSCEF: 09/29/2025

25-12340-dsj   Doc 1   Filed 10/23/25   Entered 10/23/25 16:47:43   Main Document
Pg 42 of 68

## TABLE OF AUTHORITIES
(continued)

                                                                                          **Page**

*La Scoula D'Italia Guglielmo Marconi v. Gates Cap. Corp.,*
    187 A.D.3d 581 [1st Dep't 2020] .................................................................6

*Lancaster v Colonial Motor Frgt. Line, Inc.,*
    177 A.D.2d 152 [1st Dept 1992] ..................................................................11

*Leuthner v. Homewood Suites by Hilton,*
    151 A.D.3d 1042, 58 N.Y.S.3d 437 [2d Dep't 2017] ...............................8

*Mazzei v Kyriacou,*
    139 A.D.3d 823 [2d Dept 2016] ...................................................................16

*New York Bus Operators Compen. Tr. V. Am. Home Assurance Co.,*
    144 N.Y.S.3d 820 [N.Y. Sup. Ct. 2021] ...................................................12

*Oddo Asset Mgt. v Barclays Bank PLC,*
    19 N.Y.3d 584, 973 N.E.2d 735 [2012] ....................................................15

*Penguin Group (USA) Inc. v Am. Buddha,*
    16 N.Y.3d 295 [2011] ....................................................................................10

*Rogers v Rogers,*
    63 N.Y.2d 582 [1984] ...............................................................................15, 17

*Roni LLC v. Arfa,*
    18 N.Y.3d 846, 963 N.E.2d 123 [2011] ....................................................15

*Shatara v Ephraim,*
    137 A.D.3d 1244 [2d Dept 2016] ..................................................................9

*SOS Capital v Recycling Paper Partners of PA, LLC,*
    220 A.D.3d 25 [1st Dept 2023] .....................................................................9

*Uber Techs., Inc. v. Am. Arb. Ass'n, Inc.,*
    204 A.D.3d 506 [1st Dept 2022] .................................................................12

*Williams v. Beemiller, Inc.,*
    33 N.Y.3d 523 [2019] .....................................................................................7

*Woods v 126 Riverside Dr. Corp.,*
    64 A.D.3d 422 [1st Dept 2009] ...................................................................17

## TABLE OF AUTHORITIES

### (continued)

**Page**

*Zeidan v Scott's Dev. Co.,*
    173 A.D.3d 1639 [4th Dept 2019] .................................................................11

**OTHER AUTHORITIES**

Access Denial Policy, available at https://6778953.fs1.hubspotusercontent-
    na1.net/hubfs/6778953/Blog%20Posts/Circle%20Stablecoin%20Access%20D
    enial%20Policy_pdf.pdf ..............................................................................5

USDC Terms, available at https://www.circle.com/legal/usdc-terms ...........................4

CPLR 302 ................................................................................................ *passim*

CPLR 3211(a)(7) ..............................................................................1, 7, 8, 11

>

FILED: NEW YORK COUNTY CLERK 09/29/2025 07:25 PM
NYSCEF DOC. NO. 31
INDEX NO. 654157/2025
RECEIVED NYSCEF: 09/29/2025

25-12340-dsj    Doc 1    Filed 10/23/25    Entered 10/23/25 16:47:43    Main Document
Pg 44 of 68

Defendant Circle Internet Financial, LLC ("Circle") respectfully submits this memorandum of law in support of its motion to dismiss Plaintiff Newton AC/DC Fund, L.P.'s Complaint in this action, under CPLR 3211(a)(7) and (8).

## INTRODUCTION

Circle is the issuer of the stablecoin USDC, a type of cryptocurrency designed to maintain a price equivalent to the U.S. dollar rather than fluctuate in value. In order to maintain that price equivalence, Circle keeps a reserve of an amount of U.S. dollar-denominated assets equivalent to all USDC in circulation, and agrees to redeem USDC 1:1 for U.S. dollars for its own registered clients. It does not, however, issue or redeem USDC for parties who are not its own clients; all other parties must buy or sell USDC on the secondary market, such as through cryptocurrency exchanges. These facts are clearly communicated publicly in the terms governing the operation of USDC.

Plaintiff is not a client of Circle. Nor does it claim to be a holder of USDC. Instead, Plaintiff alleges that it owns an entirely different cryptocurrency called multiUSDC. That cryptocurrency was issued by an entirely different party, Multichain Foundation Ltd. (the "Foundation"), which allegedly promised to redeem multiUSDC on a 1:1 basis for USDC. Plaintiff's Complaint is focused on an alleged hack of Multichain, a cryptocurrency platform organized by the Foundation, leading to the removal of 63 million USDC that Plaintiff claims has rendered its multiUSDC worthless. Circle is not alleged to have any involvement with the hack or any relationship with Multichain or the Foundation. Indeed the terms governing USDC expressly provide that Circle has no responsibility for cryptocurrencies of this exact type.

Circle's only connection to this matter is that it has the ability to blacklist particular wallet addresses containing USDC, which prevents the USDC contained in those wallets from being transferred into or out of a blacklisted address. Circle blacklisted the addresses holding the

1

allegedly stolen USDC after receiving a seizure warrant from the U.S. Department of Justice ("DOJ"). DOJ has indicated they plan to withdraw that seizure warrant, thus removing the legal basis for continued blacklisting of those addresses. That prompted Plaintiff to file the Complaint.

Yet instead of asserting claims against the alleged perpetrators of the hack or the USDC they stole, or against the Foundation which is the party who promised to redeem Plaintiff's multiUSDC, Plaintiff has brought an action seeking money from Circle. First, Plaintiff seeks a declaratory judgment that Plaintiff is the beneficial owner of $3.575 million worth of funds in the reserves held by Circle. Second, Plaintiff seeks a judgment against Circle for $3.575 million based on a constructive trust. Both claims are baseless. Moreover, neither claim involves any alleged act or property in New York that would give rise to the court's jurisdiction over Circle. The Complaint should be dismissed accordingly.

## BACKGROUND

The following factual background is drawn from Plaintiff's Complaint and the documents attached to it or incorporated into it by reference.

### A.     The Parties.

Plaintiff is a Delaware limited partnership whose partners are domiciliaries of Florida and Massachusetts. Compl, NYSCEF Doc. 1, ¶ 3. Circle is a Delaware limited liability company whose principal place of business is in Massachusetts. *Id.* ¶ 4.

### B.     The Foundation, Multichain and multiUSDC[1]

Cryptocurrencies are digital assets which people can own and transmit to others. *Id.* ¶ 6. An individual unit of cryptocurrency is called a token and there are thousands of different kinds of

---

[1]The information contained herein is drawn from the allegations in the Complaint and does not necessarily reflect Circle's understanding of the operation of the relevant technologies.

tokens.  *Id.*  Cryptocurrencies are secured via decentralized computing infrastructure which cryptographically verifies and immutably records on the blockchain any transaction which creates, destroys, or transfers a token.  *Id.* at ¶ 7.  A blockchain is a decentralized and immutable ledger maintained by hundreds or thousands of participating computing nodes.  *Id.*  Ownership of cryptocurrencies is established through possession of a private key, which is uniquely associated with a public address, also called a wallet.  *Id.*  Though a blockchain is traditionally an independent and isolated ecosystem, mechanisms exist to safely and securely transfer cryptocurrency between the hundreds of different blockchains in existence.  *Id.* ¶ 8.

One such mechanism is Multichain, a cryptocurrency platform organized by the Foundation that allows users to take a token recorded on one blockchain and transfer it using a different blockchain.  *Id.* ¶ 9.  Multichain accomplishes this by requiring users to contribute the asset they want to move from one blockchain to another to an address which functions as a "liquidity pool" on the first blockchain.  *Id.* ¶ 10.  Once the asset is transferred to the liquidity pool, an equivalent amount of new tokens, called "wrapped" tokens, are transferred to the user's specified address on the second blockchain.  *Id.*  On its website, the Foundation promised that Multichain users could redeem wrapped tokens for an equivalent amount of the underlying assets in its liquidity pools.  *Id.* ¶¶ 11-14.  One of the "wrapped" tokens offered by Multichain was a wrapped version of USDC for the Fantom blockchain ("multiUSDC").  *Id.* ¶¶ 25-26.  Plaintiff claims that it owns 3,575,000 multiUSDC tokens.  *Id.* ¶ 35.

### C.      Circle and USDC

Circle is the issuer of a stablecoin called USDC.  *Id.* ¶ 16.  As noted in the "USDC Terms" issued by Circle that govern USDC:

> USDC is fully backed by an equivalent amount of U.S. Dollar-denominated assets held by
> Circle with U.S. regulated financial institutions in segregated accounts apart from Circle's

corporate funds, on behalf of, and for the benefit of, Users (the "Segregated Accounts"). This means that for every USDC issued by Circle and remaining in circulation, Circle will hold on behalf of Users either one U.S. Dollar ("USD") or an equivalent amount of USD-denominated assets in its Segregated Accounts (the "USDC Reserves").[2]

Circle USDC Terms, § 1, available at https://www.circle.com/legal/usdc-terms.[3]

The USDC Terms make clear that a holder of USDC has no rights to the USDC Reserves except that those holders who have an account with Circle have the right to redeem USDC for an equivalent amount of U.S. dollars through that Circle account. _Id._ § 2. Specifically, the USDC Terms state that "[w]hile Circle may hold the USDC Reserves in interest-bearing accounts or other yield-generating instruments, you acknowledge that you are not entitled to any interest or other returns earned on such funds. USDC does not itself generate any interest or return for holders of USDC and only represents your right to redeem USDC for an equivalent amount of USD through your account with Circle." _Id._ The USDC Terms further emphasize that a holder of USDC has "the right to redeem USDC for USD funds so long as the Holder is eligible to, and does register a Circle Mint account. For the avoidance of doubt, if a Holder is not eligible to register for a Circle Mint account, or fails to do so, such Holder is not entitled to redeem USDC with Circle." _Id._ § 2. _See also_ Compl. ¶ 16 (noting "Circle's promise to its _registered clients_ to exchange 1 USDC for 1 U.S. dollar (i.e. $1) on demand at any time") (emphasis added). Plaintiff does not allege it has a Circle account or that it is a registered client of Circle.

---

[2]While the Complaint refers to these reserves as the "Circle Treasury," Compl. ¶ 17, they are referred to in this motion as the USDC Reserves to avoid confusion with Circle's own corporate funds, from which the USDC Reserves are segregated.

[3]As the Complaint incorporates the USDC Terms, Compl. ¶ 20, they can be considered by the Court on a motion to dismiss. _All. Network, LLC v. Sidley Austin LLP_, 987 N.Y.S.2d 794, 798 n.1 (Sup. Ct. 2014).

4

The USDC Terms also observe that parties "unaffiliated with Circle may create an asset and purport that such asset is collateralized or otherwise incorporates USDC into its design (a 'wrapper')." USDC Terms § 8. The Terms provide that "Circle supports only USDC and is under no obligation to support any copies of USDC or wrappers and assumes no responsibility for any value that might be lost as a result of copies of USDC." _Id._ In other words, Circle does not support multiUSDC or have responsibility for any loss of value associated with it.

Circle has the ability to render USDC tokens untransferable by "blacklisting" an address. Compl. ¶ 19. A blacklisted address is prevented from transferring any USDC it holds. _Id._ The Circle Stablecoin Access Denial Policy (the "Access Denial Policy") provides that Circle "will not deny access to individual addresses" except in two specific circumstances: 1) "Circle will accept and consider a request for an exception to its policy against access denial where Circle determines, in its sole discretion, that failure to grant a denial of access request presents a threat to the security, integrity, or reliability of the Circle Stablecoin network" and 2) "Circle will block individual addresses in order to comply with a law, regulation, or legal order from a duly recognized U.S. authorized authority, U.S. court of competent jurisdiction, or other governmental authority with jurisdiction over Circle." Access Denial Policy §§ 2-3, available at https://6778953.fs1.hubspotusercontent-na1.net/hubfs/6778953/Blog%20Posts/Circle%20Stablec oin%20Access%20Denial%20Policy_pdf.pdf.[4] Circle may lift the access denial "upon formal confirmation from such duly recognized U.S. authorized authority, U.S. court of competent jurisdiction, or other governmental authority with jurisdiction over Circle that the legal obligation or court order…is lifted or no longer applicable." _Id._ § 4.

---

[4] As the Complaint incorporates the Access Denial Policy, Compl. ¶ 21, it can be considered by the Court on a motion to dismiss. _All. Network, LLC_, 987 N.Y.S.2d at 798.

### D.    The Alleged Hack and Resulting Access Denial

In July 2023, several Multichain liquidity pools were hacked (the "Hack"), resulting in the theft of $125 million in cryptocurrency assets, including $63 million worth of USDC (the "Stolen USDC"). Compl. ¶ 28.   The Stolen USDC was transferred from the liquidity pool to three addresses (the "Hacker Addresses"). *Id.* ¶¶ 29-31.  Shortly after the Hack, Circle blacklisted the Hacker Addresses pursuant to a seizure warrant obtained from a court by the United States Department of Justice. *Id.* ¶¶ 31-32.  The Justice Department recently informed Circle that it would seek to vacate the seizure warrant by the end of July 2025. *Id.* ¶ 33.[5]

### E.    Procedural History

Plaintiff initiated this action on July 14, 2025 with the filing of a Complaint and Order to Show Cause seeking a preliminary injunction requiring Circle to continue to blacklist the Hacker Addresses.  NYSCEF Docs. 1, 2.  The parties stipulated to a preliminary injunction, entered by the Court on September 2, 2025, to preserve the status quo while Circle responds to the Complaint. NYSCEF Doc. 26.

## LEGAL STANDARD

To survive a motion to dismiss, it is not enough to plead "unsupported factual allegations" or "conclusory statements." *Heritage Partners, LLC v. Stroock & Stroock & Lavan LLP*, 133 A.D.3d 428, 428 [1st Dep't 2015].  In moving to dismiss, a defendant may rely upon documentary evidence that "conclusively establish[es] a defense to the asserted claims as a matter of law." *La Scoula D'Italia Guglielmo Marconi v. Gates Cap. Corp.*, 187 A.D.3d 581, 581 [1st Dep't 2020]

---

[5]As of the filing of this motion, the Department of Justice has not yet confirmed to Circle that the Seizure Warrant has actually been vacated.

6

(alteration in original).  The Court also may "consider documents referenced in a complaint." *All. Network, LLC*, 987 N.Y.S.2d at 798.

## ARGUMENT

Plaintiff's Complaint fails for two fundamental reasons.  First, Plaintiff has failed to make a prima facie showing that this Court has personal jurisdiction over Defendant.  Aside from a conclusory (and inaccurate) allegation that Circle has consented to jurisdiction in New York, Plaintiff alleges no facts connecting the operative facts of the Complaint to the State of New York.  Therefore, the Complaint should be dismissed under CPLR 3211(a)(8).

In addition, Plaintiff's Complaint should be dismissed under CPLR 3211(a)(7) because it fails to state a claim against Circle.  Plaintiff brings two causes of action against Circle: 1) a request for a declaratory judgment that Plaintiff is the beneficial owner of $3.575 million in the USDC Reserves; and 2) a constructive trust claim, seeking a judgment of $3.575 million against Circle.  The declaratory judgment action should be dismissed given the demonstrable existence of alternative remedies, as reflected in Plaintiff's own constructive trust claim.  Moreover, the facts alleged by Plaintiff clearly show it has no beneficial interest in the USDC Reserves.  As for the constructive trust claim, it fails to properly allege a single one of the elements of a constructive trust claim.  Circle has no relationship with Plaintiff, made it no promises, is not the party that Plaintiff claims has been unjustly enriched, and holds no identifiable property traceable to Plaintiff.

For those reasons, this Court should dismiss the Complaint in its entirety.

## I.      THIS COURT LACKS PERSONAL JURISDICTION OVER CIRCLE.

A "New York court may not exercise personal jurisdiction over a non-domiciliary unless two requirements are satisfied: the action is permissible under the long-arm statute (CPLR 302) and the exercise of jurisdiction comports with due process." *Williams v. Beemiller, Inc.*, 33 N.Y.3d 523, 528 [2019].  At this stage of the proceedings, Plaintiff has the burden to "make a prima facie

25-12340-dsj    Doc 1    Filed 10/23/25    Entered 10/23/25 16:47:43    Main Document
Pg 51 of 68

showing that the defendant was subject to the personal jurisdiction of the court." *Leuthner v. Homewood Suites by Hilton*, 151 A.D.3d 1042, 1043, 58 N.Y.S.3d 437, 438 [2d Dep't 2017].

As Plaintiff concedes, Circle is a non-domiciliary incorporated in Delaware and headquartered in Massachusetts. Compl. ¶ 4. *See Cruz v City of New York*, 210 A.D.3d 523, 524 [1st Dept 2022] ("General jurisdiction exists over a corporate entity only in the state(s) in which it is incorporated and has its principal place of business."). Therefore, to confer personal jurisdiction over Circle, Plaintiff must state a prima facie case that its causes of action are permissible under New York's long-arm statute. Under CPLR 302, personal jurisdiction exists where 1) the action arises out of defendant's New York business transactions; 2) the defendant commits a tortious action within New York; 3) the defendant commits a tortious act which causes injury within New York; or the action arises out of the defendant's ownership, use, or possession of real property within New York. None of these bases for personal jurisdiction are present in this case. Therefore, the Complaint should be dismissed under CPLR 3211(a)(8).

### A. Plaintiff has not alleged any New York transaction giving rise to the claims.

CPLR 302(a)(1) "grants New York courts jurisdiction over nondomiciliaries when the action arises out of the nondomiciliaries' transaction of any business within the state." *Leuthner, 151 A.D.3d at 438* (internal punctuation omitted). "In order to determine whether personal jurisdiction exists under CPLR 302(a)(1), a court must determine (1) whether the defendant transacted business in New York and, if so, (2) whether the cause of action asserted arose from that transaction." *Id.* "[I]n order to satisfy the second prong of the jurisdictional inquiry, there must be an 'articulable nexus' or a 'substantial relationship' between a defendant's in-state activity and the cause of action asserted." *Id.* (internal citations omitted).

Plaintiff alleges that Circle "transacts business in New York State and it has consented to personal jurisdiction here." Compl. ¶ 4. But "[i]t is not enough that a non-domiciliary defendant

8

transact business in New York to confer long-arm jurisdiction." *D & R Glob. Selections, S.L. v Bodega Olegario Falcon Pineiro*, 29 N.Y.3d 292, 298 [2017]. Plaintiff's failure to allege "that there was a substantial relationship" between Circle's New York business activities and Plaintiff's claims dooms any attempt to claim personal jurisdiction under CPLR 302(a)(1). *HT Capital Advisors, L.L.C. v Opt. Resources Group, Inc.*, 276 A.D.2d 420, 420 [1st Dept 2000]. Indeed, New York courts have regularly held such "wholly conclusory allegation[s]" that defendants "regularly engaged in transactions involving properties and persons in New York state" to be insufficient. *BGC Partners, Inc. v. Avison Young (Canada) Inc.*, 46 Misc. 3d 1202(A), at *4 [Sup. Ct. N.Y. Cty. 2014]. Similarly, Plaintiff offers no factual allegations to support the conclusory assertion that Circle has consented to personal jurisdiction in New York.

**B.    Plaintiff does not allege that Circle committed any tortious act while present in New York.**

CPLR 302(a)(2) "extend[s] jurisdiction to nonresidents who have committed tortious acts while present in New York." *SOS Capital v Recycling Paper Partners of PA, LLC*, 220 A.D.3d 25, 36 [1st Dept 2023].Here, Plaintiff "fail[s] to show that [Circle] committed a tort within New York State." *Shatara v Ephraim*, 137 A.D.3d 1244, 1247 [2d Dept 2016]. *See also Kyowa Seni, Co., Ltd. v ANA Aircraft Technics, Co., Ltd.*, 60 Misc 3d 898, 906 [Sup Ct 2018] (dismissing for lack of personal jurisdiction where complaint "fail[ed] to allege any tortious act that the [defendant] committed in New York"). Plaintiff has not alleged any tort claims or made any factual allegations of tortious activity against Circle, let alone any taking place in New York. Plaintiff's allegations "concerning the alleged [theft] by a nonparty, do not . . . suffice to establish personal jurisdiction over [an] out-of-state defendant[]." *Fouad v Milton Hershey School and School Tr.*, 231 A.D.3d 669, 670 [1st Dept 2024]. Nor does Circle's blacklisting of the Hacker Addresses pursuant to a Government seizure warrant constitute tortious activity by Circle.

But, even if it did, jurisdiction still would not lie under 302(a)(2). Plaintiff's allegation that Defendant maintains a New York office is not sufficient to establish jurisdiction absent allegations that Plaintiff's claims "arise[] out of [Defendant's] business activity in New York state." *See In re SSA Bonds Antitrust Litig.*, 420 F. Supp. 3d 219, 232 [SDNY 2019] (applying New York law, finding that the New York long-arm statute did not reach foreign defendants with New York offices absent allegations that claims arose from activities at those offices).[6]

### C. Plaintiff has not alleged that it suffered any injury in New York.

CPLR 302(a)(3) provides that New York courts have personal jurisdiction over a non-domiciliary who "commits a tortious act without the state causing injury to person or property within the state." A plaintiff relying on CPLR 302(a)(3) "must show that (1) the defendant committed a tortious act outside New York; (2) the cause of action arose from that act; (3) the tortious act caused an injury to a person or property in New York; (4) the defendant expected or should have reasonably expected the act to have consequences in New York; and (5) the defendant derived substantial revenue from interstate or international commerce." *Penguin Group (USA) Inc. v Am. Buddha*, 16 N.Y.3d 295, 302 [2011]. Even if Circle had committed a tortious act, dismissal for lack of jurisdiction under CPLR 302(a)(3) would be appropriate because Plaintiff also "failed to establish that it sustained injury in New York as required" by that section. *HT Capital Advisors, L.L.C.*, 276 A.D.2d at 420. Plaintiff is a Delaware limited partnership whose partners are domiciliaries of Florida and Massachusetts, Compl ¶ 3, and does not allege it suffered any injury in New York.

---

[6]In addition to being insufficient, this allegation is incorrect. While a related entity, Circle Internet Group, Inc., maintains an office in New York, Circle itself does not.

10

25-12340-dsj    Doc 1    Filed 10/23/25    Entered 10/23/25 16:47:43    Main Document
Pg 54 of 68

### D.  Plaintiff's claims do not arise out of Circle's possession or use of New York realty.

CPLR 302(a)(4) provides for specific personal jurisdiction where the plaintiff's cause of action arises out of defendant's ownership, use, or possession of real property in New York. *Lancaster v Colonial Motor Frgt. Line, Inc.*, 177 A.D.2d 152, 159 [1st Dept 1992]. Though Plaintiff        alleges that Circle maintains an office in New York, the Complaint is devoid of any connection of the alleged New York office to Plaintiff's claims. Therefore, Plaintiff cannot establish personal jurisdiction under 302(a)(4). *See Zeidan v Scott's Dev. Co.*, 173 A.D.3d 1639, 1640 [4th Dept 2019] (granting motion to dismiss for want of personal jurisdiction where there was no indication that defendant's ownership of property in New York gave rise to plaintiff's allegations).

*            *            *

In short, Plaintiff has failed to make a prima facie showing that this Court can exercise personal jurisdiction over Circle. Accordingly, the Court should dismiss the Complaint under CPLR 3211(a)(8).

## II.    PLAINTIFF'S CLAIMS FAIL AS A MATTER OF LAW.

In addition to lack of jurisdiction, the Complaint should be dismissed in its entirety under CPLR 3211(a)(7) because the pleading fails to state a cause of action.

### A.    The Declaratory Judgment Cause of Action Fails.

"CPLR 3211(a)(7) does double duty in declaratory judgment actions as both a facial sufficiency screening mechanism and an accelerated-judgment mechanism." *Kerri W.S. v Zucker*, 202 A.D.3d 143, 154 [4th Dept 2021]. Motions to dismiss declaratory claims are analyzed in three steps: 1) whether a justiciable controversy is adequately pleaded; 2) whether there are disputed facts precluding a summary determination of the parties' rights; and 3) if there are no relevant

11

questions of fact, the court treats the motion to dismiss as a motion for a declaration. _Id._ at 154-55.  At the same time, a plaintiff "may not seek a declaratory judgment when other remedies are available, such as monetary damages. _Uber Techs., Inc. v. Am. Arb. Ass'n, Inc._, 204 A.D.3d 506, 509–10 [1st Dept 2022].  "A declaratory judgment action is generally appropriate only where a conventional form of remedy is not available." _Bartley v. Walentas,_ 78 A.D.2d 310, 312, [1st Dept 1980] (affirming grant of motion to dismiss declaratory judgement claim).  "Where alternative conventional forms of remedy are available, resort to a formal action for declaratory relief is generally unnecessary and should not be encouraged." _Id._; _see also_ _New York Bus Operators Compen. Tr. V. Am. Home Assurance Co._, 144 N.Y.S.3d 820, 824 [N.Y. Sup. Ct. 2021] (dismissing cause of action for declaratory judgment where "the declaratory relief sought by the plaintiff is merely incidental to the monetary relief requested in the second cause of action.")

1.    **The availability of an alternative remedy warrants dismissal of Plaintiff's declaratory judgment claim.**

Plaintiff seeks a declaration regarding its alleged beneficial ownership of $3.575 million held by Circle in the USDC Reserves.  Even if Plaintiff could sustain its claim    of beneficial ownership—and as discussed below, it cannot—a declaratory judgment would be improper because Plaintiff "may not seek a declaratory judgment when other remedies are available, such as monetary damages." _Uber Techs., Inc._, 204 A.D.3d at 509–10.  Plaintiff's declaratory judgment claim is nothing more than a disguised request for monetary relief.  Despite alleging beneficial ownership of the Stolen USDC, Plaintiff notably declined to seek a declaration of its ownership of the Stolen USDC.  Instead, Plaintiff seeks only a declaration as to a sum of money.Plaintiff's own Complaint pursues an alternative remedy by bringing its second cause of action seeking a judgment against Circle for the same amount of $3.575 million.  Indeed, "the declaratory relief sought by the plaintiff is merely incidental to the monetary relief requested in the second cause of action."

12

*See New York Bus Operators Compensation Tr. v Am. Home Assur. Co.,* 144 N.Y.S.3d 820, 824 [Sup Ct 2021], *affd,* 241 A.D.3d 563 [2d Dept 2025].   Accordingly, Plaintiff's declaratory judgment claim should be dismissed.

**2.     Plaintiff's own allegations demonstrate that it is not the beneficial owner of any funds in the USDC Reserves.**

If a declaratory judgment action were appropriate here, Circle would be entitled to a declaratory judgment rather than Plaintiff.   The allegations in the Complaint[7] and the Circle policies incorporated therein establish that Plaintiff has no beneficial ownership or rights with respect to the USDC Reserves.   Plaintiff attempts to assert beneficial ownership over $3.575 million held in Circle's USDC Reserves based on its alleged ownership of 3.575 million multiUSDC tokens through two different faulty and conclusory assertions.   First, Plaintiff claims without foundation that ownership of the 3.575 million multiUSDC gives it beneficial ownership of 3.575 million of the Stolen USDC.   Second, Plaintiff claims, again without foundation, that beneficial ownership of 3.575 million of the Stolen USDC gives it beneficial ownership of $3.575 million held in Circle's USDC Reserves.   Neither step of Plaintiff's claim can survive  scrutiny.

Plaintiff's ownership of multiUSDC does not give it "beneficial ownership" of the Stolen USDC held in the Hacked Addresses.   According to the Complaint, the Stolen USDC were stolen from a liquidity pool on Multichain, not from Plaintiff.   Plaintiff does not allege that the Stolen

---

[7]Circle does not concede or actively disputes many of the allegations in the Complaint.   For example. Circle has never "stated its intent to provide [USDC Reserves] funds to the thieves who conducted the Hack." Compl.   ¶ 37.   Circle also would dispute numerous allegations in the Complaint regarding the operation of USDC, including but not limited to that USDC is the analog of a bank deposit or that blacklisting "creates a windfall for Circle." Compl. ¶¶ 16, 19.   Circle also does not have knowledge of and would require discovery regarding Plaintiff's allegations regarding the operation of Multichain, the alleged theft of USDC from the Multichain liquidity pool, and Plaintiff's alleged ownership of multiUSDC.   Even assuming the truth of all of Plaintiff's allegations, however, it is clear that Plaintiff is not the beneficial owner of any USDC Reserves funds, and so the Court may rule accordingly on the motion.

13

USDC were ever its property prior to the theft, that it ever had possession of them, that it ever transferred them to Multichain, or that it ever had any connection of any kind to them. Plaintiff does not allege that it entered into any contract or agreement with Multichain or the Foundation in which they conveyed beneficial ownership rights to the Stolen USDC. Instead, its entire claim is based on the fact that Multichain users were promised by the Foundation that they could redeem "wrapped" tokens (i.e. multiUSDC) for an equivalent amount of the underlying assets (i.e. USDC) in its liquidity pools. Compl. ¶¶ 11-14. But this is simply a promise to trade multiUSDC for USDC – it does not purport to convey an ownership interest in particular USDC tokens, or even a generalized amount of USDC tokens, to holders of multiUSDC. Plaintiff is not a beneficial owner of the particular Stolen USDC merely by virtue of having purchased an entirely different cryptocurrency.

Even if Plaintiff were the beneficial owner of the Stolen USDC, that would not make it the beneficial owner of any funds in the USDC Reserves. Under the explicit provisions of the USDC Terms, holders of USDC, let alone non-holder beneficial owners, do not have any rights to the USDC Reserves except "the right to redeem USDC for USD funds so long as the Holder is eligible to, and does register a Circle Mint account." USDC Terms § 2. Plaintiff acknowledges in the Complaint that Circle's promise to redeem USDC is only made to "registered clients." Compl. ¶ 16. But Plaintiff does not allege that it is a registered client of Circle, that it has a Circle Mint account, is eligible to register for such an account, or has ever entered into any contract, agreement or other relationship with Circle. Accordingly it has no rights whatsoever with respect to Circle or the USDC Reserves, let alone beneficial ownership rights. If Plaintiff actually acquired any rights with respect to Multichain or the Foundation by its acquisition of multiUSDC, they have no bearing on Circle. Circle is not involved with multiUSDC and has made clear in its USDC Terms

14

that it does not support such "wrapped" products. Circle even explicitly states that it "assumes no responsibility for any value that might be lost as a result of this lack of support." USDC Terms § 8.

Therefore, Plaintiff has no beneficial ownership interest in the USDC Reserves.

\*       \*       \*

Accordingly, the Court should dismiss Plaintiff's request for a declaratory judgment or enter a declaratory judgment in favor of Circle.

### B. The Constructive Trust Claim Fails.

To state a claim for a constructive trust, Plaintiff must allege "(1) a fiduciary or confidential relationship; (2) an express or implied promise; (3) a transfer in reliance on the promise; and (4) unjust enrichment." *Est. of Uddin v. Miah*, 216 N.Y.S.3d 207, 209-10 [N.Y. App. Div. 2d Dept. 2024]. Plaintiff must also establish, among other elements, that its assets can be traced to specific, identifiable property in the hands of Circle. *Rogers v Rogers*, 63 N.Y.2d 582, 586 [1984]. Plaintiff has alleged none of the elements required.

### 1. Plaintiff has not alleged a fiduciary relationship.

A "fiduciary relationship arises between two persons when one of them is under a duty to act for or to give advice for the benefit of another upon matters within the scope of the relation." *Roni LLC v. Arfa*, 18 N.Y.3d 846, 848, 963 N.E.2d 123 [2011]. "While a contractual relationship is not required for a fiduciary relationship, 'if [the parties] do not create their own relationship of higher trust, courts should not ordinarily transport them to the higher realm of relationship and fashion the stricter duty for them.'" *Oddo Asset Mgt. v Barclays Bank PLC*, 19 N.Y.3d 584, 593, 973 N.E.2d 735 [2012] (quoting *Northeast Gen. Corp. v. Wellington Adv.*, 82 N.Y.2d 158, 162, 604 N.Y.S.2d 1, 624 N.E.2d 129 [1993]). Here, Plaintiff has not alleged that any relationship exists between it and Circle, much less one of "higher trust" which would impose upon Circle the

15

duty to act for the benefit of Plaintiff. Plaintiff's sole alleged connection to Circle is that it owns 3.575 million multiUSDC, an entirely different cryptocurrency issued by another party. Compl. ¶ 35. As noted above, Circle's USDC Terms expressly disclaim any responsibility for such "wrapped" cryptocurrencies. USDC Terms § 8.

### 2. Plaintiff has not alleged any express or implied promise or a transfer in reliance on such a promise.

Dismissal of a constructive trust claim is appropriate when a plaintiff fails "to allege any promise, express or implied, relating to the subject property, or any transfer in reliance on any promise relating to the property." *Mazzei v Kyriacou*, 139 A.D.3d 823, 824 [2d Dept 2016]. The sole promise Plaintiff has alleged is "Circle's promise to its *registered clients* to exchange 1 USDC for 1 U.S. dollar (i.e. $1) on demand at any time." Compl. ¶ 16 (emphasis added). But Plaintiff is not a registered client of Circle, and so that promise was not made to Plaintiff. Nor has Plaintiff claimed it made any transfer of funds now in the USDC Reserves or of the Stolen USDC, let alone any transfer in reliance on that promise. Plaintiff does not even claim it purchased its 3.575 million multiUSDC in reliance on that promise. Without a promise made by Circle to Plaintiff, much less a transfer by Plaintiff in reliance on such a promise, Plaintiff's constructive trust claim should be dismissed. *See Halliwell v Gordon*, 61 A.D.3d 932, 935 [2d Dept 2009].

### 3. Plaintiff has not alleged that Circle will be unjustly enriched.

"The ultimate purpose of a constructive trust is to prevent unjust enrichment and, thus, a constructive trust may be imposed '[w]hen property has been acquired in such circumstances that the holder of the legal title may not in good conscience retain the beneficial interest'" *Harounian v. Harounian*, 198 A.D.3d 734, 737-38 [2d Dept 2009]. Recognizing that Circle's USDC Reserves was not acquired in any such circumstances, Plaintiff does not even allege that Circle has been unjustly enriched. Instead the Complaint explicitly alleges that it is *the thieves*, not Circle, who

16

"engaged in a wrongful act" and will be unjustly enriched if the Circle does not continue to blacklist the Hacker Addresses. Compl. ¶¶ 40, 42.  There is simply no basis for a money judgment against an innocent third party like Circle based on the enrichment of the thieves, however, and Plaintiff's recourse, if any, is against the thieves to recover the Stolen USDC.  *See Woods v 126 Riverside Dr. Corp.*, 64 A.D.3d 422, 424 [1st Dept 2009] (dismissing unjust enrichment claim where plaintiff failed to identify benefit conferred on defendant).

### 4.      Plaintiff has not traced its assets to the property in Circle's hands.

To impose a constructive trust under New York law, "it is necessary to trace one's equitable interest to identifiable property in the hands of the purported constructive trustee."  *Rogers*, 63 N.Y.2d at 586.  As with the other elements, Plaintiff has not even attempted to allege traceability in the Complaint.  There is no connection between Plaintiff's ownership of multiUSDC and any identifiable property in Circle's possession.  Plaintiff simply claims a general money judgment against Circle based on the amount of multiUSDC it owns, with no attempt at tracing a connection from the latter to any specific identifiable property held by Circle.

\*      \*      \*

Because the Complaint fails to establish any of the required elements, Plaintiff's constructive trust claim should be dismissed as a matter of law.

### CONCLUSION

Plaintiff's Complaint against Circle should be dismissed in its entirety, and the Court should grant such other or further relief as it deems just and proper.

17

Dated: New York, New York                JONES DAY
       September 29, 2025

                                         By:*/s/ Harold K. Gordon*
                                         Harold K. Gordon
                                         hkgordon@jonesday.com
                                         Alexander J. Wilson
                                         alexanderwilson@jonesday.com
                                         250 Vesey Street
                                         New York, NY 10281.1047
                                         Telephone: +1.212.326.3740
                                         Facsimile: +1.212.755.7306
                                         Attorneys for Defendant
                                         Circle Internet Financial, LLC

18

### Certificate of Word Count Compliance

The undersigned counsel hereby certifies pursuant to Section 202.8-b of the Uniform Rules for the Supreme Court of the State of New York, that this document contains 5,137 words (based on the Microsoft Word word-count function) and complies with the word count limit of those Rules.

Dated: New York, New York          JONES DAY
September 29, 2025

By: */s/ Harold K. Gordon*
Harold K. Gordon
hkgordon@jonesday.com
Alexander J. Wilson
alexanderwilson@jonesday.com
250 Vesey Street
New York, NY  10281.1047
Telephone:  +1.212.326.3740
Facsimile:  +1.212.755.7306
Attorneys for Defendant
Circle Internet Financial, LLC

# EXHIBIT D

**SUPREME COURT OF THE STATE OF NEW YORK**
**COUNTY OF NEW YORK**

- - - - - - - - - - - - - - - - - - - - - - - - - - x

Newton AC/DC Fund, L.P.,            :

                                      :        Index No.  654157/2025

                  Plaintiff,     :

                                      :        Motion Sequence No.: 001

         - against -          :

                                      :        **STIPULATED CONSENT**

Circle Internet Financial, LLC,      :        **PRELIMINARY INJUNCTION**

                                        :

                  Defendant.    :

- - - - - - - - - - - - - - - - - - - - - - - - - - x

**AND NOW**, on this ___2nd___ day of ~~August~~ September 2025, pursuant to the agreement of Plaintiff

Newton AC/DC Fund, L.P. ("the Fund") and Defendant Circle Internet Financial, LLC ("Circle"),

by counsel, **IT IS HEREBY ORDERED** that, until further Order of the Court:

        1.      This Stipulated Consent Preliminary Injunction shall supersede the Court's Order

of July 16, 2025 (NYSCEF Doc. No. 10);

        2.      Until further order of the Court, Circle shall blocklist the following cryptocurrency

wallet addresses on the Ethereum blockchain to prevent the transfer of USDC currently held in

such addresses (the "Wallet Addresses"):

                a.    0xefeef8e968a0db92781ac7b3b7c821909ef10c88,

                b.    0x027f1571aca57354223276722dc7b572a5b05cd8, and

                c.    0x48bead89e696ee93b04913cb0006f35adb844537.

        3.      The Fund is not required to give an undertaking while this Order remains in effect.

        4.      The parties' agreement and stipulation to entry of this Order is not and shall not be

deemed an admission of any fact or allegation by either party or that either party is acting or has

acted improperly or unlawfully, and each party reserves and preserves all of its respective rights,

claims, and defenses, including but not limited to all jurisdictional defenses, without limitation.

CNI-2200270150v3

FILED: NEW YORK COUNTY CLERK 09/02/2025 04:23 PM
NYSCEF DOC. NO. 28

INDEX NO. 654157/2025

RECEIVED NYSCEF: 09/02/2025

25-12340-dsj    Doc 1    Filed 10/23/25    Entered 10/23/25 16:47:43    Main Document
Pg 65 of 68

5.      The deadline for any party to intervene in this litigation pursuant to CPLR § 1013 shall not expire before 60 days from the entry of this Stipulated Consent Preliminary Injunction.

6.      The Fund shall draft a notice (the "Intervention Notice") that informs recipients of their right to seek leave to intervene in this litigation.

7.      Within 30 days of entry of this Stipulated Consent Preliminary Injunction, the Fund shall make reasonable efforts to serve a copy of the Complaint and the Intervention Notice to:

    a.  The party or parties to whom the Wallet Addresses belong;

    b.  The Liquidators of Multichain Foundation Ltd. appointed by the Supreme Court of the Republic of Singapore;

    c.  The Fantom Foundation; and

    d.  All current holders of Multi USDC tokens.

8.      To the extent the Fund is unaware of a valid email or mailing address for any of the people or entities set forth in paragraph 7 (the "Recipients"), it may serve the Recipients by transmission of a cryptocurrency token that contains the Complaint and the Intervention Notice to cryptocurrency wallets held or used by the Recipients.  The Fund may perform this service itself or by retaining a vendor to do so, and it shall provide notice to the Court of the status of this effort on or before November 1, 2025.

Dated:
9/2/2025

**HON. ANDREW BORROK**
**J.S.C.**

CNI-2200270150v3                                    2

Dated:  August 26, 2025


_Harold K. Gordon_ _(signature)_

Harold K. Gordon
Alexander J. Wilson
JONES DAY
250 Vesey Street
New York, New York 10281
T:  (212) 326-3939
F:  (212) 755-7306
hkgordon@jonesday.com
alexanderwilson@jonesday.com

*Counsel for Defendant*
*Circle Internet Financial, LLC*


William H. Newman
33 Nassau Avenue, Second Floor
Brooklyn, New York 11222
T:  (718) 218-3360
will@willnewmanlawyer.com

*Counsel for Plaintiff*
*Newton AC/DC Fund, L.P.*


Dated:  _____


**SO ORDERED:**

_____

Hon. Andrew Borrok, J.S.C.


CNI-2200270150v3

3

**CAHILL GORDON & REINDEL LLP**
Joel H. Levitin
Miles Wiley
32 Old Slip
New York, NY 10005
Tel: (212) 701-3770/3395
jlevitin@cahill.com
mwiley@cahill.com
and
Gregory Strong (*pro hac vice* pending)
221 W. 10th Street, 3rd Floor
Wilmington, DE 19801
Tel: (302) 884-0001
gstrong@cahill.com

*Counsel for Bob Yap Cheng Ghee, Toh Ai Ling, and Tan Yen Chiaw,*
*in their capacities as the joint and several liquidators of Multichain*
*Foundation Ltd. (In Liquidation) in insolvency proceedings before*
*the General Division of the High Court of the Republic of Singapore*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re | Chapter 15 |
| MULTICHAIN FOUNDATION LTD.,[1] | Case No. 25-_____ ( ) |
| Debtor in a Foreign Proceeding. | |

## <u>VERIFICATION OF CHAPTER 15 PETITION</u>

I, Bob Yap Cheng Ghee, hereby verifies as follows:

1.      I am one of the joint and several liquidators of Multichain Foundation Ltd. (In

Liquidation) ("**Multichain**"), duly appointed by the General Division of the High Court of the

Republic of Singapore.

---

[1] The Debtor in this chapter 15 case, along with its unique identifier, is Multichain Foundation Ltd. (In Liquidation) (Singapore Business Number: 202141342W). The Debtor's current registered and business address is 12 Marina View, #15-01 Asia Square Tower, #2, Singapore 018961.

2.      In my capacity as a liquidator, I, along with the other joint and several duly-appointed liquidators of Multichain, authorized the filing of a voluntary chapter 15 Petition for Recognition of a Foreign Proceeding, including the following attachments thereto (collectively, the "**Chapter 15 Petition and Attachments**"):

- Official Form 401 Chapter 15 Petition for Recognition of a Foreign Proceeding

- Evidence of the Foreign Proceeding and Statements and Lists Required by Bankruptcy Code Section 1515 and Bankruptcy Rule 1007(A)(4)

- Corporate Ownership Statement Pursuant to Federal Rules of Bankruptcy Procedure 1007(a)(4) and 7007.1 and Local Rule 1007-3

- Statements of the Foreign Representative Required by Section 1515 of the Bankruptcy Code and Federal Rule of Bankruptcy Procedure 1007(a)(4)

3.      Each of the factual statements and allegations set forth in the Chapter 15 Petition and Attachments are true and correct to the best of my knowledge, information, and belief.

I verify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge, information, and belief.

Executed on:  October 22, 2025          By: _____

*Bob Yap Cheng Ghee, as one of the Joint
and Several Liquidators of Multichain
Foundation Ltd. (In Liquidation)*

2