**CAHILL GORDON & REINDEL LLP**
Joel H. Levitin
Miles Wiley
32 Old Slip
New York, NY 10005
Tel: (212) 701-3770/3395
jlevitin@cahill.com
mwiley@cahill.com
and
Gregory Strong (*pro hac vice* pending)
221 W. 10th Street, 3rd Floor
Wilmington, DE 19801
Tel: (302) 884-0001
gstrong@cahill.com

*Counsel for Bob Yap Cheng Ghee, Toh Ai Ling, and Tan Yen Chiaw,*
*in their capacities as the joint and several liquidators of Multichain*
*Foundation Ltd. (In Liquidation) in insolvency proceedings before*
*the General Division of the High Court of the Republic of Singapore*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re | Chapter 15 |
| MULTICHAIN FOUNDATION LTD.,[1] | Case No. 25-12340 (DSJ) |
| Debtor in a Foreign Proceeding. | |

## MOTION IN SUPPORT OF VERIFIED PETITION FOR
## <u>RECOGNITION OF FOREIGN PROCEEDINGS AND FOR RELATED RELIEF</u>

---

[1] The Debtor in this chapter 15 case, along with its unique identifier, is Multichain Foundation Ltd. (In Liquidation) (Singapore Business Number: 202141342W). The Debtor's current registered and business address is 12 Marina View, #15-01 Asia Square Tower, #2, Singapore 018961.

**TABLE OF CONTENTS**

JURISDICTION AND VENUE ........................................................................................ 3

FACTUAL BACKGROUND ........................................................................................... 4

RELIEF REQUESTED ................................................................................................... 9

BASES FOR RELIEF ................................................................................................... 10

    I.     The Debtor is Eligible for Chapter 15 Relief. ...................................................... 11

    II.    Recognition of the Singapore Insolvency Proceedings as a "Foreign Main
          Proceeding" and of the Petitioners as Multichain's "Foreign Representatives" is
          Appropriate. ........................................................................................................ 13

        A.    The Singapore Insolvency Proceedings are a "Foreign Proceeding." .............. 14

        B.    The Singapore Insolvency Proceedings are a "Foreign Main Proceeding." ..... 16

        C.    The Petitioners are a Qualifying Foreign Representative. ............................... 17

        D.    The Chapter 15 Petition Meets the Requirements of Section 1515. ................ 18

    III.   The Petitioners are Entitled to Relief Under Section 1520. .................................. 20

    IV.   Relief Under Section 1521 is Necessary and Appropriate. ................................... 21

    V.    Recognition and Granting the Related Relief is Consistent with Principles of
          Comity. ............................................................................................................... 22

    VI.   Recognition of the Singapore Insolvency Proceedings is Not Manifestly Contrary
          to United States' Public Policy. ........................................................................... 24

    VII. Relief Under Section 1507 is Necessary and Appropriate. ................................... 25

NOTICE ...................................................................................................................... 26

NO PRIOR REQUEST ................................................................................................. 26

CONCLUSION ............................................................................................................. 27

i

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re ABC Learning Ctrs. Ltd.*,
445 B.R. 318 (Bankr, D. Del. 2010) ......................................................................25

*In re ABC Learning Ctrs. Ltd.*,
728 F.3d 301 (3d Cir. 2013) ......................................................................14, 25

*In re Agro Santino OOD*,
653 B.R. 79 (Bankr. S.D.N.Y. 2023) ......................................................................13

*In re Ashapura Minechem Ltd.*,
480 B.R. 129 (S.D.N.Y. 2012) ......................................................................25

*In re Atlas Shipping A/S*,
404 B.R. 726 (Bankr. S.D.N.Y. 2009) ......................................................................22, 26

*In re Avanti Commc'n Grp. PLC*,
582 B.R. 603 (Bankr. S.D.N.Y. 2018) ......................................................................13, 22, 26

*In re Barnet*,
737 F.3d 238 (2d Cir. 2013) ......................................................................12

*In re B.C.I. Fins. Pty Ltd.*,
583 B.R. 288 (Bankr. S.D.N.Y. 2018) ......................................................................11, 12

*In re Bear Stearns High-Grade Structured Credit Strategies Master Fund, Ltd.*,
374 B.R. 122 (Bankr. S.D.N.Y. 2007), *aff'd*, 389 B.R. 325 (S.D.N.Y. 2008) ......................17

*In re Berau Cap. Res. Pte Ltd.*,
540 B.R. 80 (Bankr. S.D.N.Y. 2015) ......................................................................4, 12, 24

*In re Black Gold S.A.R.L.*,
635 B.R. 517 (B.A.P. 9th Cir. 2022) ......................................................................13

*Collins* v. *Oilsands Quest Inc.*,
484 B.R. 593 (S.D.N.Y. 2012) ......................................................................25

*In re Culligan Ltd.*,
2021 WL 2787926 (Bankr. S.D.N.Y. July 2, 2021) ......................................................................13

*In re Energy Coal S.P.A.*,
   582 B.R. 619 (Bankr. D. Del. 2018) ........................................................................26

*In re Fairfield Sentry Ltd.*,
   714 F.3d 127 (2d Cir. 2013)............................................................................16, 25

*In re Gerova Fin. Grp., Ltd.*,
   482 B.R. 86 (Bankr. S.D.N.Y. 2012) .....................................................................17

*In re Ocean Rig UDW Inc.*,
   570 B.R. 687 (Bankr. S.D.N.Y. 2017) ...................................................................18

*In re Octaviar Admin. Pty Ltd.*,
   511 B.R. 361 (Bankr. S.D.N.Y. 2014) ...................................................................13

*In re Oi Brasil Holdings Cooperatief U.A.*,
   578 B.R. 169 (Bankr. S.D.N.Y. 2017) ...................................................................13

*In re Oversight & Control Comm'n. of Avánzit, S.A.*,
   385 B.R. 525 (Bankr. S.D.N.Y. 2008) .............................................................11, 14

*Philadelphia Gear Corp.* v. *Philadelphia Gear de Mexico, S.A.*,
   44 F.3d 187 (3d Cir. 1994)....................................................................................24

*In re Pirogova*,
   593 B.R. 402 (Bankr. S.D.N.Y. 2018) ...................................................................16

*In re Platinum Partners Value Arbitrage Fund L.P.*,
   2018 WL 3207119 (S.D.N.Y. June 29, 2018) ........................................................11

*In re PT Bakrie Telecom Tbk*,
   601 B.R. 707 (Bankr. S.D.N.Y. 2019) ...................................................................18

*In re Rede Energia S.A.*,
   515 B.R. 69 (Bankr. S.D.N.Y. 2014) .....................................................................24

*In re SphinX, Ltd.*,
   351 B.R. 103 (Bankr. S.D.N.Y. 2006), *aff'd*, 371 B.R. 10 (S.D.N.Y. 2007) .........18

*Victrix S.S. Co., S.A.* v. *Salen Dry Cargo A.B.*,
   825 F.2d 709 (2d Cir. 1987)...................................................................................26

*In re Wayne Burt Pte. Ltd.*,
   2024 WL 5003229 (Bankr. D.N.J. Dec. 6, 2024) ........................................23, 24, 25

**Statutes**

11 U.S.C. § 101 ..................................................................................... *passim*

11 U.S.C. § 105 ...........................................................................................26

11 U.S.C. § 109 ...........................................................................................12

11 U.S.C. § 362 ...........................................................................................21

11 U.S.C. § 1501 ..........................................................................8, 10, 11, 12, 25

11 U.S.C. § 1502 .................................................................................. *passim*

11 U.S.C. § 1504 ..........................................................................................19

11 U.S.C. § 1506 ..........................................................................................25

11 U.S.C. § 1507 ..........................................................................................26

11 U.S.C. § 1515 .................................................................................. *passim*

11 U.S.C. § 1516 .....................................................................................16, 18

11 U.S.C. § 1517 .................................................................................. *passim*

11 U.S.C. § 1520 ..........................................................................................20

11 U.S.C. § 1521 .................................................................................. *passim*

28 U.S.C. § 157 ..............................................................................................3

28 U.S.C. § 1334 ............................................................................................3

28 U.S.C. § 1410 .........................................................................................3, 4

**Other Authorities**

Bankruptcy Rule 1007 ...........................................................................10, 13, 20

Bankruptcy Rule 2002 ....................................................................................27

Bankruptcy Rule 7007.1 .................................................................................20

Bob Yap Cheng Ghee, Toh Ai Ling, and Tan Yen Chiaw (the "**Petitioners**") in their capacities as the court-appointed joint and several liquidators of Multichain Foundation Ltd. (In Liquidation) ("**Multichain**"), in insolvency proceedings (the "**Singapore Insolvency Proceedings**") pending before the General Division of the High Court of the Republic of Singapore (the "**Singapore Court**"), Case No. HC/CWU 134/2025, by and through their undersigned counsel, respectfully submit this *Motion in Support of Verified Petition for Recognition of Foreign Proceedings and for Related Relief* (the "**Recognition Motion**") and *Verified Petition for Recognition of Foreign Proceedings* (the "**Verified Petition**"), filed substantially contemporaneously herewith, seeking, among other things, entry of the proposed order attached as **Exhibit A** (the "**Proposed Order**") (i) recognizing the Singapore Insolvency Proceedings as a "foreign main proceeding" under sections 1502(4), 1515, and 1517 of title 11 of the United States Code (the "**Bankruptcy Code**"), (ii) recognizing the Petitioners as Multichain's "foreign representatives" as defined in section 101(24) of the Bankruptcy Code, (iii) continuing or granting the provisional relief requested by the Petitioners – pursuant to section 1521(a)(1) of the Bankruptcy Code – staying a pending action in New York state court and ordering Circle, the defendant in the Newton Proceedings (both as defined below) pending in the New York court to blacklist or freeze certain digital asset wallet addresses that hold what the Petitioners assert are stolen assets belonging to Multichain and to maintain the dollar reserves backing such stolen assets, (iv) entrusting the administration and realization of Multichain's assets within the territorial jurisdiction of the United States to the Petitioners, pursuant to section 1521(a)(5) of the Bankruptcy Code, (v) granting the Petitioners authority – pursuant to section 1521(a)(4) of the Bankruptcy Code – to examine witnesses, take evidence, and deliver information concerning Multichain's

assets, affairs, rights, obligations, and liabilities, and (vi) granting such other and further relief as
is just and proper under the circumstances.

In support of the Verified Petition and the Recognition Motion, the Petitioners rely on (i)
the *Declaration of Bob Yap Cheng Ghee in Support of First Day Documents* (the "**Yap
Declaration**") and (ii) the *Declaration of Ong Tun Wei Danny in Support of First Day Documents*
(the "**Ong Declaration**"), each filed substantially concurrently herewith and incorporated as if
fully set forth herein.  In addition, the Petitioners respectfully represent as follows:

## INTRODUCTION

1.      Multichain is undergoing a wind-down and liquidation in the Singapore Insolvency
Proceedings currently pending before the Singapore Court.  The Petitioners were appointed by the
Singapore Court to serve as the liquidators of Multichain, with authority to wind down the
operations of Multichain, pursue and marshal Multichain's assets, administer and manage claims
by creditors, and distribute Multichain's assets to its legitimate and eligible creditors.

2.      The Petitioners believe that they are entitled to recover certain cryptocurrency
assets and/or the value thereof that were stolen from Multichain and are currently within the control
of a company located in the United States for the benefit of Multichain's creditors as part of that
process.

3.      Certain of Multichain's purported creditors have asserted claims in New York state
court directly against the company in control of the stolen assets to recover the assets for the benefit
of certain class members (the "**Newton Proceedings**").  Through these chapter 15 proceedings,
the Petitioners seek, among other things, to enjoin that litigation from proceeding, to preserve the
stolen assets and the U.S. dollars that back them, and ultimately to recover the stolen assets or their

2

value so that they can be administered in the Singapore Insolvency Proceedings for the benefit of all of Multichain's known creditors. Plaintiffs in the Newton Proceedings define the proposed class as "all multiUSDC holders." *See* Memorandum of Law in Support of the Motion by Newton AC/DC Fund, L.P., Scallion Trading Ltd., and Stanton Street Capital Partners, Inc. for Class Certification, to Appoint Class Representatives, and to Appoint Class Counsel at 2, *Newton AC/DC Fund, L.P.* v. *Circle Internet Financial, LLC*, No. 654157/2025 (N.Y. Sup. Ct. Jul. 14, 2025) (Dkt. No. 35) (the "**Newton Class Cert. Mot.**"); *see also* Verified Petition, Ex. B (Newton Complaint) ¶ 51. This definition does not cover all potential eligible claimants. There may be additional creditors beyond Multi-USDC holders that may be entitled to a share in the ultimate distribution of Multichain's assets. Certification of the proposed class in New York may frustrate the Singapore Court's ability to ensure that all eligible claimants are provided their lawful share of Multichain's assets. Yap Declaration ¶ 33.

## JURISDICTION AND VENUE

4.      This Court has jurisdiction to consider this matter pursuant to sections 157 and 1334 of title 28 of the United States Code and the *Amended Standing Order of Reference M-431*, dated January 31, 2012 (Preska, C.J.).

5.      This is a core proceeding pursuant to section 157(b)(2) of title 28 of the United States Code. *See* 28 U.S.C. § 157(b)(2)(P) ("Core proceedings include, but are not limited to . . . recognition of foreign proceedings and other matters under chapter 15 of title 11.").

6.      Venue is proper in this Court pursuant to section 1410(1) of title 28 of the United States Code, which provides that "[a] case under chapter 15 of title 11 may be commenced in the district court of the United States for the district . . . in which the debtor has its principal place of

business or principal assets in the United States." 28 U.S.C. § 1410(1). Certain of the assets of Multichain that the Petitioners assert an interest in are subject to pending litigation in a state court in New York; the Petitioners assert that the party with the ability to freeze such assets is located in New York, and undersigned counsel holds a retainer in an account based in New York. *In re Berau Cap. Res. Pte Ltd.*, 540 B.R. 80, 82 (Bankr. S.D.N.Y. 2015) (finding "attorney retainers deposited in New York" sufficient to establish venue). In addition, venue is proper under 28 U.S.C. § 1410(3), in the interests of justice, because this motion seeks a stay of currently pending litigation in New York.

## FACTUAL BACKGROUND

7.      In July, 2023, unidentified hackers (the "**Hackers**") stole a significant amount of digital assets from Multichain, including units of a digital asset known as USDC valued at approximately $63 million (the "**Stolen USDC**"). Yap Declaration ¶ 15.

8.      Multichain was in the business of operating a software protocol known as a "cross-chain bridge" because it allowed users to deposit digital assets with Multichain on one blockchain network, following which Multichain would issue different digital assets intended to be of equal value to these users on another blockchain network (*i.e.*, to bridge digital assets from one blockchain network to another). *Id.* ¶ 12. For example, users could transfer USDC on the Ethereum blockchain network to Multichain, and receive Multi-USDC, another digital asset, from Multichain on the Fantom blockchain network. *Id.* Similarly, a holder of Multi-USDC on the Fantom blockchain could transfer that Multi-USDC to Multichain, and receive USDC of equivalent value from Multichain on the Ethereum blockchain network. *Id.*

4

9.      USDC is a type of digital asset known as a stablecoin issued by Circle Internet

Financial, LLC ("**Circle**").  For every unit of USDC in circulation Circle maintains at least one

U.S. dollar in reserve such that each unit of USDC is at all times backed by at least one U.S. dollar.

Verified Petition, Ex. C (Circle MTD) at 1, 3-4.

10.     Following the hack against Multichain, the Hackers transferred the Stolen USDC

from Multichain's wallet addresses to three blockchain addresses that now hold the Stolen USDC

(the "**Hacker Addresses**"):

      a.   0xefeef8e968a0db92781ac7b3b7c821909ef10c88,

      b.   0x027f1571aca57354223276722dc7b572a5b05cd8, and

      c.   0x48bead89e696ee93b04913cb0006f35adb844537.

*See generally id.*, Ex. B (Newton Complaint), Ex. C (Circle MTD) at 6; *see also* Stipulated Consent

to Preliminary Injunction, *Newton AC/DC Fund, L.P.* v. *Circle Internet Financial, LLC*, No.

654157/2025 (N.Y. Sup. Ct. Jul. 14, 2025) (Dkt. No. 26).

11.     Circle has the ability to blacklist blockchain addresses, and will do so under certain

circumstances, including pursuant to a valid law enforcement order or a valid court order.  *See*

Verified Petition, Ex. C (Circle MTD) at 1-2, 5.  As a technical matter, when Circle blacklists a

blockchain address, it adds that address to a table of blacklisted addresses maintained by the smart

contract code for USDC, and all of the addresses on that table are prevented by the code from

transferring USDC to another address (or receiving a transfer of USDC).  This renders the USDC

maintained at those blacklisted addresses frozen.  Such frozen USDC cannot be transferred from

a blacklisted address unless and until Circle removes that address from the table of blacklisted

addresses.

12.     Shortly after the hack and theft of the Stolen USDC, the United States Department of Justice (the "**DOJ**") obtained a seizure warrant and compelled Circle to "blacklist" the Hacker Addresses.  *Id.*, Ex. B (Newton Complaint) ¶ 40, Ex. C (Circle MTD) at 1-2, 6.

13.     Because it was not able to identify the Hackers for prosecution, the DOJ subsequently informed Circle that it would seek to vacate the seizure warrant at the end of July 2025.[1]  *Id.*, Ex. B (Newton Complaint) ¶ 43.  Without a valid seizure warrant or court order in place, Circle would not have a basis to keep the Hacker Addresses on the blacklist.  *See also id.*, Ex. C (Circle MTD) at 6 & n.5.

14.     Newton AC/DC Fund, L.P. ("**Newton**") filed a complaint (the "**Newton Complaint**") commencing the Newton Proceedings in the Supreme Court of the State of New York (the "**New York Court**") against Circle asserting a claim on behalf of a putative class for the return of the Stolen USDC.[2]  *See generally id.*, Ex. B (Newton Complaint).

15.     The Newton Complaint asserts that because Newton currently holds Multi-USDC 3.575 million, it is entitled to claim USDC 3.575 million of the Stolen USDC, or the corresponding U.S. dollar reserves backing those tokens.   A holder of Multi-USDC is not entitled to the corresponding USDC that was transferred to Multichain in exchange for the Multi-USDC.  Having transferred USDC to Multichain in exchange for Multi-USDC, a holder of Multi-USDC no longer has any entitlement to assert a claim for the USDC.

---

[1] The Petitioners do not know whether the DOJ has actually vacated the seizure warrant.
[2] Newton filed an Amended Complaint on October 14, 2025.  Amended Complaint, *Newton AC/DC Fund, L.P.* v. *Circle Internet Financial, LLC*, No. 654157/2025 (N.Y. Sup. Ct. Jul. 14, 2025) (Dkt. No. 32) (the "**Amended Complaint**").  In discussing Newton's allegations against Circle, the Petitioners cite to the Amended Complaint as the operative complaint in the Newton Proceedings.

16.     In any event, if Newton believes it has a claim against Multichain by virtue of it holding Multi-USDC 3.575 million and thereby purports to be entitled to exchange it for USDC, the appropriate course of action would be to file a claim with the liquidators of Multichain, alongside other purported creditors.  It is not entitled to assert any claim over the Stolen USDC, the entirety of which should rightfully be returned to Multichain to be dealt with fairly and equitably within the framework of the Singapore Insolvency Proceedings.

17.     Newton was supposedly concerned that it would have no recourse if Circle removed the Hacker Addresses from the blacklist and the Hackers were able to transfer the Stolen USDC to other addresses or to exchange the Stolen USDC for other assets that are not able to be frozen in the same way that Circle can freeze USDC through the blacklisting process.  Yap Declaration ¶ 25.

18.     The Newton Complaint seeks a declaratory judgment resolving the ownership of the Stolen USDC currently maintained by the Hacker Addresses.  The Newton Complaint also seeks a judgment against Circle for approximately $63 million and an order recognizing that Circle currently holds that amount in a constructive trust for the benefit of the class.  Verified Petition, Ex. B (Newton Complaint).

19.     Newton and Circle entered into a stipulation (the "**Newton Stipulation**"), so ordered by the New York Court, which, among other things, requires Circle to maintain the Hacker Addresses on the blacklist so that the Stolen USDC cannot be transferred until further order of the Court.  *See id.*, Ex. D (Stipulated Consent to Preliminary Injunction).

20.     Recognizing that Newton is not the only party interested in recovering the Stolen USDC, and that Multichain and its creditors are likely to have interests as well, the Newton

Stipulation further requires notice to certain other parties and provides that such other parties have the right to seek leave to intervene in the Newton Proceedings and the deadline to do so shall not expire before 60 days from the entry of the Newton Stipulation (which was entered on September 2, 2025). *See id.*, Ex. D (Stipulated Consent to Preliminary Injunction) ¶ 5.

21.    On September 29, 2025, Circle filed a motion to dismiss (the "**Circle MTD**") the Newton Proceedings. *See id.*, Ex. C (Circle MTD). In lieu of an opposition, Newton filed in response an Amended Complaint and a Motion for Class Certification (*see* Newton Class Cert. Mot. at 1). As explained above, being a holder of Multi-USDC does not entitle one to also claim the USDC that was transferred to Multichain in exchange for Multi-USDC. Insofar as Newton and/or the other members of its proposed class action believe they have a claim against Multichain to exchange Multi-USDC for USDC, the appropriate course of action would be to file a claim with the liquidators of Multichain. The New York Court could act upon the Newton Class Cert. Mot. at any time thereafter. A resolution of the Newton Class Cert. Mot. could ultimately result in the Newton Stipulation being vacated in which case Circle would not be required to maintain the Hacker Addresses on the blacklist.

22.    The issues involved in the Newton Proceedings, including the need for a determination of which parties, if any, are entitled to recover the Stolen USDC or the U.S. dollar reserves backing them, as well as how and when any such recovered assets should be administered and/or distributed, are much more appropriately dealt with in the context of a case under chapter 15, which is specifically designed to enable the "fair and efficient administration of cross-border insolvencies that protects the interests of all creditors, and other interested entities, including the debtor." 11 U.S.C. § 1501(a)(3).

8

23.     These same issues are relevant to the Singapore Insolvency Proceedings involving

Multichain.  One of the parties that deposited digital assets to the Multichain software protocol

that were stolen during the exploit sued Multichain in Singapore and obtained a judgment against

Multichain and then filed an application with the Singapore Court on April 13, 2025, to have

Multichain wound up under Singapore insolvency laws.  Yap Declaration ¶ 16.

24.     As a result, the Singapore Court entered an order dated May 9, 2025 (the

"**Singapore Court Order**"), and filed on May 13, 2025, providing for Multichain to be wound up

under section 125(1)(e) of part 8 of the Insolvency, Restructuring and Dissolution Act 2018 in

Singapore, and appointing the Petitioners as the joint and several liquidators of Multichain for the

purpose of collecting, preserving, and ultimately distributing Multichain's assets as part of its

liquidation. *Id.* ¶ 17.

25.     The Petitioners, as the official liquidators of Multichain, have an obligation to

recover and marshal all of the assets of Multichain, and have commenced this chapter 15 case to

pursue appropriate relief, including staying the Newton Proceedings, obtaining permanent

blacklisting of the Hacker Addresses, and recovering the Stolen USDC and/or the U.S. dollar

reserves backing them so that they can be available for distribution to all legitimate and eligible

claimants in the Singapore Insolvency Proceedings, not just to Newton.  If plaintiffs in the Newton

Proceedings are valid creditors of Multichain, as they assert, they will be entitled to share in any

recovery available to similarly situated creditors in the Singapore Insolvency Proceedings.

## RELIEF REQUESTED

26.     The Petitioners have filed contemporaneously with this motion an *Ex Parte Motion*

*of Foreign Representatives for Provisional Relief Pursuant to Section 1519 of the Bankruptcy*

*Code* (the "**Provisional Relief Motion**"), seeking provisional relief pursuant to Bankruptcy Code §§ 105, 1517, and 1519 to immediately stay the Newton Proceedings and to order Circle to blacklist or freeze certain digital asset wallet addresses that hold the Stolen USDC and to maintain the U.S. dollar reserves backing the Stolen USDC (the "**Requested Provisional Relief**").

27.     By this motion, pursuant to Bankruptcy Rule 1007(a)(4)(B), the Petitioners seek recognition of the Singapore Insolvency Proceedings as a "foreign main proceeding" under sections 1502(4), 1515, and 1517 of the Bankruptcy Code;  recognition of the Petitioners as Multichain's "foreign representatives" as defined in section 101(24) of the Bankruptcy Code;  an order continuing or granting the Requested Provisional Relief pursuant to section 1521(a) of the Bankruptcy Code;  an order entrusting the administration and realization of Multichain's assets within the territorial jurisdiction of the United States to the Petitioners, pursuant to section 1521(a)(5) of the Bankruptcy Code;  granting the Petitioners authority pursuant to section 1521(a)(4) of the Bankruptcy Code to examine witnesses, take evidence, and deliver information concerning Multichain's assets, affairs, rights, obligations, and liabilities;  and any other and relief that is just and proper, all so that the Petitioners can pursue the recovery of the Stolen USDC and/or the value thereof and administer such assets in the Singapore Insolvency Proceedings for the benefit of all of Multichain's known creditors and stakeholders.

## BASES FOR RELIEF

28.     Chapter 15 of the Bankruptcy Code applies where a foreign representative seeks assistance in a U.S. court.  *See* 11 U.S.C. § 1501(b)(1).  The stated objectives of chapter 15 include: (i) cooperation between U.S. courts and foreign courts in cross-border insolvency cases, (ii) "legal certainty for trade and investment," (iii) protection of all interested parties in a cross-border

insolvency, and (iv) "maximization of the value of the debtor's assets."  11 U.S.C. § 1501(a);  *see*

*In re Oversight & Control Comm'n. of Avánzit, S.A.*, 385 B.R. 525, 534 (Bankr. S.D.N.Y. 2008).

The Petitioners respectfully submit that each of these goals is best achieved by recognizing the

Republic of Singapore to be Multichain's center of main interests ("**COMI**"), and thus, that the

Singapore Insolvency Proceedings constitute a "foreign main proceeding."  *In re B.C.I. Fins. Pty*

*Ltd.*, 583 B.R. 288, 292 (Bankr. S.D.N.Y. 2018) ("Chapter 15 and the Model Law are designed to

optimize disposition of international insolvencies by facilitating appropriate access to the court

system of a host country (the United States, in the case of chapter 15) by a representative of an

insolvency proceeding pending in a foreign country.") (citations and quotations omitted);  *see also*

*In re Platinum Partners Value Arbitrage Fund L.P.*, 2018 WL 3207119, at *4 (S.D.N.Y. June 29,

2018) ("Chapter 15 expresses a strong preference for providing assistance to foreign

representatives in appropriate circumstances.  That congressional preference is not to be lightly

disturbed.").

29.     As part of the final recognition order, the Petitioners are also seeking relief

prohibiting the continuation and initiation of the Newton Proceedings and to preserve the Stolen

USDC and/or the U.S. dollar reserves backing them, both of which threaten to impair the recovery

of assets for the benefit of all of Multichain's creditors and other parties in interest and the

distribution of such assets in connection with the Singapore Insolvency Proceedings or otherwise

interfere with such proceedings.

## I.     The Debtor is Eligible for Chapter 15 Relief.

30.     Multichain is an eligible "debtor" under chapter 15.  A chapter 15 "debtor" is an

entity that is the subject of a foreign proceeding.  11 U.S.C. § 1502(1).  An entity, in turn, includes

any person (11 U.S.C. § 101(15)) and a person includes a corporation (11 U.S.C. § 101(15)).

11

Multichain is a corporation incorporated under the laws of Singapore, and therefore is an "entity" under the law.  *See* Yap Declaration ¶ 11.  Multichain is the subject of a foreign proceeding, and does not fall within any of the categories excluded from chapter 15 eligibility, as set forth in section 1501(c).  Accordingly, Multichain is eligible for chapter 15 relief.  11 U.S.C. § 1501(b)–(c).

31.     Multichain also meets the general eligibility requirements under section 109(a) of the Bankruptcy Code because it has property located in the United States.  Under section 109(a), a foreign debtor must reside or have a domicile, a place of business, ***or property*** in the United States to be eligible to file a chapter 15 petition.  11 U.S.C. § 109(a) ("only a person that resides or has a domicile, a place of business, or property in the United States, or a municipality, may be a debtor.");  *see also In re Barnet*, 737 F.3d 238, 247 (2d Cir. 2013) (same).

32.     Section 109(a) "does not specify how much property must be present or when or for how long property has had a situs in [the United States]."  *See, e.g.*, *In re Berau Cap. Res. Pte Ltd.*, 540 B.R. 80, 82 (Bankr. S.D.N.Y. 2015).  A foreign debtor satisfies section 109 even when it has only a nominal amount of property in the United States.  *See, e.g.*, *In re B.C.I. Fins. Pty Ltd.*, 583 B.R. at 293 ("[C]ourts that have construed the 'property' requirement in section 109 'with respect to foreign corporations and individuals have found the eligibility requirement satisfied by even a minimal amount of property located in the United States.'").

33.     Specifically, Multichain is eligible to be a debtor under section 109(a) of the Bankruptcy Code because it has an interest in the Stolen USDC and/or the U.S. dollar reserves associated with the Stolen USDC that are under the control of Circle.  Additionally, Multichain has property in the United States in the form of a retainer held by undersigned counsel in a client trust account at Citibank, N.A. in New York, New York for the benefit of Multichain.  *See In re*

12

*Agro Santino OOD*, 653 B.R. 79, 88 (Bankr. S.D.N.Y. 2023) ("It is well settled that a retainer

account is 'property' for purposes of section 109(a)."); *see also In re Octaviar Admin. Pty Ltd.*,

511 B.R. 361, 372–74 (Bankr. S.D.N.Y. 2014) (finding that funds held in a client trust account

were sufficient to satisfy the requirements of 109(a) of the Bankruptcy Code; *see also In re Avanti*

*Commc'n Grp. PLC*, 582 B.R. 603, 612 (Bankr. S.D.N.Y. 2018) ("[A] professional's retainer in a

U.S. bank account satisfies the 'property in the United States' requirement of section 109(a)")

(citations omitted).  Accordingly, Multichain is eligible to be a debtor under section 109(a) of the

Bankruptcy Code.

## II.    Recognition of the Singapore Insolvency Proceedings as a "Foreign Main Proceeding" and of the Petitioners as Multichain's "Foreign Representatives" is Appropriate.

34.    In addition, chapter 15 petitions must meet the requirements under Bankruptcy

Code sections 1517(a) and 1515 and Bankruptcy Rule 1007(a)(4).  If these elements are satisfied,

the Bankruptcy Court must grant recognition.  *In re Culligan Ltd.*, 2021 WL 2787926, at *6

(Bankr. S.D.N.Y. July 2, 2021) ("courts will grant recognition to foreign proceedings that meet

the requirements of section 1517(a) of the Bankruptcy Code.");  *In re Oi Brasil Holdings*

*Cooperatief U.A.*, 578 B.R. 169, 194 (Bankr. S.D.N.Y. 2017) ("Recognition is mandatory if all

three requirements of section 1517(a) are met.");  *In re Black Gold S.A.R.L.*, 635 B.R. 517, 527

(B.A.P. 9th Cir. 2022) ("Congress' use of the word 'shall' in § 1517(a) removed the court's

discretion in determining recognition if the requirements in the three subparagraphs of § 1517(a)

have been satisfied.").

35.    Bankruptcy Code section 1517 provides that, after notice and hearing, the Court

shall enter an order recognizing a foreign proceeding as a foreign main (or nonmain) proceeding

if (i) such foreign proceeding is a foreign main (or nonmain) proceeding within the meaning of

13

Bankruptcy Code section 1502, (ii) the foreign representative applying for recognition is a person or body, and (iii) the petition meets the requirements of Bankruptcy Code section 1515.  *See* 11 U.S.C. § 1517(a);   *see also In re Oversight & Control Comm'n of Avanzit, S.A.*, 385 B.R. at 532; *In re ABC Learning Ctrs. Ltd.*, 728 F.3d 301, 304 & n.4 (3d Cir. 2013).  As explained below, the Singapore Insolvency Proceedings, the Petitioners, and the Verified Petition satisfy all of the foregoing requirements.

### A.    The Singapore Insolvency Proceedings are a "Foreign Proceeding."

36.    The Singapore Insolvency Proceedings are a "foreign main proceeding" and, as such, satisfy the first condition for entry of an order recognizing such proceedings under section 1517(a) of the Bankruptcy Code.  The Singapore Insolvency Proceedings fall within the general definition of "foreign proceeding" set forth in section 101(23) of the Bankruptcy Code, which states as follows:

> The term "foreign proceeding" means a collective judicial or administrative proceeding in a foreign country, including an interim proceeding, under a law relating to insolvency or adjustment of debt in which proceeding the assets and affairs of the debtor are subject to control or supervision by a foreign court, for the purpose of reorganization or liquidation.

11 U.S.C. § 101(23).

37.    Bankruptcy Code section 101(23) requires that a "foreign proceeding" (i) be a collective judicial or administrative proceeding relating to insolvency or adjustment of debt, (ii) pending in a foreign country, (iii) under the supervision of a foreign court, and (iv) for the purpose of reorganizing or liquidating the assets and affairs of the debtor.[3]  *See id.*

---

[3]    For purposes of chapter 15, a "debtor" refers to "an entity that is the subject of a foreign proceeding."  11 U.S.C. § 1502(1).

14

38.     The Singapore Insolvency Proceedings are a "collective" judicial proceeding because the Singapore Court Order requires the Petitioners, as the court-appointed liquidators, to facilitate the winding up process of Multichain.  *See* Verified Petion, Ex. A (Singapore Court Order) at 2;  Ong Declaration ¶ 18.  The Singapore Court further ordered that "[i]t will be the duty of such of the persons as are liable to make out or concur in making out a statement of affairs as the (provisional) liquidator[s] may require, to attend on [them] at such time and place as [they] may appoint and to give [them] all the information [they] may require."  *See* Verified Petion, Ex. A (Singapore Court Order) at 2.  Such insolvency proceedings plainly meet the requirements of section 101(23).

39.     The Singapore Insolvency Proceedings are a judicial proceeding relating to insolvency and the adjustment of debt because the Petitioners, as liquidators, have the power to (a) distribute the remainder of Multichain's assets for the benefit of its creditors and (b) do such acts that are in their discretion necessary to carry out their appointment, which include winding down the operations of Multichain, pursuing and marshalling Multichain's assets, administering and managing claims by creditors, and distributing assets as part of a collective liquidation process.  *See* Verified Petition, Ex. A (Singapore Court Order) at 2;  Yap Declaration ¶¶ 1, 19;  Ong Declaration ¶¶ 18, 22.

40.     A "foreign court" is defined as "a judicial or other authority competent to control or supervise a foreign proceeding."  *See* 11 U.S.C. § 1502(3).  The Singapore Court is a judicial body of the Republic of Singapore, which has jurisdiction over the Petitioners and the liquidation of Multichain's assets.  Ong Declaration ¶ 4.  Thus, the Singapore Court is a "foreign court" with a supervisory role over the Singapore Insolvency Proceedings.

15

41.    The Singapore Insolvency Proceedings are pending in a "foreign country" as they are not U.S. proceedings.

42.    Based on the foregoing, the Singapore Insolvency Proceedings constitute a "foreign proceeding", as defined in Bankruptcy Code section 101(23), and as referred to in Bankruptcy Code section 1517.

**B.    The Singapore Insolvency Proceedings are a "Foreign Main Proceeding."**

43.    The Singapore Insolvency Proceedings are a "foreign main proceeding" as defined by Bankruptcy Code section 1502(4).  A "foreign main proceeding" is "a foreign proceeding pending in the country where the debtor has the center of its main interests", or COMI.  *See* 11 U.S.C. § 1502(4);  *see also* 11 U.S.C. § 1517(b)(1) (providing that an order of recognition as a foreign main proceeding shall be entered if the foreign proceeding "is pending in the country where the debtor has the center of its main interests.");  *see also In re Pirogova*, 593 B.R. 402, 408 (Bankr. S.D.N.Y. 2018) ("The location of the debtor's COMI is the sole criterion for qualifying a proceeding as a foreign main proceeding.").

44.    While the Bankruptcy Code does not define COMI, "in the absence of evidence to the contrary, the debtor's registered office . . . is presumed to be the center of the debtor's main interests." 11 U.S.C. § 1516(c);  *In re Fairfield Sentry Ltd.*, 714 F.3d 127, 137 (2d Cir. 2013) ("Chapter 15 creates a rebuttable presumption that the country where a debtor has its registered office will be its COMI");  *In re Gerova Fin. Grp., Ltd.*, 482 B.R. 86, 91 (Bankr. S.D.N.Y. 2012) (finding location of debtor's registered office its COMI because there was "virtually no evidence of record 'to the contrary.'").  The section 1516(c) presumption "permits and encourages fast action in cases where speed may be essential." *See In re Bear Stearns High-Grade Structured*

16

*Credit Strategies Master Fund, Ltd.*, 374 B.R. 122, 128 (Bankr. S.D.N.Y. 2007), *aff'd*, 389 B.R. 325 (S.D.N.Y. 2008).

45.    Here, Multichain acts exclusively through the Petitioners, its court-appointed liquidators, who have their office in the Republic of Singapore and receive Multichain's correspondence at their address.  *See* Verified Petition, Official Form 401; Yap Declaration ¶ 11; Ong Declaration ¶ 18.  Also, Multichain is a Singapore corporation.  Yap Declaration ¶ 11. Therefore, the Republic of Singapore is presumed to be Multichain's COMI under Bankruptcy Code section 1516(c), and the Singapore Insolvency Proceedings are a "foreign main proceeding" under Bankruptcy Code section 1516.

C.    **The Petitioners are a Qualifying Foreign Representative.**

46.    The second requirement for recognition of a foreign proceeding under section 1517(a) is that the foreign representative applying for recognition must be a "person or body."  *See* 11 U.S.C. § 1517(a)(2).  The term "foreign representative" is defined as:

> a person or body, including a person or body appointed on an interim basis, authorized in a foreign proceeding to administer the reorganization or the liquidation of the debtor's assets or affairs or to act as a representative of such foreign proceeding.

11 U.S.C. § 101(24).  Section 101(41) defines "person" to include "individual[s]."  *See* 11 U.S.C. §101(41).

47.    The requirement that a foreign representative be authorized in a foreign proceeding is "not an onerous one" and has "been read broadly in order to facilitate the purposes of chapter 15."  *In re PT Bakrie Telecom Tbk*, 601 B.R. 707, 717 (Bankr. S.D.N.Y. 2019).  Also, the court is entitled to presume that the Petitioners are foreign representatives, if the decision from the foreign court submitted in connection with section 1515 so indicates.  *See* 11 U.S.C. § 1516(a); *In re*

17

*Ocean Rig UDW Inc.,* 570 B.R. 687, 700 (Bankr. S.D.N.Y. 2017);  *In re SphinX, Ltd.*, 351 B.R.

103, 116–17 (Bankr. S.D.N.Y. 2006), *aff'd*, 371 B.R. 10 (S.D.N.Y. 2007) (finding section 101(24)

of Bankruptcy Code satisfied where foreign representatives submitted a "copy of [a Cayman

court's] order appointing them to administer the [d]ebtors' winding up under [Cayman law]").

48.    Here, the Petitioners are individuals who have been duly appointed by the

Singapore Court to *act* as liquidators with the power to administer the liquidation of Multichain's

assets pursuant to the Singapore Court Order.  *See* Verified Petition, Ex. A (Singapore Court Order)

at 2;  Ong Declaration ¶ 18.

49.    Accordingly, the Petitioners satisfy sections 101(24) and 1517(a)(2) of the

Bankruptcy Code.

**D.    The Chapter 15 Petition Meets the Requirements of Section 1515.**

50.    The final requirement for recognition of a foreign proceeding under section 1517(a)

of the Bankruptcy Code is that the petition for recognition meets the procedural requirements of

section 1515 of the Bankruptcy Code.  *See* 11 U.S.C. § 1517(a)(3).  Each of those procedural

requirements is satisfied.

51.    Section 1515 requires that (i) the foreign representative must file a petition for

recognition, *see* 11 U.S.C. § 1515(a);  (ii) the petition for recognition must be accompanied by

either (a) "a certified copy of the decision commencing [the] foreign proceeding and appointing

the foreign representative," (b) "a certificate from the foreign court affirming the existence of [the]

foreign proceeding and of the appointment of the foreign representative," or (c) if such evidence

is unavailable, "any other evidence acceptable to the court" demonstrating the existence of the

foreign proceeding and "appointment of the foreign representative," *see* 11 U.S.C. § 1515(b)(1)–

18

(3); and (iii) a statement must be filed "identifying all foreign proceedings with respect to the debtor that are known to the foreign representative[.]". *See* 11 U.S.C. § 1515(c); *see also* 11 U.S.C. § 1504 ("A case under . . . chapter [15] is commenced by the filing of a petition for recognition of a foreign proceeding under section 1515.").

52.    Here, this chapter 15 case was commenced on behalf of the Petitioners – foreign representatives – by filing the Verified Petition. 11 U.S.C. § 1515(a). The Verified Petition is accompanied by a court-stamped copy of the Singapore Court Order, which demonstrates the commencement of the Singapore Insolvency Proceedings and the appointment of the Petitioners as Multichain's joint and several liquidators with the power to administer Multichain's assets for the benefit of its creditors. *See* 11 U.S.C. § 1515(b)(2). Further, the Petitioners submit that the Singapore Court Order constitutes "other evidence" of the Singapore Insolvency Proceedings and the appointment of the Petitioners as Multichain's liquidators. *See* 11 U.S.C. § 1515(b)(3). Finally, the Petitioners have identified the Singapore Insolvency Proceedings as the only known "foreign proceeding" with respect to Multichain. *See* Yap Declaration ¶ 36; 11 U.S.C. § 1515(c).

53.    The Petitioners have also satisfied the additional filing requirements set forth in Bankruptcy Rule 1007(a)(4) by (i) filing a corporate ownership statement containing the information described in Bankruptcy Rule 7007.1, as required by Bankruptcy Rule 1007(a)(4)(A), and (ii) providing the names and addresses of all persons or bodies authorized to administer the foreign proceedings of Multichain and all parties to known litigation pending in the United States in which Multichain has an interest at the time of the filing of the Verified Petition. *See Corporate Ownership Statement Pursuant to Federal Rules of Bankruptcy Procedure 1007(a)(4) and 7007.1 and Local Rule 1007-3*, filed substantially concurrently herewith. At the time of the filing of the

19

Verified Petition, Multichain is not a party to any known litigation in the United States.  *See* Yap

Declaration ¶ 36.

54.    As set forth above, each of the prerequisites to recognition under section 1517 have

been met.   Accordingly, the Petitioners respectfully request that the Court recognize (i) the

Singapore Insolvency Proceedings as a foreign main proceeding, and (ii) the Petitioners as the

foreign representatives of Multichain.

**III.    The Petitioners are Entitled to Relief Under Section 1520.**

55.    Upon recognition of the Singapore Insolvency Proceedings as a foreign main

proceeding, section 1520 of the Bankruptcy Code prescribes certain forms of relief available to the

Petitioners and respecting Multichain's property within the territorial jurisdiction of the United

States.   Such relief is granted automatically as a consequence of recognition, and section 1520

requires no further showing by the Petitioners to obtain such relief.

56.    Upon the recognition of a foreign proceeding as a "foreign main proceeding," a

foreign representative is automatically entitled to the benefit of the relief conferred under section

1520(a) of the Bankruptcy Code, including, without limitation, the automatic stay imposed

pursuant to section 362 of the Bankruptcy Code.   *See* 11 U.S.C. § 1520(a)(1) ("Upon recognition

of a foreign proceeding that is a foreign main proceeding, (1) sections 361 and 362 apply with

respect to the debtor and the property of the debtor that is within the territorial jurisdiction of the

United States").   Consequently, upon the recognition by this Court of the Singapore Insolvency

Proceedings as a "foreign main proceeding," the ancillary recognition of the automatic stay

provided under section 362(a) of the Bankruptcy Code in respect of all actions and proceedings

against Multichain and its property in the U.S. is appropriate pursuant to section 1520(a) of the

Bankruptcy Code.   As the protections set forth in section 1520(a) are granted automatically from

20

the recognition of a "foreign main proceeding" under section 1517, if the Court recognizes the Singapore Insolvency Proceedings as a "foreign main proceeding," the Petitioners respectfully submit that no further showing is required.

**IV.    Relief Under Section 1521 is Necessary and Appropriate.**

57.    To protect Multichain's assets and ensure the integrity of the Singapore Insolvency Proceedings' liquidation process, the Petitioners request that the Court exercise its authority, under Bankruptcy Code section 1521(a), to (i) stay the commencement or continuation of actions seeking Multichain's assets while this chapter 15 case is pending, including the Newton Proceedings, and (ii) under section 105(a) of the Bankruptcy Code, enjoin the prosecution, outside of this chapter 15 case, of actions asserting any rights related to the assets in which Multichain asserts an interest.

58.    Section 1521(a) of the Bankruptcy Code provides, in relevant part, that "[u]pon recognition of a foreign proceeding, whether main or nonmain, where necessary to effectuate the purpose of this chapter and to protect the assets of the debtor or the interests of the creditors, the court may, at the request of the foreign representative, grant any appropriate relief . . ." 11 U.S.C. § 1521(a).  Such relief may include "staying the commencement or continuation of an individual action or proceeding concerning the debtor's assets, rights, obligations or liabilities to the extent they have not been stayed under section 1520(a)", "staying execution against the debtor's assets to the extent it has not been stayed under section 1520(a)", and "granting any additional relief that may be available to a trustee, except for relief available under sections 522, 544, 545, 547, 548, 550, and 724(a)."  11 U.S.C. § 1521(a)(1)–(2), (7).  "Section 1521(a) outlines the discretionary relief a court may order upon recognition of a foreign proceeding, whether main or non-main . . . The discretion that is granted is 'exceedingly broad' since a court may grant 'any appropriate relief' that would further the purposes of chapter 15 and protect the debtor's assets and the interests

21

of creditors." *In re Atlas Shipping A/S*, 404 B.R. 726, 739 (Bankr. S.D.N.Y. 2009); *see also Avanti*, 582 B.R. at 612 (same).

59.    Pursuant to section 1521(e), "[t]he standards, procedures, and limitations applicable to an injunction shall apply to relief under paragraphs (1), (2), (3), and (6) of subsection (a)." 11 U.S.C. § 1521(e).   The Petitioners seek relief, pursuant to Bankruptcy Code section 1521(a), staying and prohibiting the commencement or continuation of any action seeking declarations related to assets in which Multichain asserts an interest, including the Newton Proceedings.   In addition, they seek to require Circle to continue to blacklist the Wallet Addresses and maintain the U.S. dollar reserves backing them, pending a determination of Multichain's interest in such assets, which the Petitioners intend to pursue by separate adversary proceeding or otherwise.   For the reasons set forth in the Provisional Relief Motion, the Petitioners meet the injunction standard here.

**V.        Recognition and Granting the Related Relief is Consistent with Principles of Comity.**

60.    Courts in this District and elsewhere routinely recognize insolvency proceedings and related orders from courts in Singapore.[4]   Indeed, bankruptcy courts have found that recognition of Singapore Insolvency Proceedings is appropriate under chapter 15 because "the Singapore insolvency system bears many similarities to the United States bankruptcy process," *In re Wayne Burt Pte. Ltd.*, No. 24-19956 (MBK), 2024 WL 5003229, at *4 (Bankr. D.N.J. Dec. 6, 2024).   In *Wayne Burt*, the U.S. Bankruptcy Court for the District of New Jersey granted a motion

---

[4] Importantly, this Court itself has a memorandum of understanding between itself and the Supreme Court of Singapore, recognizing that both courts have adopted mutually recognized cross-border insolvency laws and procedures.   *See* Memorandum of Understanding Between the Supreme Court of Singapore and the United States Bankruptcy Court for the Southern District of New York, https://www.nysb.uscourts.gov/sites/default/files/MOU_SDNYBK_Sing.pdf (last visited October 21, 2025).

for an order recognizing an order of a Singapore court.  In doing so, the court identified several aspects of Singapore's insolvency process that mirror principles of the U.S. bankruptcy process, including (1) the centrality of the *pari passu* principle;  (2) the accountability of liquidators to the court;  (3) the availability to creditors of judicial review of the decisions of liquidators;  (4) the requirement that liquidators provide notice to creditors;  (5) the affording of equal rights to foreign creditors, as compared to creditors located in Singapore;  (6) the power of liquidators to take control of the property of the debtor company;  and (7) the automatic staying of proceedings against the company.  *Id.* at *4-5.

61.     The *Wayne Burt* court further found that recognition of the Singapore insolvency proceedings was appropriate as a matter of comity because the Singapore proceedings were parallel, the actions taken in such proceedings were consistent with the United States' policy of equality, and the party opposing comity would not be prejudiced by being required to participate in the proceeding.  *Id.* at *8.  The court reasoned that, because Singapore's insolvency laws are substantially similar to the bankruptcy laws of the United States, the proceedings met the third prong of the *Philadelphia Gear* test, namely, ensuring that the foreign proceeding's actions are consistent with the United States' policy of equality.  *Id.* (citing *Philadelphia Gear Corp.* v. *Philadelphia Gear de Mexico, S.A.*, 44 F.3d 187, 194 (3d Cir. 1994)).

62.     Similarly, in *In re Berau Cap. Res. Pte Ltd.*, the U.S. Bankruptcy Court for the Southern District of New York recognized Singaporean bankruptcy proceedings as foreign main proceedings, noting that "all requirements for recognition were satisfied."  540 B.R. 80, 84 (Bankr. S.D.N.Y. 2015).  The court found that recognition of the Singapore proceedings was "in the interests of the public and international comity, consistent with the public policy of the United

States, and warranted pursuant to sections 1517, 1520, and 1521 of the Bankruptcy Code." Order

Granting Recognition of Foreign Main Proceeding and Certain Related Relief, *In re Berau Cap.*

*Res. Pte Ltd.*, No. 15-11804(MG) (Bankr. S.D.N.Y. 2015) (Dkt. No. 32).

63.     The conclusions of these courts that Singapore insolvency proceedings, such as the

Singapore Insolvency Proceedings at issue here, are substantially similar to analogous U.S.

insolvency proceedings are fully supported by the description of Singapore insolvency law

included in the Ong Declaration. *See* Ong Declaration ¶¶ 10–37.

**VI.    Recognition of the Singapore Insolvency Proceedings is Not Manifestly Contrary to
United States' Public Policy.**

64.     Recognition of a foreign proceeding is "subject to section 1506" of the Bankruptcy

Code, which provides that a bankruptcy court may decline to grant relief requested if the action

would be "manifestly contrary to the public policy of the United States."   11 U.S.C. §§ 1506,

1517(a).   Courts that have addressed the "public policy" exception in section 1506 of the

Bankruptcy Code note that the exception is narrow, and that a foreign judgment should generally

be accorded comity if the foreign jurisdiction's proceedings meet fundamental standards of

fairness.  *See Collins* v. *Oilsands Quest Inc.*, 484 B.R. 593, 597 (S.D.N.Y. 2012);  *see also In re*

*Fairfield Sentry Ltd.*, 714 F.3d 127, 140 (2d Cir. 2013) (finding that "[t]here is no basis on which

to hold that recognition of the BVI liquidation is manifestly contrary to U.S. public policy.");  *In*

*re Rede Energia S.A.*, 515 B.R. 69, 92 (Bankr. S.D.N.Y. 2014) ("[T]he public policy exception is

clearly drafted in narrow terms and 'the few reported cases that have analyzed [section] 1506 at

length recognize that it is to be applied sparingly.'") (citing *In re Toft*, 453 B.R. 186, 193 (Bankr.

S.D.N.Y. 2011));  *In re Ashapura Minechem Ltd.*, 480 B.R. 129, 139 (S.D.N.Y. 2012);  *In re ABC*

*Learning Ctrs. Ltd.*, 445 B.R. 318, 335 (Bankr. D. Del. 2010), *on reconsideration in part* (Jan. 21, 2011), *subsequently aff'd*, 728 F.3d 301 (3d Cir. 2013).

65.     As noted above, various courts, including in *Wayne Burt* and *Bereau*, have found that Singapore insolvency proceedings are very similar to those in the United States for the reasons stated therein and in the Ong Declaration.  Recognizing the Singapore Insolvency Proceedings as a "foreign main proceeding" would advance one of the express objectives of chapter 15 – namely, the "fair and efficient administration of cross-border insolvencies that protects the interests of all creditors, and other interested entities, including the debtor" and the "protection and maximization of the value of the debtor's assets."  *See* 11 U.S.C. § 1501(a).

## VII.   Relief Under Section 1507 is Necessary and Appropriate.

66.     Section 1507 provides that, if recognition is granted, the court "may provide additional assistance to a foreign representative."  11 U.S.C. § 1507(a);  *see also Avanti*, 582 B.R. at 615;  *In re Atlas Shipping A/S*, 404 B.R. at 737–38.  In addition, section 105(a) of the Bankruptcy Code provides that the "court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."  11 U.S.C. § 105(a).

67.     In determining whether to provide additional assistance, the court must "consider whether such additional assistance, consistent with the principles of comity, will reasonably assure" the following:

(1) "just treatment of all holders of claims against or interests in the debtor's property;"
(2) "protection of claim holders in the United States against prejudice and inconvenience in the processing of claims in such foreign proceeding;"
(3) "prevention of preferential or fraudulent dispositions of property of the debtor;"
(4) "distribution of proceeds of the debtor's property substantially in accordance with the order prescribed by this title;" and
(5) "if appropriate, the provision of an opportunity for a fresh start for the individual that such foreign proceeding concerns."

25

11 U.S.C. § 1507(b).

68.    Fair and efficient administration of the liquidation of Multichain in the Singapore

Insolvency Proceedings protects all parties in interest and requires that known creditors be bound

therein. *See Victrix S.S. Co., S.A.* v. *Salen Dry Cargo A.B.*, 825 F.2d 709, 714 (2d Cir. 1987) ("The

equitable and orderly distribution of a debtor's property requires assembling all claims against the

limited assets in a single proceeding"); *In re Energy Coal S.P.A.*, 582 B.R. 619, 626–27 (Bankr.

D. Del. 2018) (recognizing principles of comity applied by U.S. courts in both recognition of

foreign bankruptcies and post-recognition relief granted to foreign representatives); *see also* Ong

Declaration ¶ 37.

69.    The relief requested herein is required to prevent individual creditors, such as

plaintiffs in the Newton Proceedings, from acting to frustrate the purposes of the Singapore

Insolvency Proceedings, the objective of which is the fair, efficient, and orderly administration of

the liquidation of Multichain and the maximizing of value for known creditors.

## NOTICE

70.    Pursuant to Bankruptcy Rule 2002(q)(1), notice of the hearing on the Verified

Petition and the Recognition Motion will be provided to (i) Multichain; (ii) the Petitioners; (iii)

Newton; (iv) Circle; (v) the Office of the United States Trustee; and (vi) any other parties, or by

any other means, required by this Court. The Petitioners submit that no other or further notice

need be provided.

## NO PRIOR REQUEST

71.    No previous request for the relief sought herein has been made to this or any other

Court.

26

**CONCLUSION**

**WHEREFORE**, the Petitioners respectfully request that this Court enter an order, substantially in the form of the Proposed Order attached hereto as **Exhibit A**, after notice and a hearing, (i) recognizing the Singapore Insolvency Proceedings as a "foreign main proceeding" under sections 1502(4), 1515, and 1517 of title 11 of the Bankruptcy Code; (ii) recognizing the Petitioners as Multichain's "foreign representatives" as defined in section 101(24) of the Bankruptcy Code; (iii) continuing or granting the Requested Provisional Relief – pursuant to section 1521(a) of the Bankruptcy Code; (iv) entrusting the administration and realization of Multichain's assets within the territorial jurisdiction of the United States to the Petitioners, pursuant to section 1521(a)(5) of the Bankruptcy Code; (v) granting the Petitioners authority – pursuant to section 1521(a) of the Bankruptcy Code – to examine witnesses, take evidence, and deliver information concerning Multichain's assets, affairs, rights, obligations, and liabilities; and (vi) granting such other and further relief as is just and proper under the circumstances.

Respectfully submitted:

Dated: October 23, 2025

CAHILL GORDON & REINDEL LLP

/s/ Joel H. Levitin
Joel H. Levitin
Miles Wiley
32 Old Slip
New York, NY 10005
Tel: (212) 701-3770/3395
jlevitin@cahill.com
mwiley@cahill.com

and

Gregory Strong (*pro hac vice* pending)
221 W. 10th Street, 3rd Floor
Wilmington, DE 19801
Tel: (302) 884-0001
gstrong@cahill.com

*Counsel for Bob Yap Cheng Ghee, Toh Ai Ling, and Tan Yen Chiaw, in their capacities as the joint and several liquidators of Multichain Foundation Ltd. (In Liquidation) in insolvency proceedings before the General Division of the High Court of the Republic of Singapore*

**Exhibit A (Proposed Order)**

**CAHILL GORDON & REINDEL LLP**
Joel H. Levitin
Miles Wiley
32 Old Slip
New York, NY 10005
Tel: (212) 701-3770/3395
jlevitin@cahill.com
mwiley@cahill.com
and
Gregory Strong (*pro hac vice* pending)
221 W. 10th Street, 3rd Floor
Wilmington, DE 19801
Tel: (302) 884-0001
gstrong@cahill.com

*Counsel for Bob Yap Cheng Ghee, Toh Ai Ling, and Tan Yen Chiaw,*
*in their capacities as the joint and several liquidators of Multichain*
*Foundation Ltd. (In Liquidation) in insolvency proceedings before*
*the General Division of the High Court of the Republic of Singapore*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re | Chapter 15 |
| MULTICHAIN FOUNDATION LTD.,[1] | Case No. 25-12340 (DSJ) |
| Debtor in a Foreign Proceeding. | |

**[PROPOSED] ORDER GRANTING VERIFIED PETITION FOR**
**RECOGNITION OF FOREIGN PROCEEDINGS UNDER CHAPTER 15 AND**
**MOTION IN SUPPORT OF VERIFIED PETITION AND FOR RELATED RELIEF**

Upon the *Verified Petition for Recognition of Foreign Proceedings* (the "**Verified**

**Petition**") and the *Motion in Support of Verified Petition for Recognition of Foreign Proceedings*

*and for Related Relief* (the "**Recognition Motion**") filed by the Petitioners, who are the joint and

several liquidators and duly-authorized foreign representatives for Multichain Foundation Ltd. (In

Liquidation) ("**Multichain**"), and upon consideration of (1) *the Declaration of Bob Yap Cheng*

---

[1] The Debtor in this chapter 15 case, along with its unique identifier, is Multichain Foundation Ltd. (In Liquidation) (Singapore Business Number: 202141342W). The Debtor's current registered and business address is 12 Marina View, #15-01 Asia Square Tower, #2, Singapore 018961.

*Ghee in Support of First Day Documents* (the "**Yap Declaration**") and (2) the *Declaration of Danny Ong in Support of First Day Documents* (the "**Ong Declaration**");  and the Court having determined that the relief sought in the Verified Petition and the Recognition Motion is in the best interests of Multichain, its creditors, and all parties in interest;  and the Court having considered the evidence and statements regarding the Verified Petition in the documents filed with the Court and at the hearing on the Verified Petition and the Recognition Motion (the "**Hearing**");  and the Court having determined that the legal, evidentiary, and factual bases set forth in the documents filed with the Court establish just cause for the relief granted herein;  and after due deliberation and sufficient cause appearing therefor, it is **HEREBY FOUND AND DETERMINED THAT:**

A.      The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Rule 7052 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), made applicable to these proceedings pursuant to Bankruptcy Rule 9014. To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such.  To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

B.      This Court has jurisdiction pursuant to 28 U.S.C. §§ 157 and 1334.  The Verified Petition and the Recognition Motion constitute core proceedings pursuant to 28 U.S.C. § 157(b)(2)(P).  Venue is proper in this District pursuant to 28 U.S.C. § 1410.

C.      This case was commenced properly pursuant to sections 1504, 1509, and 1515 of the Bankruptcy Code.

D.      The Verified Petition and the Recognition Motion satisfy the requirements of section 1515 of the Bankruptcy Code.

2

E.      Notice of the Hearing was in compliance with Bankruptcy Rule 2002(q).

F.      The Singapore Insolvency Proceedings (as defined in the Recognition Motion) are a "foreign proceeding" within the meaning of section 101(23) of the Bankruptcy Code.

G.      The Singapore Insolvency Proceedings are entitled to recognition by this Court pursuant to sections 1515 and 1517(a) of the Bankruptcy Code.

H.      Multichain's "center of main interests" is located in the Republic of Singapore and, therefore, the Singapore Insolvency Proceedings are entitled to recognition as a "foreign main proceeding" pursuant to sections 1502(4) and 1517(b)(1) of the Bankruptcy Code.

I.      The Petitioners are "persons" as defined in section 101(41) of the Bankruptcy Code and the duly-appointed "foreign representatives" of Multichain within the meaning of section 101(24) of the Bankruptcy Code.

J.      The relief granted herein is necessary to effectuate the purpose of chapter 15, and to protect Multichain, its assets, and the interests of its creditors and other parties in interest.

K.      The Petitioners are entitled to the benefit of the relief conferred under section 1520(a) of the Bankruptcy Code, including, without limitation, the automatic stay imposed pursuant to section 362 of the Bankruptcy Code.

L.      The relief granted herein (i) is necessary and appropriate in the interests of the public and international comity;  (ii) is consistent with the public policy of the United States;  (iii) is available and warranted pursuant to sections 1521(a), 1517, 1515, 1507(a), 1525(a), 105(a), and 362(a) of the Bankruptcy Code;  and (iv) will not cause Multichain's creditors or other parties in interest any hardship that is not outweighed by the benefits of granting the relief herein.

    **NOW, THEREFORE,** it is hereby **ORDERED THAT**:

3

1.      The Verified Petition and the Recognition Motion are GRANTED, as set forth herein.

2.      All objections and reservations of rights, if any, relating to the Verified Petition and the Recognition Motion that have not been withdrawn, waived, or otherwise resolved are overruled and denied.

3.      The Singapore Insolvency Proceedings are recognized as a "foreign main proceeding" pursuant to section 1517(b)(1) of the Bankruptcy Code.

4.      The Petitioners are recognized as the "foreign representatives" (as defined in section 101(24) of the Bankruptcy Code) of Multichain.

5.      Pursuant to section 1520(a) of the Bankruptcy Code, the automatic stay under section 362 of the Bankruptcy Code applies with respect to Multichain and the property of Multichain that is within the territorial jurisdiction of the United States; for the avoidance of doubt, the Newton Proceedings pending in the New York Court (as defined in the Recognition Motion) are stayed until further order of this Court.

6.      Until further Order of this Court, Circle Internet Financial, LLC ("**Circle**"), shall maintain the Hacker Addresses (as defined in the Recognition Motion) on the blacklist and frozen, such that any ability to transfer, encumber, or otherwise dispose of any of the Stolen USDC (as defined in the Recognition Motion) held therein shall be prevented:

    a.   0xefeef8e968a0db92781ac7b3b7c821909ef10c88,

    b.   0x027f1571aca57354223276722dc7b572a5b05cd8, and

    c.   0x48bead89e696ee93b04913cb0006f35adb844537.

4

7.      Until further Order of this Court, Circle shall maintain in reserve and not transfer, encumber, or otherwise dispose of any of the U.S. dollars held in reserve that back the Stolen USDC.

8.      Pursuant to section 1521(a) and 105(a) of the Bankruptcy Code, all entities (as that term is defined in section 101(15) of the Bankruptcy Code) subject to this Court's jurisdiction, other than the Petitioners and their expressly authorized representatives and agents, are stayed and enjoined from commencing or continuing to prosecute any claims related to Multichain or assets that it asserts an interest in, on any theory of liability, whether direct, derivative, joint and several, successor liability, vicarious liability, fraudulent or voidable transfer or conveyance, alter ego or otherwise, while this chapter 15 case is pending.

9.      The Petitioners are entrusted with the administration and realization of Multichain's assets within the territorial jurisdiction of the United States, pursuant to section 1521(a)(5) of the Bankruptcy Code.

10.     The Petitioners are entitled to conduct discovery, examine witnesses, seek and take evidence, and obtain information concerning Multichain's assets, affairs, rights, obligations, or liabilities pursuant to section 1521(a)(4) of the Bankruptcy Code.

11.     The Petitioners are authorized to take all actions necessary to effectuate the relief granted by this Order without notice or further order of the Court.

12.     This Court retains jurisdiction with respect to any matters, claims, rights, or disputes arising from or related to this Order, its implementation, or otherwise arising from or related to this chapter 15 case.

13.     This Order shall be effective and enforceable immediately upon its entry.

5

Dated:  October __, 2025

New York, NY

_____

United States Bankruptcy Judge