**CAHILL GORDON & REINDEL LLP**
Joel H. Levitin
Miles Wiley
32 Old Slip
New York, NY 10005
Tel: (212) 701-3770/3395
jlevitin@cahill.com
mwiley@cahill.com
and
Gregory Strong (*pro hac vice* pending)
221 W. 10th Street, 3rd Floor
Wilmington, DE 19801
Tel: (302) 884-0001
gstrong@cahill.com

*Counsel for Bob Yap Cheng Ghee, Toh Ai Ling, and Tan Yen Chiaw, in their capacities as the joint and several liquidators of Multichain Foundation Ltd. (In Liquidation) in insolvency proceedings before the General Division of the High Court of the Republic of Singapore*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re<br><br>MULTICHAIN FOUNDATION LTD.,[1]<br><br>Debtor in a Foreign Proceeding. | Chapter 15<br><br>Case No. 25-12340 (DSJ) |

### DECLARATION OF BOB YAP CHENG GHEE IN SUPPORT OF
### FIRST DAY DOCUMENTS

I, Bob Yap Cheng Ghee (Insolvency Practitioner's Licence No. C1-00058-2023), pursuant to 28 U.S.C. § 1746, hereby declare, under penalty of perjury, as follows:

1. I am one of three court-appointed joint and several liquidators of the above-captioned debtor, Multichain Foundation Ltd. (In Liquidation) ("**Multichain**") in winding-up proceedings (the "**Singapore Insolvency Proceedings**") before the General Division of the High Court of Singapore (the "**Singapore Court**"), docketed as HC/CWU 134/2025. The other duly

---

[1] The Debtor in this chapter 15 case, along with its unique identifier, is Multichain Foundation Ltd. (In Liquidation) (Singapore Business Number: 202141342W). The Debtor's current registered and business address is 12 Marina View, #15-01 Asia Square Tower, #2, Singapore 018961.

appointed joint and several liquidators of Multichain are Toh Ai Ling and Tan Yen Chiaw (together, with me, the "**Petitioners**"). I have been serving as the liquidator of Multichain since my appointment by order of the Singapore Court dated May 9, 2025 in the Singapore Insolvency Proceedings (the "**Singapore Court Order**").

2. I am an authorized foreign representative (the "**Foreign Representative**") of Multichain in the above-captioned chapter 15 case.

3. I make this Declaration in support of (i) the *Verified Petition for Recognition of Foreign Proceedings* (the "**Verified Petition**"), (ii) the *Motion in Support of Verified Petition for Recognition of Foreign Proceedings and for Related Relief* (the "**Recognition Motion**"), (iii) the *Ex Parte Motion of Foreign Representatives for Provisional Relief Pursuant to Section 1519 of the Bankruptcy Code*, and (iv) *Motion Pursuant to Bankruptcy Rules 2002 and 9007 Requesting Entry of an Order (I) Scheduling the Recognition Hearing and (II) Approving Form and Manner of Service of Notice*, each filed contemporaneously herewith (together, the "**First Day Documents**").

4. I understand that the Recognition Motion seeks entry of an order recognizing the Singapore Insolvency Proceedings as a "foreign main proceeding" pursuant to chapter 15 of title 11 of the United States Code (the "**Bankruptcy Code**").

5. In my role as Foreign Representative, I am generally familiar with the Multichain's history, business and financial affairs, books and records, and liquidation efforts.

6. Except as otherwise indicated, all facts and statements set forth in this Declaration are based upon: (a) my personal knowledge; (b) information supplied to me by purported creditors of Multichain; (c) my review of relevant documents; and/or (d) my opinion based upon my

2

experience and knowledge of Multichain. If called upon to testify, I could and would testify to the facts and opinion set forth herein.

## PERSONAL BACKGROUND AND QUALIFICATIONS

7. I am currently a Consultant at KPMG Services Pte. Ltd. in Singapore in the Turnaround & Restructuring team. I have served as a liquidator in several high-profile cases and led many high-profile restructuring deals. I have more than 30 years of experience in the area of insolvency and restructuring, including experience with forensic investigation for clients across a wide range of industries.

8. My experience as a liquidator includes serving as the lead liquidator of Lehman Brothers entities, MF Global Singapore Pte. Limited, the Envy group of companies, and BSI Bank Limited in Singapore. I also served as the Judicial Manager of Swiber Holdings Limited and Swiber Offshore Construction Pte Ltd.

9. I have been a Chartered Accountant of Singapore since July 2013, a licensed Insolvency Practitioner in Singapore since October 2002, and a Public Accountant in Singapore since October 2002. I am also a fellow of the Insolvency Practitioners Association of Singapore, and a member of the International Insolvency Institute and Advisory Board of Singapore Global Restructuring Initiative.

10. As one of the court-appointed liquidators of Multichain, I am authorized to serve as its foreign representative in seeking recognition of the Singapore Insolvency Proceedings and to commence any proceeding in connection therewith in any jurisdiction which is necessary or appropriate, including in the United States pursuant to the Bankruptcy Code.

## CORPORATE BACKGROUND AND OVERVIEW

11. Multichain is a public company limited by guarantee incorporated in Singapore on November 29, 2021. Based on records filed with the Singapore company registry ("**ACRA**"), Multichain's principal place of business is Singapore, its registered address is 12 Marina View, #15-01 Asia Square Tower, #2, Singapore 018961, and it currently only has 1 member, Mr. He Xiaokun. As its liquidators, Multichain acts exclusively through Toh Ai Ling, Tan Yen Chiaw, and me.

12. After my appointment as liquidator, I learned that prior to the Singapore Insolvency Proceedings, part of Multichain's business involved developing and operating a software protocol known as a "cross-chain bridge" that allowed users to deposit digital assets with Multichain on one blockchain network and receive different digital assets intended to be of equal value from Multichain on another blockchain network (*i.e.*, to bridge digital assets from one blockchain network to another). For example, users could transfer USDC, a digital asset, on the Ethereum blockchain network to Multichain, and receive Multi-USDC, another digital asset, from Multichain on the Fantom blockchain network. A holder of Multi-USDC on the Fantom blockchain could transfer that Multi-USDC to Multichain, and receive USDC of equivalent value from Multichain on the Ethereum blockchain network.

13. USDC is a type of digital asset known as a stablecoin issued by Circle Internet Financial, LLC ("**Circle**"). For every unit of USDC in circulation, Circle maintains at least one U.S. dollar in reserve such that each unit of USDC is at all times backed by at least one U.S. dollar.

14. Multichain has property located within the United States, specifically in New York County. Circle controls the Stolen USDC, as defined below, which should rightfully be returned to Multichain, and also controls the U.S. dollar reserves backing the Stolen USDC from its

principal place of business in New York. In addition, Cahill Gordon & Reindel LLP holds a retainer balance from Multichain in a bank account in New York, New York.

## BACKGROUND OF THE SINGAPORE INSOLVENCY PROCEEDINGS

15. In July, 2023, unidentified hackers (the "**Hackers**") stole a significant amount of digital assets from Multichain, including units of a digital asset known as USDC valued at approximately $63 million (the "**Stolen USDC**").

16. One of the parties that deposited digital assets to the Multichain software protocol that were stolen during the exploit sued Multichain in Singapore (the "**2023 Multichain Claim**") and obtained a judgment against Multichain and then filed an application with the Singapore Court on April 13, 2025 to have Multichain wound up under Singapore insolvency laws.

17. As a result, the Singapore Court entered an order dated May 9, 2025, and filed on May 13, 2025, providing for Multichain to be wound up under section 125(1)(e) of part 8 of the Insolvency, Restructuring and Dissolution Act 2018 in Singapore, and appointing the Petitioners as the joint and several liquidators of Multichain for the purpose of collecting, preserving, and ultimately distributing Multichain's assets as part of its liquidation.

18. Upon our appointment, the Petitioners learned of the events that precipitated the Singapore Insolvency Proceedings through our review of, among other things, the records and papers relating to Multichain that were filed in the 2023 Multichain Claim, the Singapore Insolvency Proceedings, as well as through correspondence with purported creditors of Multichain who had filed proof of debts with and/or reached out to the Petitioners to provide information and documents.

**BACKGROUND OF U.S. LITIGATION ARISING FROM HACK AND THEFT**

19. As part of our efforts to meet our obligation under the Singapore Court Order to recover and marshal all of the assets of Multichain, including the digital assets stolen by the Hackers, the Petitioners became aware of proceedings brought by Newton AC/DC Fund, L.P. ("**Newton**"). Newton asserted that certain USDC in which it had an interest had been stolen by the Hackers, filed a complaint (the "**Newton Complaint**") commencing proceedings (the "**Newton Proceedings**") in the Supreme Court of the State of New York (the "**New York Court**") against Circle, alleging that the Hackers stole USDC valued at approximately $63 million that had been held in Multichain's wallet addresses, and asserting a claim on behalf of a putative class for the return of the Stolen USDC.[2] *See* Verified Petition, Ex. B (Newton Complaint).

20. Newton's complaint alleged that the Hackers transferred the Stolen USDC from Multichain's wallet addresses to three blockchain addresses that now hold the Stolen USDC (the "**Hacker Addresses**"):

   a. 0xefeef8e968a0db92781ac7b3b7c821909ef10c88,

   b. 0x027f1571aca57354223276722dc7b572a5b05cd8, and

   c. 0x48bead89e696ee93b04913cb0006f35adb844537.

*Id*., Ex. B (Newton Complaint) ¶ 38, Ex. C (Circle MTD) at 6; *see also* Stipulated Consent to Preliminary Injunction, *Newton AC/DC Fund, L.P.* v. *Circle Internet Financial, LLC*, No. 654157/2025 (N.Y. Sup. Ct. Jul. 14, 2025) (Dkt. No. 26).

21. The Newton Complaint asserts that because Newton currently holds Multi-USDC 3.575 million, it is entitled to claim USDC 3.575 million of the Stolen USDC, or the corresponding

---

[2] Newton filed an Amended Complaint on October 14, 2025. Amended Complaint, *Newton AC/DC Fund, L.P.* v. *Circle Internet Financial, LLC*, No. 654157/2025 (N.Y. Sup. Ct. Jul. 14, 2025) (Dkt. No. 32) (the "**Amended Complaint**"). In discussing Newton's allegations against Circle, the Petitioners cite to the Amended Complaint as the operative complaint in the Newton Proceedings.

U.S. dollar reserves backing those tokens. A holder of Multi-USDC is not entitled to the corresponding USDC that was transferred to Multichain in exchange for the Multi-USDC. Having transferred USDC to Multichain in exchange for Multi-USDC, a holder of Multi-USDC no longer has any entitlement to assert a claim for the USDC.

22.     In any event, if Newton believes it has a claim against Multichain by virtue of it holding Multi-USDC 3.575 million and thereby purports to be entitled to exchange it for USDC, the appropriate course of action would be to file a claim with the liquidators of Multichain, alongside other purported creditors. It is not entitled to assert any claim over the Stolen USDC, the entirety of which should rightfully be returned to Multichain to be dealt with fairly and equitably within the framework of the Singapore Insolvency Proceedings.

23.     Through the Newton Complaint, I learned that shortly after the hack and theft of the Stolen USDC, the United States Department of Justice (the "**DOJ**") obtained a seizure warrant and compelled Circle to "blacklist" the Hacker Addresses. Verified Petition, Ex. B (Newton Complaint) ¶¶ 40–41, Ex. C (Circle MTD) at 1–2, 6. Circle has the ability to blacklist blockchain addresses, and will do so under certain circumstances, including pursuant to a valid law enforcement order or a valid court order. *See id.*, Ex. C (Circle MTD) at 1–2, 5.

24.     Because it was not able to identify the Hackers for prosecution, the DOJ subsequently informed Circle that it would seek to vacate the seizure warrant at the end of July 2025. *Id.*, Ex. B (Newton Complaint) ¶ 43. Without a valid seizure warrant in place, or another valid court order, Circle would not have a basis to keep the Hacker Addresses on the blacklist. *See id.*, Ex. C (Circle MTD) at 6 & n.5.

25.     Newton was supposedly concerned that it would have no recourse if Circle removed the Hacker Addresses from the blacklist and the Hackers were able to transfer the Stolen USDC

to other addresses or to exchange the Stolen USDC for other assets that are not able to be frozen in the same way that Circle can freeze USDC through the blacklisting process. Yap Declaration ¶ 25.

26. The Newton Complaint seeks a declaratory judgment resolving the ownership of the Stolen USDC currently maintained by the Hacker Addresses. The Newton Complaint also seeks a judgment against Circle for approximately $63 million and an order recognizing that Circle currently holds that amount in a constructive trust for the benefit of the class. Verified Petition, Ex. B (Newton Complaint).

27. Newton and Circle entered into a stipulation (the "**Newton Stipulation**"), so ordered by the New York Court, which, among other things, requires Circle to maintain the Hacker Addresses on the blacklist so that the Stolen USDC cannot be transferred until further order of the Court. *See id.*, Ex. D (Stipulated Consent Preliminary Injunction).

28. Recognizing that Newton is not the only party interested in recovering the Stolen USDC, and that Multichain and its creditors are likely to have interests as well, the Newton Stipulation further requires notice to certain other parties and provides that such other parties may intervene in the Newton Proceedings by November 2, 2025. *See id.*

29. Through these chapter 15 proceedings, the Petitioners aim to prevent Newton from claiming some portion of the Stolen USDC for their sole benefit to the exclusion of other creditors of Multichain. Newton seeks to certify a class of Multi-USDC holders, but the Petitioners are better situated, and legally empowered by the Singapore Court, to resolve the claims of all of Multichain's eligible creditors, not just Multi-USDC holders. We seek to recover the Stolen USDC in full so that it can be administered for the benefit of all of Multichain's creditors, including Newton if it can properly demonstrate that it is an eligible creditor.

8

30. On September 29, 2025, Circle filed a motion to dismiss the Newton Proceedings. *See id.*, Ex. C (Circle MTD). In lieu of an opposition, Newton filed in response an Amended Complaint and a Motion for Class Certification (the "**Newton Class Cert. Mot.**"). *See* Memorandum of Law in Support of the Motion by Newton AC/DC Fund, L.P., Scallion Trading Ltd., and Stanton Street Capital Partners, Inc. for Class Certification, to Appoint Class Representatives, and to Appoint Class Counsel, *Newton AC/DC Fund, L.P.* v. *Circle Internet Financial, LLC*, No. 654157/2025 (N.Y. Sup. Ct. Jul. 14, 2025) (Dkt. No. 35). As explained above, being a holder of Multi-USDC does not entitle one to also claim the USDC that was transferred to Multichain in exchange for Multi-USDC. Insofar as Newton and/or the other members of its proposed class action believe they have a claim against Multichain to exchange Multi-USDC for USDC, the appropriate course of action would be to file a claim with the liquidators of Multichain.

## NECESSITY OF THE REQUESTED PROVISIONAL RELIEF

31. The Petitioners require immediate relief under section 1519 in the form of (i) a stay of the Newton Proceedings; and (ii) an order requiring Circle to maintain the Hacker Addresses on its blacklist to prevent any ability of the Hackers to transfer, encumber, or otherwise dispose of any of the Stolen USDC, as well as requiring Circle to maintain the U.S. dollars held in reserve that back such USDC.

32. Without a court order authorizing the requested provisional relief, there is a real and significant risk that the New York Court enters orders or makes findings or determinations that are more properly dealt with in this Court and/or in the Singapore Insolvency Proceedings, or that could interfere with the Petitioners' ability to maximize the value of Multichain's assets for the benefit of all its stakeholders.

33. Such an outcome may result in the Petitioners being unable to fulfill their mandate in the Singapore Insolvency Proceedings to marshal Multichain's assets for the benefit of all of its creditors and parties in interest. For example, if the New York Court were to remove the freeze over the Stolen USDC, the Hackers will have control over such assets, allowing the Hackers to transfer or exchange the Stolen USDC and profit from their theft to the detriment of Multichain and its rightful creditors. Moreover, should the New York court grant Newton's request to certify a class that is a subset of all potentially eligible claimants, the Singapore Court may be frustrated in ensuring that all eligible claimants are provided their share of Multichain's assets. In addition, the New York Court could at any time make a case-dispositive decision that could potentially have a binding effect on and be detrimental to other parties such as the Petitioners, Multichain, and Multichain's creditors.

**NECESSITY OF THE REQUESTED RELIEF IN THE RECOGNITION MOTION**

34. Through their Recognition Motion, the Petitioners additionally seek recognition of the Singapore Insolvency Proceedings as a "foreign main proceeding" under sections 1502(4), 1515, and 1517 of the Bankruptcy Code; recognition of the Petitioners as Multichain's "foreign representatives" as defined in section 101(24) of the Bankruptcy Code; an order continuing or granting the Requested Provisional Relief pursuant to section 1521(a) of the Bankruptcy Code; an order entrusting the administration and realization of Multichain's assets within the territorial jurisdiction of the United States to the Petitioners, pursuant to section 1521(a)(5) of the Bankruptcy Code; granting the Petitioners authority pursuant to section 1521(a) of the Bankruptcy Code to examine witnesses, take evidence, and deliver information concerning Multichain's assets, affairs, rights, obligations, and liabilities; and any other and relief that is just and proper, all so that the Petitioners can pursue the recovery of the Stolen USDC and/or the value thereof and administer

such assets in the Singapore Insolvency Proceedings for the benefit of all of Multichain's creditors and stakeholders.

35. This relief is necessary to protect Multichain's assets within the United States and to permit the Petitioners to meet our obligation as joint and several liquidators of Multichain to recover and marshal all of the assets of Multichain so that they can be available for distribution to all legitimate and eligible claimants in the Singapore Insolvency Proceedings. The relief is additionally required to prevent individual creditors, such as plaintiffs in the Newton Proceedings, from acting to frustrate the purposes of the Singapore Insolvency Proceedings, the objective of which is the fair, efficient, and orderly administration of the liquidation of Multichain and the maximizing of value for all creditors.

## NO PRIOR PROCEEDINGS OR LITIGATION

36. The Singapore Insolvency Proceedings are the only known "foreign proceedings" with respect to Multichain. For completeness, after being appointed as liquidators, the liquidators of Multichain filed an application on May 23, 2025 before the Singapore Court, docketed as HC/OA 512/2025, to be authorized to, among other things, bring or defend any action or other legal proceedings in the name of and on behalf of Multichain, appoint solicitors to assist the liquidators in their duties and represent Multichain in legal proceedings, and open a special bank account to facilitate payments in connection with matters relating to the liquidation of Multichain. The application was granted on June 3, 2025.

37. At the time of filing of the First Day Documents, Multichain is not a party to any known litigation in the United States.

I verify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge.

Executed on: October 22 , 2025  /s/ _____
Bob Yap Cheng Ghee