**CAHILL GORDON & REINDEL LLP**
Joel H. Levitin
Miles Wiley
32 Old Slip
New York, NY 10005
Tel: (212) 701-3770/3395
jlevitin@cahill.com
mwiley@cahill.com
and
Gregory Strong (*pro hac vice* pending)
221 W. 10th Street, 3rd Floor
Wilmington, DE 19801
Tel: (302) 884-0001
gstrong@cahill.com

*Counsel for Bob Yap Cheng Ghee, Toh Ai Ling, and Tan Yen Chiaw, in their capacities as the joint and several liquidators of Multichain Foundation Ltd. (In Liquidation) in insolvency proceedings before the General Division of the High Court of the Republic of Singapore*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re<br><br>MULTICHAIN FOUNDATION LTD.,[1]<br><br>Debtor in a Foreign Proceeding. | Chapter 15<br><br>Case No. 25-12340 (DSJ) |

# DECLARATION OF ONG TUN WEI DANNY IN SUPPORT OF FIRST DAY DOCUMENTS

I, Ong Tun Wei Danny, pursuant to 28 U.S.C. § 1746, hereby declare under penalty of perjury under the laws of the United States:

1. I am an Advocate and Solicitor of the Supreme Court of Singapore. I am the Managing Director at Setia Law LLC, a Singapore-registered law firm located at One George Street, #07-03, Singapore 049145, and Singapore counsel to Multichain Foundation Ltd. (In

---

[1] The Debtor in this chapter 15 case, along with its unique identifier, is Multichain Foundation Ltd. (In Liquidation) (Singapore Business Number: 202141342W). The Debtor's current registered and business address is 12 Marina View, #15-01 Asia Square Tower, #2, Singapore 018961.

Liquidation) ("**Multichain**") and Bob Yap Cheng Ghee, Toh Ai Ling, and Tan Yen Chiaw (the "**Petitioners**") in their capacities as the court-appointed joint and several liquidators of Multichain.

2. I am a member in good standing of the Singapore Bar, as well as the Rolls of Solicitors of the High Courts of Hong Kong and England and Wales, and there are no disciplinary proceedings pending against me.

3. I make this Declaration in support of (i) the *Verified Petition for Recognition of Foreign Proceedings* (the "**Verified Petition**"), (ii) the *Motion in Support of Verified Petition for Recognition of Foreign Proceedings and for Related Relief*, (iii) the *Ex Parte Motion of Foreign Representatives for Provisional Relief Pursuant to Section 1519 of the Bankruptcy Code*, and (iv) the *Motion Pursuant to Bankruptcy Rules 2002 and 9007 Requesting Entry of an Order (I) Scheduling the Recognition Hearing and (II) Approving Form and Manner of Service of Notice*, each filed contemporaneously herewith (together, the "**First Day Documents**").

4. Multichain is the foreign debtor in the above-captioned chapter 15 case seeking recognition of the winding-up proceedings (the "**Singapore Insolvency Proceedings**") currently pending before the General Division of the High Court of Singapore (the "**Singapore Court**"), docketed as HC/CWU 134/2025, as a foreign main proceeding. The Singapore Court is a judicial body of the Republic of Singapore, which has jurisdiction over the Petitioners and the liquidation of Multichain's assets.

5. In preparing this Declaration, I reviewed the First Day Documents, as well as relevant provisions of the Companies Act 1967 (the "**CA**"), the Insolvency, Restructuring and Dissolution Act 2018 (the "**IRDA**"), and other provisions of the laws of Singapore as they relate to chapter 15 of the United States Bankruptcy Code.

2

6.  Except as otherwise noted, all facts set forth in this Declaration are based on: (i) my knowledge of Singapore laws on corporate insolvency, and (ii) my review of relevant documents. If called upon to testify, I could and would testify as set forth herein.

7.  This Declaration comprises matters that are statements of legal opinion and/or statements of fact. Where the matters stated in this Declaration are statements of legal opinion, such statements represent my view of Singapore law as a practicing lawyer admitted and licensed to practice in Singapore; with respect to statements of fact, they are to the best of my knowledge, information, and belief.

## PERSONAL BACKGROUND AND QUALIFICATIONS

8.  I studied law at the National University of Singapore, obtaining my L.L.B. (Hons.) in 1999. In my practice, I specialize in complex international commercial and financial disputes and investigations, as well as in cross-border restructuring and insolvency. I have extensive experience in multi-jurisdictional insolvency proceedings, including representing the liquidators of 45 Lehman Brothers entities across Asia, Dynamic Oil Trading, and BSI Bank, among others.

9.  I am the Co-Executive Director of the International Chamber of Commerce's FraudNet, a network of specialist asset recovery professionals across over 80 jurisdictions.

## STATEMENTS OF SINGAPORE LAW AND PRACTICE

**I.  Singapore Corporate Insolvency and Winding-Up**

10. Singapore enacted the IRDA in 2018 to consolidate legislation for personal and corporate insolvency under a single omnibus legislation, and the IRDA came into force on July 30, 2020. Prior to the IRDA coming into force, Singapore's legislation relating to corporate insolvency was largely contained in various sections of the CA and in related Acts and/or subsidiary legislation of the CA.

3

### A. Initiating a Winding-Up Proceeding

11. As a preliminary point, there are two modes of winding-up: (1) a court ordered winding-up ("**CWU**") and (2) a voluntary winding-up. In turn, there are two kinds of voluntary winding-up: (1) members' voluntary winding-up and (2) creditors' voluntary winding-up. Because the Singapore Insolvency Proceedings are a CWU, for the purposes of this Declaration, I will focus on provisions relating to a CWU.

12. A CWU is initiated when a party that is entitled to make such an application files a winding-up application in court, and the court may then order the winding-up of the company if one of the statutory circumstances are met. Parties who are entitled to file a winding-up application include, *inter alia*, (i) the company itself, and (ii) a creditor of a company, including a contingent or prospective creditor.

13. One of the circumstances in which the Singapore Court may exercise its jurisdiction to wind-up a company is when "the company is unable to pay its debts." There are various situations when a company is statutorily deemed to be "unable to pay its debts." This includes a situation where a creditor, to which a company is indebted in a sum exceeding S$15,000 (approximately US $11,500), has served at the registered office of the debtor company a demand to pay the sum so due, and the debtor-company has for three weeks thereafter neglected to pay the sum, or to secure it to the satisfaction of the creditor. *See* IRDA § 125.

### B. Effects of a Winding-Up Application and a Winding-Up Order

14. In a CWU, unless a resolution has been passed by the company for voluntary winding-up prior to making the application for the winding-up, the winding-up of the company is deemed at law to have commenced at the time of making the application for the winding-up. *See* IRDA § 126.

4

15.     Upon the making of the winding-up application, (i) the company or any creditor may apply to the Singapore Court to stay or restrain proceedings against the company, and (ii) any disposition of the company's property, including causes of action, and any transfer of shares or alteration in the status of the members of the company, shall be void unless the Singapore Court otherwise orders.  *See* IRDA §§ 129–30.

16.     Once a winding-up order has been made, there is an automatic stay on all proceedings against the company.  *See* IRDA § 133.  However, the Singapore Court has the discretion to grant permission to creditors to continue or proceed with proceedings against the company (for instance, to enable secured creditors to enforce their security).  *Id.*;  *see also W Y Steel Construction Pte Ltd.* v. *Tycoon Construction Pte Ltd. (in Liquidation)* [2016] SGHC 80, ¶¶ 14–15 (explaining the factors considered by the Singapore Court in determining whether to grant permission to creditors to proceed against a company).

   C.    **Duties and Powers of the Liquidators**

17.     In connection with a winding-up order being issued, the Singapore Court will also appoint one or more liquidators.  When the winding-up application is made, the applicant nominates a person or persons as liquidator(s) and seeks the Singapore Court's approval and order appointing the nominated person(s) as liquidator(s).

18.     Upon the order of a winding-up, the liquidators are required to take into their custody or under their control all the property and things in action to which the company is or appears to be entitled, and the liquidators' main focus should be to collect assets and return them to legitimate creditors with all practicable speed and to prevent the fragmentation of the company's assets.  *See* IRDA § 140;  *see also Korea Asset Management Corp* v. *Daewoo Singapore Pte Ltd (in liquidation)* [2004] 1 SLR(R) 671 (SGHC) ¶ 36.  Because the Singapore Court issued a winding-up order in the Singapore Insolvency Proceedings appointing the Petitioners as the

liquidators of Multichain, Multichain acts exclusively through the Petitioners. *See* Verified Petition, Ex. A (Singapore Court Order).

19. In respect of the company's assets, a statutory trust comes into existence over the company's assets upon the making of a winding-up order for the benefit of the creditors and for the purpose of discharging the company's liabilities. By virtue of the statutory trust, the company loses all custody and control of its property, and all powers of dealing with the company's assets are transferred to the liquidators who are bound to act in accordance with the statutory scheme in the relevant statute (*i.e.*, the IRDA). *See Media Development Authority of Singapore* v. *Sculptor Finance (MD) Ireland Ltd.* [2014] 1 SLR 733 ¶ 43.

20. In relation to the approximately $63 million worth of USDC (the "**Stolen USDC**") stolen by unidentified hackers from Multichain and currently held in three blockchain addresses specifically, once the Stolen USDC and/or the U.S. dollar reserves backing them are returned to Multichain, under the control of the Petitioners, the Stolen USDC and/or the U.S. dollar reserves backing them will be subject to the statutory trust, and if in the form of the Stolen USDC itself, the Petitioners will have the power to sell and realize the value of the Stolen USDC. Any such sale would be subject to any challenges by any creditors who may exercise their rights pursuant to IRDA § 144(3) to challenge the Petitioners' proposed exercise of their power of sale.

21. The liquidators have a wide range of statutory powers, some of which may only be exercised with the authority of either the Singapore Court or of the committee of inspection[2] ("**COI**") (if any is formed) while others may be exercised without further approval. *See* IRDA § 144.

---

[2] A committee of inspection is a committee of creditors and/or shareholders of the company in liquidation that may be appointed during a meeting of such creditors. Its main role is to supervise the actions of the liquidators. *See generally* IRDA §§ 150–51.

22. The liquidators' powers subject to the Singapore Court's or the COI's authorization include, *inter alia*, the power to (i) carry on the business of the company so far as is necessary for the beneficial winding-up thereof (but such authority is not necessary during the four weeks after the date of the winding-up order); (ii) make any compromise or arrangement with creditors; (iii) appoint a solicitor to assist the liquidators in their duties; and (iv) bring or defend any action or other legal proceeding in the name and on behalf of the company. The powers that are not subject to the Singapore Court or the COI's authorization include, *inter alia*, the power to (i) sell the immovable and movable property and things in action of the company by public auction, public tender or private contract; and (ii) do all such other things as are necessary for winding-up the affairs of the company and distributing its assets.

### D. Supervision of the Singapore Court over the Exercise of the Powers of the Liquidators

23. Notwithstanding that some statutory powers may be exercised by the liquidators without further authorization, the exercise by the liquidators of any of the statutory powers are subject to the control of the Singapore Court. *See* IRDA § 144(3). Under Singapore law, liquidators appointed by the Singapore Court, are officers of the court and are accountable to the Singapore Court, and are also fiduciaries who owe duties to act impartially, independently, and in the best interest of the company in liquidation and its creditors. *See generally* IRDA § 158 (providing that certain powers of the Singapore Court may be delegated to the liquidators to be exercised or performed by the liquidators as officers of the Singapore Court and subject to the control of the Singapore Court); *The Royal Bank of Scotland NV (formerly known as ABN Amro Bank NV) and others* v. *TT International Ltd and another appeal* [2012] 4 SLR 1182, ¶ 75.

24. In *Sinfeng Marine Services Pte Ltd* v. *Taylor, Joshua James and another and other appeals* [2020] 2 SLR 1332 (SGCA), the Singapore Court of Appeal held at paragraph 24 that:

7

> In a compulsory winding up, the liquidator is appointed by the court and is an officer of the court (*see* [section 158 of the IRDA]).[3] In addition, the winding up by the court is conducted under the court's direct supervision.

25. Additionally, the liquidators are able to seek directions from the Singapore Court concerning any matter arising in the winding-up, *see* IRDA § 145(3), and this includes, for instance directions to resolve any competing directions from the creditors or contributories in relation to the realization or sale of assets. In this regard, IRDA § 145(1) provides that liquidators must take into consideration the directions given by resolution of the company's creditors or contributories at any general meeting, or by the COI in the administration of the assets of the company and in the distribution thereof among its creditors.

### E. Rights of Creditors

26. In relation to the winding-up proceeding, creditors may apply to the Singapore Court with respect to any exercise or proposed exercise of any of the liquidators' statutory powers. *See* IRDA § 144(3).

27. In relation to claims, creditors are entitled to submit their claims by filing proofs of debt with the liquidators and the liquidators are obligated to give notice to all of the company's creditors to inform them to file their proofs of debt against the company. *See* Rule 131 of the Insolvency, Restructuring and Dissolution (Corporate Insolvency and Restructuring) Rules 2020 (the "**CIR Rules**"), a subsidiary legislation of the IRDA.

---

[3] The court in *Sinfeng Marine Services* applied the law under the CA because, at the time, the IRDA had not been enacted. The citation has been amended to cite to the relevant section of the IRDA. The text of the cited section of the IRDA and the text of the relevant section of the CA, though formatted differently to one another, are almost identical.

28. If any creditor is dissatisfied with the decision of the liquidators in rejecting a proof of debt (in whole or in part), the creditor may apply to the Singapore Court to reverse or vary the decision of the liquidators. *See* IRDA § 218; Rule 132 of the CIR Rules.

29. Notable cases where the Singapore Court of Appeal dealt with an application by a creditor to reverse the decision of a liquidator rejecting a proof of debt include *Fustar Chemicals Ltd (Hong Kong)* v. *Liquidator of Fustar Chemicals Pte Ltd* [2009] 4 SLR(R) 458 and *Kyen Resources Pte Ltd (in compulsory liquidation) and others* v. *Feima International (Hongkong) Ltd (In Liquidation) and another matter* [2024] SGCA 7.

F.   **Treatment of Creditors in the Distribution of Assets**

30. The *pari passu* principle is a fundamental principle of Singapore's insolvency law. The IRDA provides that, subject to the provisions as to preferential payments (*i.e.*, debts accorded statutory priority), "the property of a company must, on its winding[-]up, be applied *pari passu* in satisfaction of its liabilities and, subject to that application, must, unless the [corporate governing documents] otherwise provide[], be distributed among the members according to their rights and interests in the company." IRDA § 172. As provided for in section 172 of the IRDA, such distributions are subject to the statutory priority of debts as set out in section 203 of the IRDA. Although section 172 of the IRDA applies only to voluntary winding up of companies, this principle of *pari passu* satisfaction of unsecured liabilities of an insolvent company equally applies in compulsory winding up of companies. *See Joo Yee Construction Pte Ltd (in liquidation)* v0 *Diethelm Industries Pte Ltd and others* [1990] 1 SLR(R) 171, ¶ 17.

31. Further, as set out in the judgment in *Joo Yee Construction* at paragraph 18 by the Singapore High Court:

> Upon liquidation of an insolvent company (whether voluntary or compulsory), subject to the rights of preferential creditors and also secured creditors, if any, its property must be applied in settlement

9

of its liabilities *pari passu*, and any contract made by the company which provides for a distribution of any of its property for the benefit of one or more of its unsecured creditors which runs counter to or seeks to vary this rule, *i.e.* any "contracting out", is contrary to public policy, and the law as regards distribution of the insolvent's property under the insolvency legislation must prevail.

### G.  Creditors' Meetings

32.  Generally, the liquidators (a) may summon general meetings of the creditors or shareholders for the purpose of ascertaining their wishes;  and (b) must summon meetings (i) at such times as the creditors or shareholders by resolution direct;  or (ii) whenever requested in writing to do so by not less than 10% in value of the creditors or shareholders. *See* IRDA § 145(2). The summoning of creditors' meetings must be in accordance with the procedures provided for in Rules 85 to 102 of the CIR Rules.

33.  Additionally, the liquidators must call a final meeting of the company and the creditors for the purpose of presenting to them an account showing how the winding-up has been conducted and how the property of the company has been disposed of. *See* IRDA §148.

## II.  Singapore's Insolvency Laws Do Not Favor its Own Citizens

34.  As mentioned above, Singapore insolvency law provides that all similarly-situated creditors will be treated equally, and this includes both foreign and local creditors.  No foreign claimants or interested entities in a winding-up proceeding will be prejudiced or inconvenienced in a Singapore winding-up proceeding.  Such protections are further afforded to foreign claimants, creditors, and stakeholders under the UNCITRAL Model Law on Cross-Border Insolvency (the "**Model Law**").  Singapore adopted the Model Law in 2017, and it has force of law pursuant to section 252 of the IRDA.

35.  Under the Model Law, foreign creditors have the same rights as creditors in Singapore in relation to the commencement of and participation in Singapore insolvency

proceedings. Further, foreign creditors are entitled to be notified of a proceeding under Singapore insolvency law, including notification of a right to file a claim (*see* Articles 13 and 14 of the Model Law).

36. The following observation by the Singapore High Court in *Re OptiMedix Ltd (in liquidation) and another matter* [2016] 4 SLR 312 is on point:

> In cross-border insolvency, there has been a general movement away from the traditional, territorial focus on the interests of the local creditors, towards recognition that universal cooperation between jurisdictions is a necessary part of the contemporary world. Under a universalist approach, one court takes the lead while other courts assist in administering the liquidation. This is the most conductive to the orderly conduct of business and resolution of business failures across jurisdictions. The tone of the approach in Beluga and the telegraphed adoption of the UNCITRAL Model Law on Cross-Border Insolvency (30 May 1997) ("the Model Law") in Singapore are indicators that Singapore is warming to universalist notions in its insolvency regime.

37. Fair and efficient administration of the liquidation of Multichain in the Singapore Insolvency Proceedings protects all parties in interest.

I verify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge, information, and belief.

Executed on: October 22, 2025

_____
Ong Tun Wei Danny