**WILL NEWMAN LAWYER PLLC**
William H. Newman, Esq.
Tara Q. Higgins, Esq.
33 Nassau Avenue, Second Floor
Brooklyn, New York 11222
Phone: (718) 218-3360
will@willnewmanlawyer.com
tara@willnewmanlawyer.com

*Attorneys for Newton AC/DC Fund L.P., Scallion Trading Ltd., and Stanton Street Capital Partners, Inc.*

| | |
|---|---|
| UNITED STATES BANKRUPTCY COURT<br>SOUTHERN DISTRICT OF NEW YORK | |
| In re:<br><br>MULTICHAIN FOUNDATION LTD.,<br><br>       Debtor in a foreign proceeding. | Case No.: 25-12340 (DSJ)<br><br>Chapter: 15 |

**OBJECTION TO MOTION OF FOREIGN REPRESENTATIVES FOR PROVISIONAL RELIEF PURSUANT TO SECTION 1519 OF THE BANKRUPTCY CODE**

Newton AC/DC Fund, L.P. (the "Fund"), Scallion Trading Ltd. ("Scallion"), and Stanton Street Capital Partners, Inc. (together with the Fund and Scallion, the "Named Plaintiffs"), on their own behalf respectfully submit this memorandum of law in support of their objection to the Motion of Foreign Representatives for Provisional Relief Pursuant to Section 1519 of the Bankruptcy Code (ECF No. 6, the "MC Mot.").

**INTRODUCTION**

1. The liquidators (the "Liquidators") of Multichain Foundation Ltd. ("Multichain") seek to stay pending litigation (the "Class Action") between the Named Plaintiffs and a putative class (the "Class Plaintiffs") and Circle Internet Financial LLC and Circle Internet Group, Inc. (collectively, "Circle"). Additionally, they seek an injunction to cause Circle to blacklist or freeze certain digital asset wallet addresses that hold the Stolen USDC (as defined below) and maintain the dollar reserves backing the Stolen USDC.

2.	The Named Plaintiffs object to the Liquidators' request to stay the Class Action. The Liquidators misrepresent many of the facts and allegations in the Class Action. The Class Action does not involve Multichain's assets. And even if it did involve Multichain's assets, there is no urgent need for provisional relief.

3.	The Named Plaintiffs object to the Liquidators' request for an injunction to freeze the digital asset wallets holding and maintain the dollar reserves backing the Stolen USDC because those assets do not belong to Multichain and because, for the foreseeable future, another injunction already provides the Liquidators the same relief and a duplicate injunction is unnecessary.

## FACTUAL BACKGROUND

A.	Circle Issues USDC, A Stablecoin, on the Ethereum Blockchain

4.	Circle issues a cryptocurrency called USDC. Declaration of Eric S. Meyer, dated October 27, 2025 ("Meyer Decl."), ¶ 2. USDC is a stablecoin backed by cash or cash equivalents Circle holds. *Id.* ¶ 3. USDC remains stable because Circle offers the exchange of USDC tokens and U.S. dollars on a 1:1 basis. *Id.* USDC is traded, among other places, on the Ethereum blockchain. *Id.* ¶ 2.

B.	Multichain Issued multiUSDC Through a Cross-Chain Bridge

5.	Multichain created computer software called "smart contracts" that allows holders of USDC to trade it on other blockchains. *Id.* ¶ 5. These smart contracts are also called cross-chain bridges. *Id.* When a holder of USDC deposits its tokens in one of Multichain's cross-chain bridge smart contracts on the Ethereum blockchain, it automatically executes a trade, issuing, on a 1:1 basis, multiUSDC (another cryptocurrency token) on another blockchain, such as Fantom or Moonriver. *Id.*

2

6.      As holders of multiUSDC, the Class Plaintiffs had the ability to at any time deposit their tokens in one of Multichain's cross-chain bridge smart contracts to trade their multiUSDC for USDC tokens.  *Id.* ¶ 17.  *See*  https://docs.multichain.org/ ("The reverse process (called Redeeming) sees the wrapped asset being burned and then the asset in smart contract being released back to the chain from where it originally came from.") and https://docs.multichain.org/getting-started/how-to-use ("...you can still redeem anyUSDC [the original name of multiUSDC] to USDC in the Multichain pool."); *id.*

C.      <u>The Hackers Stole USDC from Decentralized Nodes, Not From Multichain</u>

7.      Thieves (the "Hackers") in July 2023 stole over $63 million worth of USDC from the smart contracts Multichain created on the Ethereum blockchain (the "Stolen USDC").  *Id.* ¶ 6. This theft makes it impossible for multiUSDC holders to trade their tokens for USDC.  *Id.* ¶ 7.

8.      The Liquidators incorrectly assert that the Hackers took the Stolen USDC from Multichain directly.  MC Mot. ¶ 9.  Multichain's own website explains how Multichain did not itself control the cryptocurrency wallets that had held the Stolen USDC.  Meyer Decl. ¶ 13.  It stated: "The nodes [that control the cross-chain bridge contracts holding the relevant assets] are run by different organisations, institutions and individuals, which independently run Multichain's protocol.  The end result is a decentralized and trustless service."  *See* https://docs.multichain.org/getting-started/how-it-works (the "Website"); *id.*

9.      Multichain deliberately structured its service to avoid having custody and control over tokenholders' assets.  Meyer Decl. ¶ 14.  An alternative arrangement for implementing a cross-chain bridge involves a "Multi Signature Wallet," which is a cryptocurrency wallet that can only perform transactions when a pre-defined number of authorized key holders agree and co-sign.

3

*Id.* Multichain expressly stated on the Website that its system did not use Multi Signature Wallets. *Id.* ¶ 13.

10. Multichain's choice to avoid Multi Signature Wallets appeared prescient when a separate cross-chain bridge was hacked and lost over $100 million in June 2022. *Id*. ¶ 15. The team behind the Harmony ONE blockchain created and developed a cross-chain platform called Horizon Bridge that let users bridge certain cryptocurrencies between the Harmony One blockchain and the Ethereum or Binance Smart Chain blockchains. *Id.* In contrast to Multichain's technology, however, the Horizon Bridge used a Multi Signature Wallet to hold the locked assets. *Id.* Some hackers may have used social engineering to guess the passwords of authorized signatories (all Harmony One employees), which then could have enabled access to their private keys, and, consequently, control of the locked assets held in the Multi Signature Wallet. *Id.* Multichain's distributed technology was, in theory, more secure and allowed Multichain to avoid exposure to a similar theft. *Id.*

D. <u>Holders of multiUSDC Tokens Commenced the Class Action</u>

11. The Fund owns over 3 million multiUSDC tokens. *Id*. ¶ 8. It commenced an action in the Supreme Court of the State of New York, New York County against Circle Internet Financial LLC. *Id.* It did so because multiUSDC confers an interest in the U.S. dollars and similar assets that provide value for, or "back," the Stolen USDC. *Id.* Accordingly, even though the Hackers stole the Stolen USDC, multiUSDC holders own an interest in the assets Circle still holds.

12. When the Fund initially commenced its action against Circle Internet Financial, LLC, it sought a preliminary injunction to require Circle to keep the crypto-wallets where the Hackers transferred the Stolen USDC (the "Hacker Addresses") blacklisted pending the litigation. *Id.* ¶ 9. By blacklisting the Hacker Addresses, Circle can prevent the Hackers from transferring or

dissipating the Stolen USDC. *Id.* The state court so-ordered a stipulation between the parties to this effect, dated September 2, 2025. *Newton AC/DC Fund, L.P. v. Circle Internet Financial, LLC*, No. 654157/2025 (N.Y. Sup. Ct. Jul. 14, 2025), NYSCEF Doc. No. 26 (the "Newton Stipulation").

13. The Fund amended its complaint to add Scallion and Stanton Street (other multiUSDC holders) as plaintiffs and to style its complaint as a class action on behalf of all holders of multiUSDC on the Fantom and Moonriver blockchains. *Id.*, NYSCEF Doc. Nos. 32; Meyer Decl. ¶ 10.

E.   The Liquidators Misrepresent Details About the Class Action

14. The Named Plaintiffs recently filed an Amended Complaint and a Motion for Class Certification on October 14, 2025. *Id.*, NYSCEF Doc. Nos. 32, 35. The Liquidators misrepresent the subject matter of the dispute and the schedule for its resolution.

15. First, the Class Action does not seek a declaratory judgment concerning the ownership of the Stolen USDC. *Id.,* NYSCEF Doc. No. 32 ¶ 62; Meyer Decl. ¶ 11. The Named Plaintiffs do not contend that Multichain owns the Stolen USDC, nor does Circle have any interest in the Stolen USDC. Meyer Decl. ¶ 11. The Class Action seeks a declaratory judgment concerning the ownership of the cash and cash equivalents held by Circle that provide backing for the Stolen USDC. *Id.* ¶ 12.

16. Second, the Liquidators knew when they filed their Chapter 15 petition that no decision in the Class Action was imminent. Prior to the filing of the Chapter 15 petition and this motion for provisional relief, counsel for the Liquidators and the Named Plaintiffs conferred on the issues raised in the motion. Declaration of William H. Newman, dated October 27, 2025 ("Newman Decl."), ¶ 2. During an email exchange, counsel for the Named Plaintiffs informed the Liquidators' counsel that the state court scheduled an oral argument hearing on the class

5

certification motion in March 2026 and that the parties were discussing a briefing schedule that would stretch into February 2026. *Id.* As such, the class certification motion is unlikely to be resolved prior to March 2026. *Id.*

17. Subsequent to the filing of the Chapter 15 petition and this motion, Circle filed a Notice of Removal in the U.S. District Court for the Southern District of New York on October 24, 2025. *Newton AC/DC Fund, L.P. v. Circle Internet Financial, LLC*, No. 654157/2025 (N.Y. Sup. Ct. Jul. 14, 2025), NYSCEF Doc. No. 38; *Newton AC/DC Fund L.P. v. Circle Internet Group, Inc.*, No. 25-cv-08838 (S.D.N.Y. Oct. 24, 2025) (ECF No. 1); Newman Decl. ¶ 3. Circle has indicated that it intends to move to dismiss the Class Action and the parties have agreed to a briefing schedule that extends through February 2026. *Id.* While the Named Plaintiffs seek a briefing schedule for the class certification motion that also extends through that date, Circle seeks to brief that motion after the resolution of the motion to dismiss. *Id.* The district court is unlikely to dismiss the Class Action or resolve the class certification issue before the conclusion of briefing on those motions. *Id.*

**ARGUMENT**

18. Under section 1519 of the Bankruptcy Code, a court may grant provisional relief where it is "urgently needed to protect the assets of the debtor." 11 U.S.C. § 1519(a). The assets at issue in the Class Action are not assets of Multichain. And even if they were, no urgent need to protect them exists.

**I.    The Stolen USDC and Dollar Reserves Held By Circle Are Not Assets of Multichain**

19. The Class Plaintiffs are the rightful owners of the Stolen USDC and consequently, the cash or cash equivalents Circle holds to back the Stolen USDC. *See Risley v. Universal Navigation Inc.*, 2025 U.S. App. LEXIS 4460, *6-7 (2d Cir. Feb. 26, 2025).

6

20. In *Risley*, the defendant company operated a cryptocurrency trading platform using smart contracts in a manner substantially similar to Multichain's operation. *Id.* at *3-4. In applying federal Securities law, the Second Circuit noted that as host of the platform, the defendant does not "hold title to the tokens placed in the liquidity pool by third party users of the platform." *Id.* at *6. Instead, it is the parties that deposit tokens in the pool "who retain title of their tokens through pool tokens that may be turned in at any time of their choosing to recover the value of their originally-deposited tokens that created the trading pool." *Id.* at *6-7.

21. Even if Multichain had custody of the USDC, which it did not, it is well-settled law that a bailee does not take title to property it holds on behalf of another. *See Burke v. Continental Ins. Co.*, 184 N.Y. 77, 82 (1902). And certificates reflecting an interest in other property can be the subject of a bailment. *See Bank of New York v. Amoco Oil Co.,* 35 F.3d 643, 650 (2d Cir. 1994) (deciding that "holding certificates" in platinum were the subject of a bailment).

22. Here, Multichain merely provided the platform, or smart contract, through which USDC was deposited and multiUSDC was issued. Multichain did not possess the Stolen USDC and it certainly did not own it. To the extent they arguably possessed it, they did so as bailees without obtaining title. Instead, as holders of multiUSDC, the Named Plaintiffs hold title to the USDC deposited into and then stolen from Multichain's smart contract. Likewise, as owners of the Stolen USDC, the Named Plaintiffs are entitled to the cash or cash equivalents held by Circle that back the Stolen USDC.

23. This should be no surprise to the Liquidators, as Multichain deliberately developed infrastructure specifically to avoid having custody of, let alone ownership of, the Stolen USDC. By doing so, it sought to remove a potential security risk that actually manifested in a hack of a

7

competing cross-chain bridge platform in June 2022. The Liquidators therefore cannot claim Multichain owns the exact assets it purposefully avoided.

## II. Even If The Class Action Involved Multichain's Assets, No Urgent Need Exists To Require Provisional Relief

24. The Liquidators cannot establish the existence of an imminent irreparable harm, a crucial element in seeking a preliminary injunction, or provisional relief under section 1519.

25. "A showing of irreparable harm is the single most important prerequisite for the issuance of a preliminary injunction." *In re Giftcraft Ltd.*, 2025 Bankr. LEXIS 1350, *17 (S.D.N.Y. Bankr. June 4, 2025) (quoting *Faiveley Transp. Malmo AB v. Wabtec Corp.*, 559 F.3d 110, 118 (2d Cir. 2009)).

26. To satisfy this element, the Liquidators must show that, absent the stay or injunction, the Liquidators "will suffer an injury that is neither remote nor speculative, but actual and imminent, and one that cannot be remedied if a court waits until the end of trial to resolve the harm." *Id.* at *17-18.

### A. The Alleged Irreparable Harm Is Not Imminent

27. Here, the arguments offered in support of this showing are based on an inaccurate description of the Class Action's procedural posture. The Named Plaintiffs recently filed an Amended Complaint, as well as a motion for class certification. Prior to filing the Chapter 15 petition and the instant motion, counsel for the Liquidators was aware that the state court had scheduled an oral argument hearing for the class certification motion in March 2026 and that the parties were discussing a briefing schedule that would stretch through February 2026.

28. Pursuant to Bankruptcy Rule 2002(q)(1), the court must "promptly" hold a hearing on the Chapter 15 petition, providing 21-days notice of the hearing date. The Recognition Hearing has been scheduled for November 18, 2025, well before March 2026.

29. As such, there is no imminent risk that the state court would decide the class certification motion prior to the Recognition Hearing.

30. Furthermore, Circle removed the Class Action to federal court on October 24, 2025. Circle's removal will inevitably further delay the resolution of the class certification motion.

B. <u>The Alleged Irreparable Harm Is Speculative And Based On Conclusory Statements</u>

31. The Liquidators' motion baldly asserts that if the state court resolves the class certification motion, it "could ultimately result in the Newton Stipulation being vacated in which case Circle would not be required to maintain the Hacker Addresses on the blacklist." MC Mot. at 8.

32. The Liquidators cited no evidence to suggest such a result. And there is no language in the Newton Stipulation to indicate it either. It simply states that Circle will keep the Hacker Addresses blacklisted "[u]ntil further order of the Court." Newton Stipulation ¶ 2.

33. Thus, any argument as to when or how the state court may vacate the so-ordered Newton Stipulation would be pure speculation.

34. Regardless, as long as the litigation between the Class Plaintiffs and Circle is pending (in state or federal court), the Newton Stipulation will very likely remain in effect to maintain the status quo, even if the class is not certified.

## CONCLUSION

**WHEREFORE**, the Named Plaintiffs respectfully request the Court deny the Liquidators' Motion with respect to its request for a stay of the Class Action.

9

Dated: Brooklyn, New York
October 27, 2025

Respectfully submitted,

_____
William H. Newman
Tara Q. Higgins
33 Nassau Avenue, Second Floor
Brooklyn, New York 11222
Phone: (718) 218-3360
Email: will@willnewmanlawyer.com
       tara@willnewmanlawyer.com

*Attorneys for Newton AC/DC Fund L.P., Scallion Trading Ltd., and Stanton Street Capital Partners, Inc.*